IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROCKRIDGE TRUST, et al.,

        Plaintiffs,

   v.

WELLS FARGO, N.A., et al.,

        Defendants.

Case No.: C-13-01457 JCS

**ORDER DISMISSING PLAINTIFFS'
COMPLAINT WITHOUT PREJUDICE**

**I.     INTRODUCTION**

    Plaintiffs Rockridge Trust and Ray K. Shahani, trustee, ("Shahani") (collectively, "Plaintiffs") brought this action against Defendants Wells Fargo, N.A. ("Wells Fargo"), Bank of America, N.A. ("Bank of America"), First American Trustee Servicing Solutions LLC ("First American Trustee"), and First American Loanstar Trustee Services LLC ("First American Loanstar") (collectively, "Defendants") alleging twenty causes of action arising out of a series of loan modification negotiations followed by foreclosure.  Presently before the Court are (1) a Motion to Dismiss jointly filed by Wells Fargo and Bank of America ("Wells Fargo Motion"); and (2) a Motion to Dismiss filed by First American Trustee ("First American Motion").[1]  The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  The Court finds the Motion appropriate for decision without oral argument.  The hearing on the Motions scheduled for June 28, 2013 at 9:30 a.m. is vacated.  The Case Management Conference, also scheduled for June 28, 2013 at 9:30 a.m., is

---

[1] First American Loanstar and First American Trustee assert that they are one legal entity, which underwent a name change in 2010. Dkt. No. 17 (Certificate of Interested Entities filed by First American Trustee).  The entity's current name is "First American Trustee Servicing Solutions, LLC." *Id.*  The entity is a Texas limited liability company that is wholly owned by First American Title Insurance Company.  *Id.*

United States District Court
Northern District of California

1    moved to 1:30 p.m. of that same day.  For the reasons set out below, the Court GRANTS the Motions

2    and dismissed Plaintiffs' Complaint without prejudice.

3    **II.     BACKGROUND**

4           **A.     The Complaint**

5                  **1.     Factual Background**

6           On or about February 23, 2007, Shahani executed a consumer loan transaction in the amount

7    of $755,250 with Wells Fargo to re-finance his single family residential property located at 82

8    Rockridge Drive, San Francisco, CA.  Complaint, ¶ 20.[2]  Wells Fargo took a security interest in the

9    subject property in a Deed of Trust ("DOT").[3]  *Id*. at ¶ 20 and Ex. 1.[4]  Fidelity National Title

10   Insurance Company ("Fidelity National") was named as the trustee under the DOT.  *Id*. at Ex. 1.  On

11   March 13, 2007, Wells Fargo executed a Substitution of Trustee ("First Substitution") substituting

12   itself for Fidelity National as trustee.  *Id*. at ¶ 22 and Ex. 2.

13          Plaintiffs made payments pursuant to the mortgage agreement for close to two years.  *Id*. at ¶

14   23.  Shortly thereafter, Wells Fargo and/or Wells Fargo Home Mortgage ("Home Mortgage")

15   represented that Home Mortgage was the servicer of Plaintiffs' loan.  *Id*. at ¶ 24.  However, Home

16   Mortgage ceased to exist as a separate entity in May 2004.  *Id*. at ¶ 26.  In February 2009, Shahani

17   requested a loan modification to reduce the fixed loan interest rate of 6.375% to one commensurate

18   with the then-available rates of between 2% and 4%.  *Id*. at ¶¶ 25, 140(a).  At the time, Shahani was

19   less than 30 days late on his monthly mortgage payments but feared the possibility of multiple claims

20   for late and/or unpaid payments.  *Id*. at ¶ 25.  Shahani entered the loan modification process with

21   Home Mortgage that month.  *Id*.

22          Pursuant to the loan modification negotiations, Shahani submitted financial information

23   pertaining to his income and expenses in March 2009.  *Id*. at ¶ 140(c).  In April 2009, Defendants

24   requested additional documentation.  *Id*. at ¶ 140(e).  In May 2009, Defendants informed Shahani that

25   all requested documentation had been received and was in process.  *Id*. at ¶ 140(f).  In July 2009,

26

27   _____

28   [2] The Complaint is attached to the Notice of Removal as Exhibit A.  *See* Dkt. No. 1.
     [3] The DOT lists Wells Fargo Bank, N.A., as the lender.
     [4] Plaintiffs did not attach a copy of the Note to their Complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Shahani was informed by telephone that the loan modification was denied. *Id*. at ¶ 140(g).[5]  Shahani

2  was invited to re-fax further financial information to update his file.  *Id*.  During negotiations that

3  month, Shahani spoke to Lupeta, Leslie, Doris, Dante, and Gordon, all separate agents for Defendants,

4  regarding his loan modification request.  *Id*. at ¶ 140(j).  Shahani also received a letter, dated July 1,

5  2009, incorrectly stating that his expenses exceeded his income by close to $4,100.  *Id*. at ¶ 140(h).[6]

6  A July 14, 2009 letter to Shahani indicated that "the loan file ha[d] been referred to our attorney with

7  instructions to begin foreclosure proceedings."  *Id*. at ¶ 140(k).[7]

8       In a letter, Shahani received an unsigned, incomplete, and unrecorded Notice of Default

9  ("NOD").  *Id*. at ¶ 140(l) and Ex. 3.[8]  The mailing, attached to the Complaint as Exhibit 3, recites that

10  the contents are a "copy of the 'notice,' the original of which was filed for record on July 20, 2009 in

11  the Office of the Recorded of San Francisco, California."  *Id*. at Ex. 3 (capitalization omitted).  On the

12  signature line of the mailed copy of the NOD, the document reads:  "original document signed by

13  authorized agent."  *Id*. (capitalization omitted).  The NOD was executed by First American Loanstar

14  as agent for the current beneficiary and by First American Title Insurance Company as Attorney-in-

15  Fact.  *Id*.  The mailing also contained a copy of the Notice of Default Declaration ("NOD

16  Declaration"), completed by Home Mortgage as the "mortgagee, beneficiary, or authorized agent."

17  *Id*.  The copy states:  "Original document executed by authorized agent."  *Id*. (italics omitted).  Also

18  included in Exhibit 3 is a letter, dated July 23, 2009, from First American Loanstar stating:  (1) that

19  the creditor to whom the debt is owed is Bank of America; (2) Home Mortgage is the servicer; and (3)

20  First American Loanstar has been authorized by either the servicer or the creditor to initiate

21  foreclosure proceedings.  *Id*.  The letter also states that the outstanding debt is $783,383.70.  *Id*.

22       On July 28, 2009, Shahani was informed by the "Loss Mitigation" department that Defendants

23  were suspending foreclosure and no foreclosure sale date was set.  *Id*. at ¶ 140(n).[9]  Shahani received a

24  July 28, 2009 letter indicating that Defendants were reviewing the information he had provided and

25  working quickly to respond to his request for assistance with his mortgage payment challenges.  *Id*. at

---

26  [5] The Complaint states that Defendant was informed by telephone that the loan modification was denied.  This appears to
     be a typographical error.

27  [6] Plaintiffs do not allege the true relation between Shahani's expenses and income.

     [7] Plaintiffs do not allege which Defendant sent the letter.

28  [8] Plaintiffs do not allege which Defendant sent the letter.

     [9] Plaintiffs do not identify which Defendant's loss mitigation department they are referring to.

¶ 140(m).[10]  On August 5, 2009, a person named David from a call center in Milwaukee requested proof of income and statements of profit and loss for the past three months to be sent to Mary Mulholland in Norfolk.  *Id.* at ¶ 140(o).[11]  That month, Shahani was informed numerous times that his application was in the review stage.  *Id.*  On August 25, 2009, the loan modification was denied due to expenses greater than income by over $7543.  *Id.* at ¶ 140(p).  The next day, Shahani was orally informed that a work director would re-review the file if he resubmitted a number of documents, which he did.  *Id.*  Shahani spoke to Travis, Marion, and Jessica between September 4 and 11, 2009. *Id.* at ¶ 140(q).[12]

Meanwhile, on August 19, 2009, Wells Fargo executed a Second Substitution of Trustee ("Second Substitution") naming First American Loanstar as Trustee.  *Id.* at ¶ 28 and Ex. 4.[13] Plaintiffs attach a copy of the Second Substitution accompanied by an affidavit stating that "[a] copy of the attached substitution has been mailed prior to the recording thereof…"  *Id.* at Ex. 4.  The copy of the substitution states, on the signature line:  "original document signed, dated, and notarized by current beneficiary."  *Id.* (capitalization omitted).  Directly above that line is written:  "Wells Fargo Bank, N.A.".  *Id.* (capitalization omitted).

On or about September 3, 2009, Wells Fargo recorded an Assignment of Deed of Trust ("Assignment") assigning all beneficial interest to Bank of America.  *Id.* at ¶ 30, Ex. 5.  The Assignment was dated August 25, 2009, and signed by a putative agent of First American Loanstar as Wells Fargo's attorney-in-fact.  *Id.* at Ex. 5.

An October 5, 2009 letter from Defendants offered Plaintiffs yet another loan modification and requested a number of pieces of information.  *Id.* at ¶ 140(r).  The next day, Defendant instructed Shahani to submit an initial payment of $5,412.27, due in two weeks, and financial documentation. *Id.* at ¶ 140(s).[14]  Shahani wired the requested payment on the deadline.  *Id.* at ¶ 140(t).  A letter dated October 16, 2009 stated that the loan modification was denied because Shahani failed to provide

---

[10] Plaintiffs do not allege which Defendant sent the letter.
[11] Plaintiffs do not allege which Defendant David and Mulholland represented.
[12] Plaintiffs provide no detail as to the capacity of the named individuals or the content of their conversations.
[13] Plaintiffs allege that First American Loanstar was named as a replacement for Fidelity National.  However, the copy of the Second Substitution attached as Exhibit 4 identifies Fidelity National as the original trustee, but states that First American Loanstar is being substituted for the original trustee or the successor trustee.
[14] Plaintiffs do not allege which Defendant they are referring to.

1  requested documentation within the time frame provided in his trial modification period workout plan.

2  *Id*. at ¶ 140(u).  No time frame had been provided.  *Id*.  Shortly thereafter, on or about October 21,

3  2009, First American Loanstar recorded a Notice of Trustee's Sale ("First NOTS"), listing the sale

4  date as November 10, 2009.  *Id*. at ¶ 31 and Ex. 6.[15]  Nevertheless, on October 26, 2009, Shahani was

5  informed that he had been approved for modification and should re-submit certain documents.  *Id*. at ¶

6  140(w).  A week later, on November 2, Shahani learned that his initial payment had been declined.

7  *Id*. at ¶ 140(x).  That same day, Shahani re-submitted documentation.  *Id*. at ¶ 140(y).  On November

8  9, 2009, Defendants sent Shahani a letter that he had been denied modification because he did not

9  provide the requested documentation within the time frame required by his trial modification period

10  workout plan.  *Id*. at ¶ 140(z).  Two days later, Shahani filed a Chapter 11 bankruptcy petition for

11  personal business reorganization.  *Id*. at ¶ 140(aa).  Thus, from his request for modification in

12  February 2009 to his bankruptcy filing in November 2009 his modification requests had been denied.

13  *Id*. at ¶ 32.

14      Nearly two years later, on August 13, 2011, Wells Fargo, as servicing agent for Bank of

15  America, obtained relief from the bankruptcy stay.  *Id*. at ¶¶ 24, 140(bb) and Ex. 7.  Wells Fargo

16  immediately invited Shahani to enter loan modification negotiations.  *Id*. at ¶ 35.  Shortly after

17  Shahani submitted a battery of financial documentation, he was informed that he needed to be a

18  minimum of 3 months current on his loan payments to qualify for modification pursuant to the

19  investor guidelines.  *Id*.  Wells Fargo accepted monthly payments in the amount of $4012.27

20  beginning in September 2012.  *Id*.  The payments were based on an interest rate of 6.375%, two to

21  three times greater than the then-prevalent rates.  *Id*.  Ten months later, Defendants denied Shahani's

22  modification request stating "as per investor guidelines" they could not find "affordability" for

23  Shahani's requests.  *Id*.  Shahani was never provided a copy of the investor's guidelines.  *Id*.

24      Soon after, on August 16, 2012, First American Loanstar recorded a second Notice of

25  Trustee's Sale ("Second NOTS") stating that the property would be sold on September 11, 2012.  *Id*.

26  at ¶ 36 and Ex. 8.[16]  Exhibit 8 is a copy of the recording request made by First American Loanstar,

27  ---
[15] In another portion of the Complaint, Plaintiffs make the inconsistent allegation that the First NOTS was unsigned and
28  unrecorded.  Complaint at ¶ 140(v).  Those inconsistent allegations are contradicted by Exhibit 6.
[16] Although Plaintiffs refer to this as the Second NOTS, Plaintiffs also state in a separate portion of the Complaint that
Shahani received a NOTS in July 2012 setting the sale date for September 11, 2013.  *Id*. at ¶ 140(hh).  Plaintiffs refer to

United States District Court
Northern District of California

1   dated August 20, 2012, indicating that the original document was signed by an authorized agent. *Id.*

2   at Ex. 8.  At the same time, Wells Fargo ceased accepting mortgage payments. *Id.* at ¶ 140(jj)-(ll).

3          Nevertheless, loan modification negotiations continued.  After Shahani obtained assistance

4   from the office of Congresswoman Jackie Speier, he received a letter, in mid-August 2012, indicating

5   that Christine Mak ("Mak") of Wells Fargo's Office of Executive Complaint would be his single point

6   of contact for his loan modification request. *Id.* at ¶ 140(mm)-(nn).  Shahani submitted a large

7   amount of updated documents to Mak over the course of the next two weeks. *Id.* at ¶ 140(oo).  In late

8   August, Mak sent Shahani a letter stating that Wells Fargo would respond to his request for a loan

9   modification on September 11, 2012. *Id.* at ¶ 140(pp).  After numerous requests to postpone the

10  September 11, 2012 sale, Mak promised to request its continuance on September 5, 2012 but did not

11  do so. *Id.* at ¶¶ 140(qq)-(rr).  Two days later, on the seventh, the sale was postponed. *Id.* at ¶ 140(ss).

12  Wells Fargo did not postpone the sale date on its online posting until September 10, 2012. *Id.* at ¶

13  140(tt)-(uu).  A subsequent sale date was set and postponed until March 4, 2013. *Id.* at ¶¶ 38, 140(vv)

14  and Ex. 9.

15         On February 18, 2013, Keri Peck ("Peck"), an agent of Wells Fargo, told Shahani in writing

16  that "[w]e anticipate that we will be able to provide you with resolution by March 07, 2013." *Id.* at ¶¶

17  39, 140(ww) and Ex. 10.  The next day, Wells Fargo requested additional information from Shahani.

18  *Id.* at ¶ 140(xx).  Shahani responded with 128 pages of documents within a week. *Id.*  Three days

19  later, on February 28, 2013, Wells Fargo requested several additional and/or duplicate items. *Id.* at ¶¶

20  41, 140(yy) and Ex. 12.  Over the next two days, Shahani sent Wells Fargo 284 pages of responsive

21  documentation. *Id.*  On March 7, 2013, Wells Fargo requested several additional and/or duplicate

22  items needed to review Shahani's request for loan modification. *Id.* at ¶¶ 42, 140(zz) and Ex. 12.

23  Shahani provided additional documentation and a line-item letter response on March 8, 2013 and

24  March 11, 2013. *Id.*

25         On March 4, 2013, during the negotiations, the foreclosure sale was held and the property was

26  sold back to the beneficiary, Bank of America, for $972,843.08. *Id.* at ¶ 44 and Ex. 14.  Plaintiffs

27

28  Exhibit 7, the order relieving Wells Fargo from the bankruptcy stay, for that proposition.  It is unclear if they are referring to the Second NOTS or some other NOTS.

allege on information and belief that none of the Defendants holds the original note or has any legal

interest in the loan or the property. *Id*. at ¶¶ 45-46.

2.     **Alleged Causes of Action**

Plaintiffs allege the following twenty causes of action:

(1)     Violation of the Security First Rule against Wells Fargo and Bank of America:

Plaintiffs allege that Shahani tendered eleven payments of $4,012.27 from September 2011 through

July 2012 to Home Mortgage pursuant to a trial modification agreement. *Id*. at ¶ 51. Plaintiffs allege

that the acceptance of these funds violated the security first rule, California Code of Civil Procedure §

726, because Wells Fargo, Home Mortgage, and Bank of America had already chosen to foreclose on

the subject property. *Id*. at ¶ 53. Plaintiffs allege that this renders the DOT void, and destroys any

interest Wells Fargo, Home Mortgage, or Bank of America purported to exercise in proceeding with

foreclosure, rendering the sale invalid and void. *Id*. at ¶ 54.

(2)     Breach of Oral Contract against Wells Fargo and Bank of America: Plaintiffs allege

that Wells Fargo and Home Mortgage assured Shahani that they would not proceed with the

foreclosure sale while they were reviewing his request for loan modification. *Id*. at ¶ 57. Plaintiffs

allege that Shahani waited for the results of their review since February 2009, during which time

Wells Fargo assured him that they would continue to postpone the Trustee's Sale as long as he

continued providing requested information regarding modification. *Id*. Although no final

determination had been made, Wells Fargo, Home Mortgage, and/or Bank of America instructed First

American Loanstar to foreclose on March 4, 2013. *Id*. at ¶ 58. "Accordingly, Wells Fargo and Home

Mortgage breached the oral agreement it entered into with Plaintiff not to proceed with the foreclosure

process while it was reviewing Plaintiff's request for a loan modification and while Plaintiff made

monthly payments of $4012.27." *Id*. As a result, Plaintiffs have suffered consequential damages of

not less than $1,000,000. *Id*. at ¶ 59.

(3)     Breach of Written Contract against Wells Fargo and Bank of America: Plaintiffs

allege that Wells Fargo and Bank of America entered a Servicer Participation Agreement ("SPA")

with Fannie Mae in which they agreed to apply the Home Affordable Mortgage Program ("HAMP")

criteria to all loans they service. *Id*. at ¶ 61. Plaintiffs allege that they are third party beneficiaries of

this agreement.  *Id.* at ¶ 62.  Plaintiffs allege that, pursuant to the SPA, Wells Fargo and Bank of America agreed to offer a three-month HAMP trial period at a payment level of 31% of income to all borrowers who meet the HAMP criteria and pass the NPV test.  *Id.* at ¶ 63.  Plaintiffs allege that Well Fargo and Bank of America breached the SPA by not offering Shahani a HAMP trial period even though he met the HAMP criteria and passed the NPV test.  *Id.* at ¶ 64.  As a result, Plaintiffs have suffered consequential damages of not less than $1,000,000.  *Id.* at ¶ 65.

(4)   Wrongful Foreclosure Based on Statutory Violations against Bank of America, Wells Fargo, and "First American":[17]  Plaintiffs allege that their mortgage loan is subject to California Civil Code §§ 2923.5, 2923.52, and 2923.6 because it was created in March 2007, when Shahani refinanced his original home loan.  *Id.* at ¶¶ 67, 71.  Plaintiffs state the requirements of §§ 2923.5 and 2923.52.  *Id.* at ¶¶ 68-74.  Plaintiffs allege that those provisions were violated.  *Id.* at ¶ 75.

 Plaintiffs allege that the NOD is void because it lacks required information including the book and recordation number, instead containing in the relevant section the above-referenced statement that the document was a copy of the notice.  *Id.* at ¶ 75 and Ex. 3.  Plaintiffs also allege that the NOD Declaration is void because it has no date and signature, instead reciting that the original document was executed by the authorized agent.  *Id.*  In addition, Plaintiffs allege that the NOD is void because First American Loanstar stated, in the accompanying letter, that Bank of America was the beneficiary, but Plaintiffs are unaware of any assignment or other transaction up to that point that transferred the beneficial interest under the DOT to Bank of America.  *Id.* at ¶¶ 75, 77-81 and Ex. 3.  Moreover, Plaintiffs allege that the NOD Declaration is deficient in that it does not identify which statutory requirement was met by the beneficiary.  *Id.* at ¶ 75.

Plaintiffs also allege that the First NOTS was scheduled the sale far less than the six months after the NOD required by statute.  *Id.*  Plaintiffs further allege that the NOTS was never posted in accordance with California Civil Code § 2924f(b)(1).  *Id.* at ¶ 83.

Plaintiffs allege that § 2923.6 creates in loan servicers a duty to accept loan modification proposals where the loan is in payment default and the anticipated recovery under the workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.  *Id.* at ¶¶ 85-86.

---

[17] Although the Complaint distinguishes between First American Trustee and First American Loanstar, it does not do so in identifying the parties against whom causes of action are pled against.

United States District Court
Northern District of California

1   Plaintiffs allege that Shahani offered, and was willing and able to execute, a modification to a new

2   loan amount of $700,000, at a new interest rate of 3%, over a new 30-year term, with monthly

3   payments of $2,824.75.  *Id*. at ¶ 89.  Plaintiffs estimate that the net present value of that plan is

4   $700,000, which would exceed their estimate of the net present value of foreclosure by $118,380.  *Id*.

5   at ¶¶ 90-94.  Plaintiffs arrived at the net present value of foreclosure by subtracting the outstanding

6   property taxes and estimated costs of foreclosure from the present fair market value of the home.  *Id*.

7   at ¶¶ 90-93.  As a result, Plaintiffs allege that Defendants are required to accept the loan modification.

8   *Id*. at ¶ 95.

9         Plaintiffs allege that Defendants violated the Homeowner's Bill of Rights ("HBOR") in

10   several ways:  (1) by dual tracking the modification negotiations and the foreclosure process; (2) by

11   failing to properly respond to documents Shahani submitted; (3) by failing to comply with the single

12   point of contact requirements; (4) by charging application fees for loan modification; and (5) by

13   charging late fees during consideration of the loan modification.  *Id*. at ¶¶ 96-100.  Plaintiffs seek

14   injunctive relief, statutory damages, and attorney's fees pursuant to the HBOR.  *Id*. at ¶ 101.

15         As a result of all of the alleged violations, Plaintiffs allege that the foreclosure is void, rather

16   than voidable, and seek to have the sale rescinded.  *Id*. at ¶¶ 102-104.  Alternatively, Plaintiffs seek

17   special damages.  *Id*. at ¶ 105.  In addition, Plaintiffs seek general damages.  *Id*. at ¶ 106.

18         (5)   Federal Violations against Wells Fargo, Bank of America, and First American:

19   Plaintiffs allege that Wells Fargo has engaged in a pattern and practice of discrimination and

20   mortgage abuse relating to people of color.  *Id*. at ¶ 108.  As a result, Plaintiffs allege that Wells Fargo

21   reached a fair lending settlement with the U.S. Department of Justice in July 2012 in connection with

22   a lawsuit alleging lending discrimination by Wells Fargo against African-American and Hispanic

23   borrowers.  *Id*. at ¶ 109.  Plaintiffs allege that Defendants have not complied with the settlement

24   because they have not offered Shahani, a racial minority in the United States, anything other than a

25   subprime loan.  *Id*. at ¶ 110.

26         Next, Plaintiffs allege that Defendants have violated 42 U.S.C. § 1983.  *Id*. at ¶ 111.

27         In addition, Plaintiffs allege that Defendants breached a robo-signing and dual tracking

28   settlement agreement entered in February 2012 by 49 state attorney generals, the federal government,

9

and several banks including Wells Fargo and Bank of America.  *Id*. at ¶¶ 116, 119.  Specifically, Plaintiffs allege that Wells Fargo dual-tracked their loan and that the relevant documents were robo-signed.  *Id*. at ¶ 119.  Plaintiffs also allege that Defendants breached the agreement by collecting excessive monthly payments beginning in September 2011 and subsequently by refusing to accept monthly payments increasing the arrears.  *Id*. at ¶ 120.

(6)     Violation of Anti-Trust Laws against Wells Fargo, Bank of America, and First American:  Plaintiffs allege that Defendants have engaged in a scheme to monopolize and control mortgage loans to residential homeowners in violation of California and Federal law.  *Id*. at ¶¶ 122-31.

(7)     Civil Harassment against Wells Fargo, Bank of America, and First American:  Plaintiffs allege that Defendants have engaged in nearly four years of harassing telephone calls and correspondence constituting civil harassment in violation of California Civil Code § 527.6.  *Id*. at ¶ 133-34.  Plaintiffs seek a temporary restraining order and injunction.  *Id*. at ¶ 135.

(8)     Breach of Implied Covenant of Good Faith and Fair Dealing against Wells Fargo, Bank of America, and First American:  Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing by failing to disclose the terms and conditions of the loan modification and by utilizing underwriting techniques that prevented Shahani from ever having any hope of repaying their loan.  *Id*. at ¶¶ 138-39.  Plaintiffs also allege that Defendants acted in bad faith throughout the modification negotiations, including by carrying out the foreclosure sale prior to making a determination regarding Shahani's most recent attempt to obtain a modification.  *Id*. at ¶¶ 140-41.  Plaintiffs further allege that Shahani reasonably relied on representations made by Defendants that he would be considered for loan modification by failing to plan for foreclosure.  *Id*. at ¶ 142.  Moreover, Plaintiffs allege that the terms of the loan were unconscionable due to the excessive and discriminatory interest rate.  *Id*. at ¶ 143.

(9)     Civil Conspiracy against Wells Fargo, Bank of America, and First American:  Plaintiffs allege that Defendants conspired to enter a fraudulent sales scheme wherein they directed an inflated appraisal process to make Shahani's loan exceed the market rate and falsely represented to

United States District Court
Northern District of California

1    Shahani that he could not qualify for any other financing. *Id.* at ¶ 145. As a result, Plaintiffs were

2    damaged in excess of $220,000. *Id.* at ¶ 146.

3        (10)    Quiet Title against Wells Fargo, Bank of America, and All Persons Unknown Claiming

4    Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property: Plaintiffs seek to quiet

5    title in the property as of October 15, 2012. *Id.* at ¶¶ 149-51. Plaintiffs seek a ruling that the property

6    belongs to them and an award of consequential damages of no less than $1,000,000. *Id.* at ¶ 153.

7        (11)    Slander of Title against All Defendants: Plaintiffs allege that First American,

8    purportedly but falsely acting as either the trustee or the agent of the beneficiary of the DOT,

9    wrongfully and without privilege caused a NOD, Substitution, Assignment, and two Notices of

10   Trustee's Sale to be recorded against the subject property. *Id.* at ¶¶ 155-56. In addition, First

11   American wrongfully refused to cancel the Trustee's Sale. *Id.* at ¶ 157. None of the Defendants had

12   authority to execute any of those documents. *Id.* at ¶ 158. By causing the documents to be executed,

13   they slandered Plaintiffs' title. *Id.* at ¶ 159. Those actions are not privileged. *Id.* at ¶ 160. Plaintiffs

14   suffered damages in an amount not less than $1,000,000. *Id.* at ¶ 161.

15       (12)    Cancellation of Instruments against All Defendants: Plaintiffs seek cancellation of

16   both Substitutions of Trustee, the NOD, the Assignment, and both Notices of Trustee's Sale because

17   they are wrongfully recorded and if left outstanding will cause Plaintiffs to suffer damages. *Id.* at ¶¶

18   163-64. Plaintiff alleges that Defendants caused the documents to be prepared and recorded with the

19   specific intent to defraud Shahani. *Id.* at ¶ 165. Plaintiffs seek $1,000,000 in damages as well as

20   punitive and exemplary damages. *Id.* at ¶ 167.

21       (13)    Promissory Estoppel against Wells Fargo and Bank of America: Plaintiffs allege that

22   Wells Fargo and Bank of America promised not to foreclose on the subject property if Shahani

23   completed an application for a loan modification and made monthly payments in certain amounts. *Id.*

24   at ¶ 169. Plaintiffs allege that Shahani, as Wells Fargo and Bank of America should have reasonably

25   expected, justifiably relied by acting as required. *Id.* at ¶¶ 170-71. In addition, Shahani relied by

26   failing to explore the possibility of refinancing or marketing and selling the property himself. *Id.* at ¶

27   171. Plaintiffs also allege that Wells Fargo and Bank of America should be estopped from violating

28

1    the SPA by proceeding to foreclosure without completing a HAMP analysis. *Id*. at ¶ 172-74.

2    Plaintiffs seek a recovery of not less than $1,000,000. *Id*. at ¶ 175.

3        (14)    Negligence against All Defendants:  Plaintiffs allege that, as lender and servicer, Wells

4    Fargo and Bank of America owed Plaintiffs a reasonable duty to maintain proper and accurate loan

5    records. *Id*. at ¶ 177.  Plaintiffs allege that Wells Fargo and Bank of America breached that duty by

6    foreclosing while telling Shahani it was not doing so and by misleading Shahani into believing that

7    Home Mortgage was a distinct entity.  *Id*. at ¶ 178.

8        Further, Plaintiffs allege that First American, acting as trustee under the DOT, has a duty to

9    exercise reasonable care to follow California law with regard to foreclosures, to avoid conflicts of

10   interest, and to refrain from taking any action against Plaintiffs that it had no right to take.  *Id*. at ¶

11   179.  Plaintiffs allege that First American breached its duty by failing to properly train its employees

12   with regard to execution of each of the recorded documents.  *Id*. at ¶ 180.

13       Plaintiffs seek $1,000,000 in general and special damages. *Id*. at ¶ 181.

14       (15)    Negligent Misrepresentation against Wells Fargo and Bank of America:  Plaintiffs

15   allege that Wells Fargo, Bank of America, and Home Mortgage made representations to Shahani that

16   they would postpone the foreclosure sale and complete a loan modification based on the current FMV

17   of the subject property and that they would modify the loan and reduce the principal in an amount of

18   the loan and that they would lower the interest rate and that they would forgive and waive the

19   arrearage and/or roll the arrearage into the principal and amortize it for as long as 40 years or more if

20   Shahani completed an application for a loan modification, made monthly payments in a specified

21   amount, and agreed to continuously provide financial information. *Id*. at ¶ 183.  These representations

22   were not true, and there were no reasonable grounds for believing them to be true at the time they

23   were made. *Id*. at ¶¶ 184-85.  Wells Fargo, Bank of America, and Home Mortgage had no intention

24   of modifying the loan when they made those representations, but intended that Shahani rely on them.

25   *Id*. at ¶¶ 185-86.  Plaintiffs reasonably relied and as a result suffered damages of not less than

26   $1,000,000. *Id*. at ¶¶ 187-88.

27       (16)    Fraud against Wells Fargo and Bank of America:  Plaintiffs allege fraud based on the

28   following misrepresentations:  (1) Wells Fargo, Bank of America, and Home Mortgage represented to

12

United States District Court
Northern District of California

Shahani that they would not foreclose on the subject property during the time that a loan modification was being reviewed and he was making monthly payments while intending to foreclose in any event; (2) Wells Fargo representatives represented themselves as being employed by Home Mortgage leading Shahani to believe that Home Mortgage was a separate entity; (3) Defendants misrepresented, in connection with a broader scheme to make commissions, kickbacks, and other profits, to Shahani and others that they owned the DOT and mortgage note causing Shahani to pay substantial sums of money; (4) Defendants misrepresented that the loan terms given to Shahani were the best that they could obtain and well within the economic value of the property, causing him to enter the mortgage agreement; and (5) Defendants refused to provide the loan modification based on misrepresentations that Shahani did not qualify for modification and on inflated estimates of the value of the subject property. *Id.* at ¶¶ 190-98. Shahani justifiably relied on the above representations, all of which were made with the intent to induce reliance, by entering the loan, making mortgage payments, and failing to explore alternative remedies during the foreclosure process. *Id.* at ¶¶ 190-98, 204, 207. Shahani suffered seeks recovery for his emotional distress, damage to his credit, and punitive damages. *Id.* at ¶¶ 199, 206, 209.

(17)   Violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") against Wells Fargo and Bank of America:  Plaintiffs allege that the debt owed pursuant to the DOT is a consumer debt pursuant to the Rosenthal Act. *Id.* at ¶ 211. Wells Fargo, Bank of America, and Home mortgage are mortgage servicing companies in the business of collecting and processing mortgage payments. *Id.* at ¶ 212. Their representatives misrepresented that they would not foreclose if Shahani applied for loan modification and made monthly payments of $4012.27, and Shahani made 11 payments as a result of that misrepresentation. *Id.* at ¶ 213. Plaintiffs seek actual and statutory damages, attorneys' fees, and costs. *Id.* at ¶ 214.

(18)   Violation of California Business and Professions Code § 17200 et seq. ("UCL") against All Defendants:  Plaintiffs allege that, by the above described conduct, and also by failing to disclose the principal for which documents were being executed and recorded and failing to record powers of attorney in connection with recorded documents, Defendants committed unfair, unlawful, and fraudulent business practices in violation of the UCL. *Id.* at ¶¶ 216-19, 225. This conduct is

United States District Court
Northern District of California

ongoing, unjustly enriched Defendants at Plaintiffs' expense through the collection of mortgage

payments, and causes harm to the public that outweighs any utility it may have.  *Id*. at ¶¶ 220-223.

Plaintiffs seek injunctive relief, attorneys' fees, and restitution.  *Id*. at ¶¶ 223, 26.

   (19)   <u>Declaratory Relief against All Defendants</u>:  Plaintiffs allege that there is a dispute

between themselves, Wells Fargo, and Bank of America as to the ownership of the subject property

and request the court declare the rights of the parties in the matter.  *Id*. at ¶¶ 228-29.

   (20)   <u>Injunctive Relief against All Defendants</u>:  Plaintiffs allege that Defendants are acting in

violation of statute and will continue to do so without injunctive relief.  *Id*. at ¶¶ 231-33.  Plaintiffs

further allege that they do not have an adequate remedy at law.  *Id*. at ¶ 234.  Plaintiffs seek injunctive

relief.

**B.      Removal**

   The purported basis for removal was federal diversity jurisdiction.  Notice of Removal, 2-13.

The Notice of Removal asserts that Plaintiffs are California citizens, Wells Fargo is a citizen of South

Dakota, Bank of America is a citizen of North Carolina, and First American Trustee is a citizen of

Texas.  *Id*. at 2, 13.  The Notice of Removal does not assert any alternative basis for removal.

**C.      The Motions**

**1.      Wells Fargo Motion**

   First, Wells Fargo and Bank of America attack the sufficiency of Plaintiffs' federal claims.

Wells Fargo Motion, 3-4.  They interpret the cause of action for "Federal Violations" to assert a §

1983 claim, but argue that it is insufficient for lack of governmental action.  *Id*. at 3.  In addition, they

argue that Plaintiffs have not provided anything more than conclusory allegations in support of their

clause of action for violation of anti-trust laws.  *Id*. at 3-4.

   Second, Wells Fargo and Bank of America address Plaintiffs' state law statutory claims.  *Id*. at

4-8.  They argue that Plaintiffs have not pled a violation of the security first rule because the

Complaint does not allege a set-off.  *Id*. at 4-5 (citing *Mehta v. Wells Fargo Bank, N.A.*, 737

F.Supp.2d 1185, 1202-03 (S.D. Cal. 2010)).  Further, they contend that the action for wrongful

foreclosure does not state a claim for relief because (1) the remedy for a violation of California Civil

Code section 2923.5 is constrained to postponement of the foreclosure sale, which in this case has

14

United States District Court
Northern District of California

1  already occurred; and (2) California Civil Code section 2932.5 does not apply to Plaintiffs' loan.  *Id.*

2  at 5-6.  Next, they assert that Plaintiffs' civil harassment cause of action fails to allege lack of

3  legitimate purpose, because all communications were related to the foreclosure process, or actual

4  distress.  *Id.* at 6-7.  In addition, they argue that Plaintiffs' Rosenthal Act claim fails to allege debt

5  collection.  *Id.* at 7.  Finally, they contend that Plaintiffs fail to allege predicate unlawful or fraudulent

6  conduct to support their UCL claim.  *Id.* at 7-8.

7  Third, Wells Fargo and Bank of America turn to Plaintiffs' state common law claims.  *Id.* at 8-

8  14.  They argue that Plaintiffs' breach of oral contract claim is contradicted by the allegations of the

9  Complaint in that Shahani received a response to his request for a loan modification in accordance

10  with the alleged contract.  *Id.* at 8.  Even if the response was not given, they argue that the breach of

11  oral contract claim is bared by the statute of limitations.  *Id.* at 9.  They further argue that the breach

12  of written contract claim fails because Plaintiffs are not third party beneficiaries of the server

13  participation agreement and therefore cannot enforce that agreement, nor can they assert a private

14  right of action under HAMP.  *Id.* at 9-10.  Moreover, they contend that Plaintiffs cannot assert a cause

15  of action for the breach of the covenant of good faith and fair dealing because they cannot tie that

16  cause of action to any contractual provision.  *Id.* at 10-11.  In addition, they argue that Plaintiffs have

17  not alleged who made a promise or when to support the promissory estoppel cause of action.  *Id.* at

18  11.  As to the fraud-based causes of action – fraud, negligent misrepresentation, and conspiracy –

19  Wells Fargo and Bank of America assert that Plaintiffs have not pled those theories with the

20  particularity required by Federal Rule of Civil Procedure 9(b).  *Id.* at 11-12.  They contend that the

21  action for slander of title fails because recordation of foreclosure notices is privileged.  *Id.* at 12-13.

22  Next, they assert that the negligence claim fails because Plaintiffs are unable to allege the existence of

23  a legal duty.  *Id.* at 13-14.  Finally, they argue that the declaratory relief cause of action provides a

24  remedy that must be tethered to another claim and cannot stand alone.  *Id.* at 14.

25  Fourth, Wells Fargo and Bank of America argue that Plaintiffs equitable causes of action –

26  wrongful foreclosure, quiet title, cancellation of instruments, and injunctive relief – are all barred by

27  Plaintiffs' failure to allege tender.  *Id.* at 14-15.

28

United States District Court
Northern District of California

1    Finally, Bank of America argues that it should be dismissed from this action with prejudice

2    because Plaintiffs have not made any specific allegations against it. *Id*. at 15-16.

3         **2.       First American Motion**

4    To begin, First American Trustee argues that its acts as trustee are privileged pursuant to

5    California Civil Code section 47.  First American Motion, 4.  Second, First American Trustee asserts

6    that its duties as a trustee are limited by statute such that it will incur no liability for any good faith

7    error resulting from good faith reliance on information provided in good faith by the beneficiary

8    regarding the nature and amount of the default under the secured obligation. *Id*. at 5.  Accordingly,

9    First American Trustee contends that it is statutorily immune from Plaintiffs' claims. *Id*. at 6.

10   Third, First American Trustee argues California Civil Code sections 2923.5 and 2923.6

11   provide no relief for a borrower after a trustee sale has been completed. *Id*.  Moreover, it contends

12   that even a lender cannot be compelled to modify a loan. *Id*. at 6-7.  In addition, First American

13   Trustee asserts that Plaintiffs' claim cannot properly be directed against it because it acted only as the

14   trustee and was not tasked with evaluating the lender's due diligence. *Id*. at 7.  Next, it argues that

15   section 2923.6 provides no private right of action and does not apply to borrowers. *Id*. at 8.

16   Fourth, First American Trustee contends that Plaintiffs' claims of statutory violations in the

17   foreclosure process fail because they are barred by Plaintiffs' failure to allege tender, Plaintiffs failed

18   to allege prejudice, and the allegations are insufficient to state a claim in any event. *Id*. at 8-10.

19   Moreover, First American asserts that any causes of action under the HBOR fail because the HBOR

20   did not go into effect until January 1, 2013, after the NOD and NOTS had been issued. *Id*. at 9.

21   Fifth, First American Trustee interprets the "Federal Violations" cause of action to assert (1)

22   violation of civil rights and breach of fair-lending settlement agreement; and (2) violation of robo-

23   signing and dual tracking settlement agreement. *Id*. at 10.  First American Trustee contends that it is

24   not a party to any of the underlying litigation and that Plaintiffs have not explained how a borrower

25   would have a private right of action under those agreements. *Id*. at 10-11.

26   Sixth, First American Trustee asserts that the cause of action for "Anti-Trust Violations"

27   contains only conclusory allegations, none of which apply to the processing of foreclosures and thus

28   none of which apply to it. *Id*. at 11.

United States District Court
Northern District of California

Seventh, Firth American Trustee contends that the civil harassment claim fails because they have not alleged that it engaged in any harassing conduct that did not serve any legitimate purpose. *Id*. at 12.

Eighth, First American Trustee argues that it cannot be liable for a breach of the implied covenant of good faith and fair dealing without a contractual relationship. *Id*.  It asserts that Plaintiffs have not alleged any such relationship with it.  *Id*. at 12-13.

Ninth, First American Trustee states that the allegations of civil conspiracy are not properly directed at it because they concern the process of extending the loan.  *Id*. at 14.

Tenth, First American Trustee contends that the cause of action for cancellation of instruments fails because the subject property has already been sold at a foreclosure sale such that the relevant instruments no longer carry any weight.  *Id*. at 14-15.

Eleventh, First American Trustee asserts that the negligence claim is insufficient for failure to allege any duty it owes.  *Id*. at 15-16.

Twelfth, First American Trustee argue that Plaintiffs have not pled any violations of the UCL by First American in particular or stated a predicate violation to support a claim under the unlawful prong.  *Id*. at 17.

Thirteenth, First American Trustee contends that the declaratory relief action has no independent basis, and thus fails with each of Plaintiffs' other causes of action.  *Id*.

Fourteenth, First American Trustee asserts that the slander of title cause of action fails because the recordings are privileged.  *Id*. at 17-18.

Finally, First American Trustee contends that Plaintiffs are not entitled to injunctive relief because the foreclosure sale has already occurred, so there is nothing left to enjoin.  *Id*. at 18-19.

### D.    Opposition

#### 1.    Opposition to Wells Fargo Motion

First, Plaintiffs argue that their federal claims are properly pled.  Opposition to Wells Fargo Motion, 8-12.  They contend that they pled a civil rights violation pursuant to the Fair Housing Act, which prohibits discrimination in real estate-based transactions.  *Id*. at 8-9 (citing 42 U.S.C. § 3605(a)).  Plaintiffs also state that the Civil Rights Act of 1964 prohibits housing discrimination in

United States District Court
Northern District of California

1   any program receiving federal financial assistance.  *Id*. at 8.  Moreover, Plaintiffs assert that

2   Defendants have not complied with a Department of Justice Settlement Agreement.  *Id*. at 9.  In

3   addition, Plaintiffs contend that they have stated a claim for anti-trust violations of California and

4   federal law by alleging that Wells Fargo, Bank of America, and the other Defendants conspired to fix

5   the price and availability of loans and loan modifications.  *Id*. at 11.

6         Second, Plaintiffs assert that their state statutory claims are properly pled.  *Id*. at 12-19.

7   Plaintiffs contend that they sufficiently alleged a violation of the security first rule because they

8   alleged that Defendants elected non-judicial foreclosure as their remedy by initiating the foreclosure

9   process but still demanded and collected payments as a precondition on Plaintiffs' request to consider

10  a loan modification.  *Id*. at 13.  In addition, Plaintiffs argue that they pled a violation of the HBOR

11  because (1) they pled that acceptance of their proposed loan modification would maximize net present

12  value such that their proposed loan modification should have been accepted; and (2) they pled that

13  their loan modification negotiations were dual-tracked.  *Id*. at 13-15.  Moreover, Plaintiffs argue that

14  they have stated a civil harassment claim because Wells Fargo made numerous duplicate requests

15  without any legitimate purpose.  *Id*. at 16-17.  Plaintiffs also attempt to add a claim for intentional

16  infliction of emotional distress under their civil harassment claim.  *Id*. at 16.  As to their Rosenthal

17  Act claim, Plaintiffs contend that, pursuant to that cause of action, they challenge only the actions

18  Defendants took in collecting the underlying debt and not Defendants engagement in the foreclosure

19  process.  *Id*. at 17-18.  Finally, Plaintiffs assert that they have stated a UCL claim predicated on

20  various state law violations, failure to comply with the HAMP guidelines, anti-trust violations, and

21  Defendants' false representation that they would consider Plaintiffs' loan modification only to deny

22  that request on technicalities or clearly incorrect financial calculations.  *Id*. at 18-19.

23        Third, Plaintiffs contend that their state common law claims are sufficient.  *Id*. at 19-24.

24  Addressing their contract related claims, Plaintiffs state that Defendants breached their oral promise to

25  provide a loan modification, made in February 2009, by never providing a modification that was not

26  later withdrawn.  *Id*. at 19.  Plaintiffs also argue that Defendants breached their subsequent promises

27  to grant a modification if certain payments were made and to postpone the trustee's sale.  *Id*.  Further,

28  Plaintiffs assert that Defendants were required to comply with HAMP once they agreed to discuss

loan modifications and Plaintiffs can properly rely on the HAMP guidelines as an predicate for a state breach of contract action. *Id*. at 20-21. Plaintiffs assert that Defendants breached the underlying loan agreement by failing to evaluate their modification request on the merits, frustrating the purpose of the contract. *Id*. at 21. Moreover, Plaintiffs argue that they detrimentally relied on Defendants' promises to offer a loan modification by making over $40,000 in loan payments between September 2011 and June 2012 and by providing personal financial documentation. *Id*. at 21-22. Regarding their fraud claims, Plaintiffs contend that they have provided specific allegations. *Id*. at 22. As to their cause of action for slander of title, Plaintiffs argue that the HBOR entitles them to injunctive relief and that the trustee's deed falsely and improperly asserts that Bank of America owns the property. *Id*. at 22-23. Moreover, Plaintiffs assert that HBOR does not require tender. *Id*. at 23. Finally, Plaintiffs contend that they are entitled to a declaration of their rights or duties with respect to the real property pursuant to California Civil Code section 1060. *Id*. at 23. Finally, Plaintiffs contend that they have properly alleged a duty of care in support of their negligence cause of action that Defendants owed them in considering their loan modification application. *Id*. at 23-24.

Fourth, Plaintiffs argue that they alleged that all Defendants acted as agents of Bank of America, so Bank of America is properly a defendant in this action. *Id*. at 24-25.

### 2.     Opposition to First American Motion

First, Plaintiffs argue that First American Trustee cannot assert its qualified litigation privilege in this case because (1) it was not properly substituted as a trustee; and (2) it acted with malice as evidenced by its false representations that it was acting on behalf of the beneficiary and without proper authority in executing the foreclosure related documents and carrying out the trustee's sale. Opposition to First American Motion, 5-7.

Second, Plaintiffs contend that they may properly sue First American Trustee pursuant to the HBOR for their failure to ensure that no loan modification application was pending when it executed the trustee's sale and that they may seek injunctive relief because they initiated their suit prior to the recordation of the trustee's deed. *Id*. at 7-11. Thus, the trustee's deed is invalid. *Id*. at 7.

Third, Plaintiffs assert that they satisfied the tender requirement through their various loan modification offers, pursuant to which they offered to pay more than the full market value of the

property.  *Id*. at 11-13.  Moreover, Plaintiffs state that tender is not required where the sale is void ab initio.  *Id*. at 13 n.7.

Fourth, echoing the arguments in the Opposition to Wells Fargo, Plaintiffs argue that (1) their federal claims are properly pled; and (2) their civil harassment claim is properly pled.  *Id*. at 13-18.

Fifth, Plaintiffs contend that their allegations of a civil conspiracy are sufficient to implicate First American Trustee, in particular with regard to the recordation of documents.  *Id*. at 18-19.

Sixth, Plaintiffs assert that the trustee's deed, and all documents that led to its execution, should be cancelled because it slanders their title to the property in question.  *Id*. at 19.

Seventh, as to the negligence claim, Plaintiffs argue that they properly alleged that First American Trustee owed them several duties pertaining to the execution and recordation of documents, a duty to ensure Wells Fargo and Bank of America complied with the HBOR, and a duty not to proceed with foreclosure before a sufficient period of time had elapsed since a loan modification request that triggered the HBOR had been denied.  *Id*. at 20.

Eighth, Plaintiffs assert that First American Trustee violated the UCL based on underlying violations of California statutes, anti-trust violations, and California common law violations by instituting improper and premature foreclosure proceedings without authorization to generate fees.  *Id*. at 21.

Ninth, Plaintiffs contend that declaratory relief pursuant to California Civil Code section 1060 is proper to ascertain their rights and duties under the contract or with respect to the property.  *Id*. at 21-22.

### E.      Replies

#### 1.      Wells Fargo Reply

In reply, Wells Fargo and Bank of America assert that eight of Plaintiffs' causes of action should be dismissed with prejudice and the remaining causes of action must be amended if they are to state a claim for relief.  Reply in Support of Wells Fargo Motion ("Wells Fargo Reply"), 2-8.

First, they contend that taking action to collect on a debt, where no judicial action is taken, does not violate the security first rule as a matter of law.  *Id*. at 2.

United States District Court
Northern District of California

Second, they assert that Plaintiffs cannot state a claim under the HBOR because Plaintiffs had not submitted a complete application and because Plaintiffs had submitted applications that had been considered and rejected prior to January 1, 2013.  *Id*. at 3-5.

Third, Wells Fargo and Bank of America argue that Plaintiffs cannot allege harassment for no legitimate purpose based on the legal activity of foreclosure, nor can they turn their cause of action into one for intentional infliction of emotional distress.  *Id*. at 5.

Fourth, they argue that Plaintiffs' equitable causes of action must be dismissed for Plaintiffs' failure to allege tender.  *Id*. at 5-6.

Fifth, they contend that the claim for slander of title fails based on privilege because Plaintiffs cannot dispute that they lost title at the trustee's sale, whether or not they seek redress for that loss in this suit.  *Id*. at 6-7.

Sixth, they assert that, at a minimum, Plaintiffs should be required to amend their Complaint (1) to specify conduct by Defendants that violated the Rosenthal Act; (2) to satisfy the federal pleading standard for anti-trust violations; (3) to allege fraud with specificity; (4) to allege breach of contract; (5) to allege facts that would give rise to a duty of care; and (6) to provide predicate violations in support of the UCL claim and declaratory relief claim.  *Id*. at 7-8.

### 2.    First American Reply

To begin, First American Trustee seeks judicial notice of the fact that both First American Trustee and First American Loanstar are the same entity.  Reply in Support of First American Motion ("First American Reply"), 2-3 (relying on a certificate of amendment filed with the Texas Secretary of State on May 13, 2010).  First American Trustee modifies its argument as to the HBOR by stating that Plaintiffs' dual tracking claims are without merit because the loan modification was denied between February and November 2009.  *Id*. at 4.

## III.    REQUESTS FOR JUDICIAL NOTICE

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably

1    be questioned." Fed. R. Evid. 201. As a general rule, the court "may not consider any material beyond

2    the pleadings in ruling on a Rule 12(b)(6) motion." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-99

3    (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, the

4    court may consider unattached evidence on which the complaint "necessarily relies" if: "(1) the

5    complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party

6    questions the authenticity of the document." *Id.* at 999 (citing *Marder v. Lopez*, 450 F.3d 445, 448

7    (9th Cir. 2006)). In addition, the court may take judicial notice of "matters of public record," but not

8    facts that may be "subject to reasonable dispute." *Id.* (citing *Lee*, 250 F.3d at 689).

9        The parties request judicial notice of a combined total of 35 exhibits, several of which are

10   redundant. The Court takes judicial notice of public filings that are matters of public record, but not

11   facts contained within those filings that may be subject to reasonable dispute.[18]

12       The remaining documents consist of (1) correspondence between Shahani and his

13   representatives and Wells Fargo and its representative; (2) printouts from the Nationwide Posting &

14   Publishing website; and (3) a report on the California foreclosure crisis compiled by several advocacy

15   groups. Plaintiffs' Request for Judicial Notice in Opposition to Wells Fargo Motion, Exs. 10-16, 18-

16   19. Although Plaintiffs have not articulated why judicial notice of these documents would be proper,

17   nearly all of the correspondence and both printouts from the Nationwide Posting & Publishing

18   Website were attached to the Complaint and must therefore be considered in considering the present

19   Motions.[19] As to the advocacy group report, the Court takes judicial notice of its existence, as that

20   fact is readily verifiable, but it does not take judicial notice of the veracity of its assertions or

21   conclusions as those matters are not readily verifiable and are subject to reasonable dispute. The

22   Court cannot consider only Exhibits 15 and 19, as neither is attached to the Complaint, referred to in

23   the Complaint, a matter of public record, capable of ready and accurate determination by reference to

24   sources whose accuracy cannot reasonably be questioned, or generally known within this territorial

25   jurisdiction.

26   ---

     [18] This includes Exhibits A-G of Wells Fargo and Bank of America's Request for Judicial Notice in Support of Wells
27   Fargo Motion; Exhibits A-E of First American Trustee's Request for Judicial Notice in Support of First American Motion;
     Exhibits 1- 9, 17 of Plaintiffs' Request for Judicial Notice in Opposition to Wells Fargo Motion; Exhibits A-C of
28   Plaintiffs' Request for Judicial Notice in Opposition to First American Motion; and Exhibit A of First American Trustee's
     Supplemental Request for Judicial Notice in Support of First American Motion.
     [19] This applies to Exhibits 10-14, 16.

1    **IV.     ANALYSIS**

2         **A.     Legal Standard**

3         A complaint may be dismissed for failure to state a claim for which relief can be granted

4    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose

5    of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star*

6    *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the

7    pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

8    pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

9    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

10        In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

11   "all allegations of material fact as true and construe[s] them in the light most favorable to the non-

12   moving party."  *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may

13   be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

14   theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must

15   "contain either direct or inferential allegations respecting all the material elements necessary to

16   sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562

17   (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A

18   pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

19   action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

20   555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

21   enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

22   The factual allegations must be definite enough to "raise a right to relief above the speculative level."

23   *Twombly*, 550 U.S. at 555.  However, a complaint does not need detailed factual allegations to survive

24   dismissal.  *Id.*  Rather, a complaint need only include enough facts to state a claim that is "plausible

25   on its face."  *Id.* at 570.  That is, the pleadings must contain factual allegations "plausibly suggesting

26   (not merely consistent with)" a right to relief.  *Id.* at 545 (noting that this requirement is consistent

27   with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled

28   to relief").

United States District Court
Northern District of California

23

1

United States District Court
Northern District of California

**B.      Subject Matter Jurisdiction**

2

**1.      Diversity Jurisdiction**

3        Federal subject matter jurisdiction based on diversity requires complete diversity of citizenship

4    and an amount in controversy in excess of $75,000.  28 U.S.C. § 1332(a).  Here, complete diversity is

5    lacking.  Plaintiffs are citizens of California.  Moreover, as this Court recently determined, First

6    American Trustee is a citizen of California because it is a Limited Liability Company wholly owned

7    by First American Title Company, a California corporation.  *See Perez v. Wells Fargo Bank, N.A.*, __

8    F.Supp.2d __, 2013 WL 892746, at *15 n.5 (N.D. Cal. Mar. 8, 2013); *see also Johnson v. Columbia*

9    *Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (LLC's are "citizen[s] of every state in

10   which [their] owners/members are citizens").[20]

11

**2.      Federal Question Jurisdiction**

12       "The district courts shall have original jurisdiction of all civil actions arising under the

13   Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Generally, "[a] case arises

14   under federal law where federal law creates the cause of action or where the vindication of a right

15   under state law necessarily turns on some construction of federal law."  *Republican Party of Guam v.*

16   *Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Constr. Laborers*

17   *Vacation Trust*, 463 U.S. 1, 8-9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).   Federal question

18   jurisdiction is found only where a federal question appears on the face of a properly pleaded

19   complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

20       Here, there are four claims that potentially fall within this Court's subject matter jurisdiction

21   on the basis of a federal question:  (1) the "Federal Violations" cause of action; (2) the "Violation of

22   Anti-Trust Laws" cause of action and its incorporation as a predicate to the UCL cause of action; (3)

23   the incorporation of alleged HAMP violations into Plaintiffs' breach of written contract, promissory

24   estoppel, and UCL causes of action; and (4) the declaratory relief cause of action.  As discussed

25   below, the Court dismisses all claims over which it has original federal question jurisdiction.

26

27

28   [20] In this case, First American Trustee's certificate of interested parties indicates that it is owned by First American Title Insurance Company rather than First American Title Company.  This does not affect the outcome, because First American Title Insurance Company is also a California corporation.

24

United States District Court
Northern District of California

### a.   Federal Violations Cause of Action

The Complaint can be read to allege three theories in support of the broad "federal violations" cause of action:  (1) Defendants entered a fair-lending settlement agreement with the United States Department of Justice to compensate African-American and Hispanic borrowers who were improperly steered into higher-priced subprime loans but Defendants have not complied with the terms of the settlement because they offered Shahani, a member of a racial minority in the United States, only a subprime loan; (2) Defendants have abridged Shahani's civil rights in violation of 42 U.S.C. § 1983; and (3) Defendants violated a settlement agreement between themselves and 49 state attorneys general as well as the federal government by refusing to modify Shahani's loan, by dual-tracking his loan modification application, and by robo-signing foreclosure related documents.  Complaint, ¶¶ 108-11, 115-19.

### i.   § 1983 Claim

Plaintiffs' § 1983 claim falls within the Court's federal question jurisdiction.  However, as discussed below, Plaintiffs have not sufficiently pled a cause of action pursuant to § 1983.  Their "Federal Violations" cause of action is dismissed to the extent it relies on a violation of § 1983.

§ 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States.  To state a claim for a violation of § 1983, a plaintiff must allege deprivation of a constitutional right by a government official acting "under the color of state law."  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  Plaintiffs have not alleged that Defendants were state actors.

### ii.   Breach of Settlement Agreements

Plaintiffs' claims for breach of the two settlement agreements are dismissed because Plaintiffs have not alleged that they are parties to either agreement, that they are intended third-party beneficiaries of either agreement, or that they otherwise have any authority to enforce either agreement.[21]  Plaintiffs make no argument in their briefing that they have any such authority.  To the extent their "Federal Violations" cause of action relies on this theory, it is dismissed.

---

[21] The Court notes that it is unclear why Plaintiffs characterize these claims as federal violations.  In general, for the purposes of construction and enforcement, settlement agreements are "governed by principles of local law which apply to interpretation of contracts generally."  *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (quotations omitted).  However, several courts have found a federal question where the plaintiffs alleged a breach of

### iii.    Violation of the Fair Housing Act

In their Opposition briefs, Plaintiffs argue that Defendants violated the Fair Housing Act.  In support of this point, Plaintiffs seek judicial notice of allegations in a complaint filed by the Department of Justice.  Those allegations were made in support of the claim that Wells Fargo engaged in lending practices that discriminated against African-American and Hispanic borrowers relative to non-Hispanic white borrowers.  *See* Opposition to Wells Fargo, 8-9; Plaintiffs' Request for Judicial Notice in Support of Opposition to Wells Fargo, Ex. 17.  In the Complaint itself, Plaintiffs made no reference to the Fair Housing Act.  The only allegations that can be read as supporting a claim for violation of the Fair Housing Act are:  (1) "Wells Fargo exhibited a pattern and practice of discrimination and mortgage abuse relating to people of color;" (2) a reference to the Department of Justice settlement agreement arising from the suit against Wells Fargo alleging discrimination against African-American and Hispanic borrowers because they were disproportionately steered into higher-priced subprime loans; and (3) Shahani "is a member of a racial minority in the United States, and Defendants have refused to offer [him] anything other than a subprime loan."  Complaint, ¶¶ 108-10.  These conclusory allegations, in a section of the Complaint that explicitly implicates other statutory authority and contractual authority, cannot be read to state a claim under the Fair Housing Act.  For example, the Complaint lacks even the allegation that Defendants considered Shahani's race, or were aware of his race, in making their lending decision.

### iv.    Leave to Amend

Although their "Federal Violations" cause of action is dismissed, Plaintiffs are given leave to amend to clearly plead a federal violation with supporting factual allegations.

### b.    Violation of Anti-Trust Laws Cause of Action

Plaintiffs allege that Defendants formed an unlawful trust to fix the terms of mortgage loans and loan modifications in California.  Complaint, ¶¶ 122-25, 128-29.  Plaintiffs specifically allege that this conduct violates the Cartwright Act, and generally allege that it violates California and federal law.  *Id.* at ¶¶ 122, 125-26.  The Court reads the Complaint as simultaneously alleging a violation of the Sherman Act, and thereby raising a federal question.

---

a federal contract governed by federal common law.  *See Omega v. Wells Fargo & Co.*, 2012 WL 685440, at *1 n.2 (N.D. Cal. Mar. 2, 2012) (collecting cases).  The Court does not decide this issue at the moment.

United States District Court
Northern District of California

Under California law, the Cartwright Act prohibits, among other things, any combination "[t]o prevent competition in [the] sale or purchase of any … commodity" or to "[a]gree in any manner to keep the price of … [any] commodity at a fixed or graduated figure." *Knevelbaard v. Kraft Foods, Inc.*, 232 F.3d 979, 986 (9th Cir. 2000) (quoting Cal. Bus. & Prof. Code § 16720(c), (e)(2)). Similarly, the federal Sherman Act prohibits "[e]very contract, combination … or conspiracy in restraint of trade," including horizontal price-fixing among competitors. *Id.* (citing 15 U.S.C. § 1; *United States v. Trenton Potteries Co.*, 273 U.S. 392, 397, 47 S.Ct. 377, 71 L.Ed. 700 (1927)). Both the Sherman Act and the Cartwright Act require the plaintiff to demonstrate antitrust standing, although the standards are slightly different. *Id.* at 987.

Under the Sherman Act, the court looks to: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity of apportioning damages." *Id.* "When horizontal price fixing causes buyers to pay more, or sellers to receive less, than the prices that would prevail in a market free of the unlawful pay restraint, antitrust injury occurs." *Id.* at 988.

Under the Cartwright Act, the plaintiff must show that an antitrust violation was the proximate cause of his injuries. *Kolling v. Dow Jones & Co.*, 137 Cal.App.3d 709, 723, 187 Cal.Rptr. 797 (1982). Moreover, an "antitrust injury" must be proved; that is, the type of injury the antitrust laws were intended to prevent, and which flows from the invidious conduct that renders defendants' acts unlawful. *Id.* In addition, a plaintiff must show an injury within the area of the economy that is endangered by a breakdown of competitive conditions. *Id.* at 724.

Here, Plaintiffs offer only conclusory allegations that Defendants have agreed to fix the prices and terms of loans and loan modifications. *See* Complaint, ¶¶ 122-25. Moreover, the Complaint expressly declines to provide "whether the prices agreed were high or low, reasonable or unreasonable." Complaint, ¶ 128. As such, Plaintiffs cannot plausibly allege that they suffered any injury as a result of any alleged price fixing. Thus, even if their conclusory allegations could state a cause of action, Plaintiffs have not alleged standing. Their anti-trust claims are dismissed with leave to amend. Likewise, they have not pled standing to assert this theory as a predicate for a violation of

United States District Court
Northern District of California

the UCL.  *See Kwikset Corp. v. Superior Court*, 51 Cal.App.4th 310, 337, 120 Cal.Rptr.3d 741, 246 P.2d 877 (2011) (to establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was a result of, i.e., *caused by*, the unfair business practice…").

### c.   HAMP Violations

Plaintiffs allege HAMP violations in their third cause of action for breach of a written contract and as predicate conduct for their UCL claim.  Contrary to their assertion in their Opposition, their breach of contract claim is a pure attempt to enforce the SPA against Wells Fargo and Bank of America as a third party beneficiary by holding them liable for failing to give Plaintiffs a loan modification in light of the HAMP criteria.  Complaint, ¶¶ 61-65; Opposition to Wells Fargo, 20. This Court joins many others in this district in holding that Plaintiffs are not third party beneficiaries under the SPA and are unable to enforce that agreement.  *See Cleveland v. Aurora Loan Servs., LLC*, 2011 WL 2020565, at *4 (N.D. Cal. May 24, 2011) (collecting cases); *see also Mora v. U.S. Bank N.A.*, 2012 WL 2061629, at *6 n.7 (N.D. Cal. June 7, 2012) (stating that the plaintiffs could not premise their breach of contract claim on an alleged failure to give them a HAMP modification because HAMP provides no private right of action).  Plaintiffs' third cause of action is dismissed, but Plaintiffs will be given an opportunity to amend their Complaint if they wish to elaborate a breach of written contract under a different theory.

To the extent Plaintiffs incorporate HAMP violations in their causes of action for promissory estoppel and violation of the UCL, this court joins many other district courts in concluding that "no federal question [is] presented merely because [Plaintiff's] state law claims may incorporate or turn upon allegations of HAMP violations."  *See*, *e.g.*, *Brothers v. Bank of America, N.A.*, 2012 WL 4471590, at *2 n.2 (N.D. Cal. Sept. 26, 2012) (quoting *Carlos v. Bank of America Home Loans*, 2011 WL 166343, at *1 (C.D. Cal. Jan. 13, 2011)); *De Long v. Bank of America, N.A.*, 2012 WL 1498868, at *4 (N.D. Cal. Apr. 27, 2012) (collecting cases); *Akil v. Carrington Mortg. Servs., LLC*, 2012 WL 3231330, at *1 (E.D. Cal. Aug. 6, 2012).  Moreover, those claims are based almost entirely on questions of state law.  The Court declines to exercise supplemental jurisdiction over those causes of action.

#### d.   Declaratory Relief Cause of Action

On the face of the Complaint, it is unclear whether the declaratory relief cause of action is asserted on the basis of state or federal law.  In their Opposition, Plaintiffs clarify that their declaratory relief cause of action is brought pursuant to California Code of Civil Procedure section 1060.  Opposition to Wells Fargo, 23.  In any event, there would be no federal question even if Plaintiffs sought declaratory relief pursuant to 28 U.S.C. § 2201.

The Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction.  *Vaden v. Discovery Bank*, 556 U.S. 49, 70 n.19, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009).  The Act is procedural and does not extend the jurisdiction of the federal courts.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).  "The use of the declaratory judgment statute does not confer jurisdiction by itself if jurisdiction would not exist on the face of a well-pleaded complaint brought without the use of 28 U.S.C. § 2201."  *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985).

The Court has already dismissed all federal questions in the Complaint.  This cause of action seeks only for the court to determine, on the basis of Plaintiffs' state law theories, that Plaintiffs continue to be the rightful owners of the subject property.  It does not independently give rise to a federal question.  Moreover, to the extent that it can be read as a defensive action anticipating a future lawsuit, that lawsuit would be a state law action, such as an unlawful detainer action, seeking to eject Shahani from the property at issue.  *See Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) (if the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights then federal question jurisdiction exists).  The Court declines to exercise supplemental jurisdiction over this claim.

#### 3.   Supplemental Jurisdiction Over Remaining State Law Claims

"[Supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim" if, among other reasons, "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In addition, when "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be … left for resolution to state tribunals."  *Gibbs*, 383 U.S. at 727; *see also* 28 U.S.C. § 1367(c)(2).  Here, Plaintiffs' state law claims form the body of this action.  They involve a number of disputes arising out of the parties' loan modification discussions, the foreclosure process, and compliance with California statutes pertaining to both.  Accordingly, having dismissed all claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims.  The remaining state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint is dismissed without prejudice.  Plaintiffs may file an amended complaint within 10 days.  If no amended complaint is filed the Clerk shall close the file.

IT IS SO ORDERED.

Dated: June 24, 2013

_____

JOSEPH C. SPERO
United States Magistrate Judge