1  ROCKRIDGE TRUST
   RAY K. SHAHANI, TRUSTEE SBN 160814
2  Twin Oaks Office Plaza
   477 Ninth Avenue, Suite 112
3  San Mateo, CA 94402-1858
   Tel:    (650) 348-1444
4  Fax:    (650) 348-8655
   Email: RKS@ATTYCUBED.COM
5  In Pro Per

6

7                  UNITED STATES DISTRICT COURT

8        NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

9  ROCKRIDGE TRUST, a California Trust,      | Case No:       C 13-01457 JCS
   and RAY K. SHAHANI, TRUSTEE, an           |
   Individual,                               | Hon. Magistrate Judge Joseph C. Spero
10                                           |
                 Plaintiffs,                 | OPPOSITION TO DEFENDANTS',
11                                           | WELLS FARGO, BANK, N.A. AND BANK
        vs.                                  | OF AMERICA, N.A., MOTION TO
12                                           | DISMISS FAC PURSUANT TO
   WELLS FARGO NA, a South Dakota            | RULE 12(B)(6); MEMORANDUM OF
13 corporation, BANK OF AMERICA NA, a        | POINTS AND AUTHORITIES
   North Carolina corporation, FIRST         |
14 AMERICAN TRUSTEE SERVICING                |
   SOLUTIONS LLC, a Texas corporation,       |
15 FIRST AMERICAN LOANSTAR TRUSTEE           | Hearing:
   SERVICES LLC, a Texas corporation, and    | Date:   September 20, 2013
16 DOES 1-25.                                | Time:  9:30 AM
                                             | Department:   Courtroom G, 15th Floor
17               Defendants.                 | _____
                                             |
18                                           | **Demand for Jury Trial**
                                             |
19 _____  | Trial Date:     Not Set

20      Plaintiffs ROCKRIDGE TRUST, a California Trust ("RRT"), and RAY K. SHAHANI,

21 TRUSTEE, an Individual ("Shahani") (collectively "Plaintiffs") hereby oppose the MOTION TO

22 DISMISS PURSUANT TO RULES 12(B)(6), filed by Defendants WELLS FARGO NA, a

23 South Dakota corporation ("Wells Fargo"), BANK OF AMERICA NA, a North Carolina

24 corporation ("Bank of America") (collectively "Defendants") on August 1, 2013.

25      This OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO

26 RULE 12(B)(6) ("Opposition") is based upon this memorandum and the concurrently submitted

27 and filed REQUEST FOR JUDICIAL NOTICE ("RJN"), the pleadings on file and upon such

28 further oral and documentary evidence as may be presented at the hearing of this matter.

TABLE OF CONTENT

**Page**

I.     STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.   LEGAL ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.     Federal Claims Are Supported By Recent Case Law. . . . . . . . . . . . . . . . . 7

              1.     Plaintiff Has Adequately Pleaded Violations of the Federal Fair Debt

                     Collection Practices Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              2.     Wells Fargo and Bank of America Are Liable for Violation of the   Equal

                     Credit Opportunity Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.     Plaintiffs' Statutory Claims Are Properly Pleaded. . . . . . . . . . . . . . . . . . . 10

              1.     California's "Security First" Rule Was Violated by Defendants. . . . . . 10

              2.     Defendants Violated Homeowners' Bill of Rights. . . . . . . . . . . . . . . 12

              3.     Defendants' Harassing Conduct Lacks a Legitimate Purpose

                     and Has Caused Plaintiffs Distress. . . . . . . . . . . . . . . . . . . . . . . . 14

              4.     Defendants' Conduct Is Proscribed by the Rosenthal Fair Debt Collection

                     Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

              5.     Defendants Have Violated California's Unfair Competition Law. . . . . 16

       C.     Plaintiffs' State Common Law Claims Are Sufficient. . . . . . . . . . . . . . . . . 17

              1.     The Contract Claims State a Claim. . . . . . . . . . . . . . . . . . . . . . . . . 17

                     a.     Oral Contract Not Contradicted by Face of Contract. . . . . . . . 17

                     b.     HAMP Guidelines Apply to Plaintiffs' Loan. . . . . . . . . . . . . . 18

                     c.     Defendants Have a Duty Not to Frustrate The Purpose

                            of the Loan Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                     d.     Plaintiffs Relied to their Detriment on Defendants' Promises. . . 20

              2.     Plaintiff's Pleadings Adequately Plead Fraud with Specificity. . . . . . . 20

              3.     Slander of Title Caused by Recordation of Deed. . . . . . . . . . . . . . . 21

              4.     Plaintiffs Have Properly Alleged A Duty of Care. . . . . . . . . . . . . . . 21

       D.     Tender Is Not Required In This Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       E.     Defendants Are All Agents of Bank of America. . . . . . . . . . . . . . . . . . . . . 24

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1                                    TABLE OF AUTHORITIES

2    **Cases:**                                                                                    **Page**

     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).. . . . . . . . . . . . . . . . . . . . . . 7, 12
3
     *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

4    *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992)
5            2 Cal.4th 342, 371—372, 6 Cal.Rptr.2d 467, 826 P.2d 710. . . . . . . . . . . . . . . 19

     *Champlaie v. BAC Home Loans Servicing, LP*, 2009 U.S. Dist. LEXIS
6            102285, 2009 WL 3429622 at *18 (E.D. Cal. October 22, 2009). . . . . . . . . . . 16

7    *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658, 328 P.2d 198. . . . . . . . 19

8    *Corwin v. Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 853 94, Cal.Rptr.
             785, 484 P.2d 953. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
9
     *Corvello v. Wells Fargo Bank NA et al*, 9th U.S. Circuit Court of Appeals, No. 11-16234
10           (Aug. 8, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11   *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 509, 108 Cal.Rptr.2d 10. . . . . . 19

     *In re Prestige Limited Partnership – Concord* (9th Cir. 2000) 234 F. 3rd 1108. . . . . . . . . . 11
12
     *Izenberg v. ETS Services, LLC* (C.D. Cal. 2008) 589 F.Supp.2d 1193, 1199. . . . . . . . . . . . 16
13
     *John Schlegel v. Wells Fargo, NA, Case No. 11-16816 (D.C. No. 3:10-cv-05679-CRB) 2013.* . . 9
14
     *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). . . . . . . . . . . . . . . . . . . . . . . . 7

15   *Morris v. BMW of N. Am.*, LLC, No. C 07-02827, 2007 WL 3342612, *6
             (N.D. Cal. Nov. 7, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
16
     *Natividad v. Wells Fargo Bank, et al.*, Case No. 3:12-cv-03646-JSC. . . . . . . . . . . . . . . . . 8

17   *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1249 (E.D. Cal. 2010). . . . . . . . . 21

18   *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001, 25
             Cal.Rptr.2d 550, 863 P.2d 795. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
19
     *Roseleaf Corp. v. Chierighino* (1963) 59 Cal. 2d 35, 38-39. . . . . . . . . . . . . . . . . . . . 10, 11
20
     *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) . . . . . . . . . . . 7
21
     *Security Pacific National Bank v. Wozab* (1990) 51 Cal. 3rd 991, 997. . . . . . . . . . . . 10, 11

     *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.
22           4th 1004, 1045, 90 Cal.Rptr.3d 453. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
23
     *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (4th Dist. 1980). . . . . . . . . . . . . . . . . . . . 21
24
     *Wigod v. Wells Fargo Bank, N. A.,* No. 11-1423; 2012 WL 727646 at * 19-29
25           (7th Circuit, Ill Mar. 7 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) . . . . . . . . . . . . . . . . . 7

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statues:**                                                                                    **Page**

Fair Housing Act of 1968 (FHA) (42U.S.C.A. §§ 3601-3631) Sec. 805 . . . . . . . . . . . . . . . 8

Public Law 88-352 (78 Stat. 241), Sec. 601. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Homeowners' Bill of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

15 U.S.C. § 1691(a)(I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1692e(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. § 3602(d), § 3605.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Bus. Prof. Code § 16720 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CCP § 726(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civil Code § 527.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Civ. Code § 1060.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cal. Civ. Code § 1788, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Civ. Code § 2923.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Civil Code § 2923.6(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civil Code § 2923.6 (c) and (d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Cal. Civ. Code § 2924(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Civ. Code §§ 2924 (g) and (h).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Civ. Code § 2924.12.(a)(1) and (2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*///*

*///*

Opposition to Wells Fargo et al. Motion to Dismiss FAC - Memo P&A
Rockridge Trust v. Wells Fargo et al.
iii                                                                                    C 13-01457 JCS

**I. STATEMENT OF FACTS**

Plaintiff ROCKRIDGE TRUST is a Revocable Living Trust, with RAY K. SHAHANI as Trustee and Trustor of ROCKRIDGE TRUST, are the lawful owners of a parcel of Real Property commonly known as: 82 Rockridge Drive, San Francisco, CA 94116., APN# : Lot 027A Blk: 2121A 2303-025-013 (hereinafter "Subject Property"). St. Ct. Compl., ¶ 1.

Additionally, Wells Fargo was the originator of the mortgage loan in this case.[1] Bank of America in the current holder of the note under an Assignment of Deed of Trust. Thus, Wells Fargo is the Master Servicer, i.e., the duly authorized servicing agent for Bank of America. Moreover, Wells Fargo and Bank of America have entered into a Pooling and Servicing Agreement (hereinafter the "PSA"). St. Ct. Compl., ¶¶ 2-3.

Plaintiff alleges that one purpose of the PSA is to document that in the regular course of business Wells Fargo originates and acquires mortgage loans and desires by the PSA to confirm the terms and conditions under which Bank of America will "acquire the mortgage loans" so originated. St. Ct. Compl., ¶ 4.

On or about February 23, 2007, Plaintiffs entered into a consumer loan transaction in the original sum and amount of $755,250 with originator Defendant Wells Fargo (the "Loan") to re-finance their single family residential property that is commonly known as 82 Rockridge Drive, San Francisco, CA 94116, and described as APN 2303-025-013, Lot 027A, in Block 2121A, in the City and County of San Francisco, State of California, recorded in Book J341, Page 0099 of Maps in the Office of the County Recorder of the County of San Francisco, California (the "Subject Property"). Plaintiffs executed a Promissory Note ("Note") as part of the Loan transaction. Additionally, in connection with the Loan transaction, Wells Fargo took a security interest in the Subject Property in the form of a Deed of Trust recorded with the San Francisco Recorder's Office on or about March 6, 2007 ("DOT"). A true and correct copy of the DOT is

---

[1]Home Mortgage was formerly a separate corporate entity known as Wells Fargo Home Mortgage, Inc., but in or around May 2004, it merged with Wells Fargo and became a division of Wells Fargo. Thus, Wells Fargo and Home Mortgage are one and the same and Wells Fargo is liable for any and all of Home Mortgage's conduct alleged herein. Plaintiffs hereinafter differentiate the two as Wells Fargo deceptively differentiated between the two entities when dealing with Plaintiffs.

1   attached to Plaintiffs' Request for Judicial Notice ("Plaintiffs' RJN"), Exhibit "1" and

2   incorporated herein by reference. St. Ct. Compl., ¶ 20.

3          Thereafter, for a period of close to 2 years, Plaintiffs paid to Wells Fargo the full amount

4   of $4012.27 due on a monthly basis under the interest-only loan. St. Ct. Compl., ¶ 23.

5          On or about February, 2009, Plaintiffs first requested a loan modification to reduce the

6   fixed loan interest rate of 6.375% to a lower interest rate commensurate with the then available

7   loan rates on similar loans of between 2 and 4%. The value of Defendant's residence had

8   plummeted due to the nationwide recession gripping the country. At the time, Plaintiffs were less

9   than 30 days late on mortgage payments. Thus, prior to receiving any notice of default, Plaintiffs

10  entered into workout negotiations with Home Mortgage regarding the Loan. If during 2009,

11  Home Mortgage had not purported to engage in a loan modification process and had not refused

12  to accept regular monthly loan payments during the subsequent period of the loan-modification

13  process, the amount due on the $755,250 note would be far less than the purported $972,843.08

14  paid for the note by Bank of America at the alleged Trustee's Sale on March 4, 2013. A true and

15  correct copy of the Trustee's Deed Upon Sale is attached to Plaintiffs' RJN, Exhibit "2" and

16  incorporated herein by reference. St. Ct. Compl., ¶ 25.

17         Despite ongoing negotiations between Home Mortgage and Plaintiffs regarding loan

18  modification, on or about July 20, 2009, First American Loanstar caused a Notice of Default

19  (hereafter "NOD") to be recorded, listed itself as the entity for Plaintiffs to contact. However, as

20  a matter of public record, FIDELITY NATIONAL INSURANCE TITLE COMPANY was still

21  the trustee, and therefore First American Loanstar lacked authority to act on behalf of the

22  Beneficiary. In fact, as First American now point out in their statement of FACTUAL AND

23  PROCEDURAL HISTORY,"[a]fter the NOD that Wells Fargo caused to be recorded a

24  Substitution of Trustee on August 21, 2009, naming First American Loanstar Trustee Services

25  ('First American') as the new trustee on the Loan. RJN Exh. 3; Exh. 4 to FAC." First American's

26  Memorandum of Points and Authorities in support of Motion to Dismiss FAC, lines 11-14. Thus,

27  first American had no legal basis to execute the NOD as it was not the trustee on the DOT and

28  had not been substituted in as trustee as of May 6, 2009.  Therefore, the NOD is void ab initio.

1    St. Ct. Compl., ¶ 27.

2        Plaintiff alleges that Wells Fargo was the beneficiary of the DOT on May 6, 2009.

3    Moreover, the NOD is also wrongful and void because it was executed by First American as

4    "agent for the current beneficiary."  First American had no legal basis to execute the NOD as it

5    was not the trustee on the DOT and had not been substituted in as trustee as of May 6, 2009.

6    Therefore, the NOD is void ab initio. St. Ct. Compl., ¶ 27.

7        As stated above, on or about August 19, 2009, Wells Fargo executed a Substitution of

8    Trustee ("SOT") replacing Fidelity National and naming First American Loanstar as Trustee

9    under said DOT. A true and correct copy of the unsigned SOT is attached to Plaintiffs' RJN,

10   Exhibit "4" and incorporated herein by reference. St. Ct. Compl., ¶ 28.

11       The SOT clearly establishes that First American Loanstar had no authority to execute the

12   Notice of Default as the trustee of the beneficiary, Wells Fargo, one month earlier.  Moreover, it

13   is fraudulent as it is not executed by Wells Fargo but instead First American Loanstar substitutes

14   itself as trustee which violates the terms of the DOT and California law.  First American

15   Loanstar failed to act as an impartial third party in this transaction and overstepped its boundaries

16   as a trustee and "attorney in fact." St. Ct. Compl., ¶ 29.

17       On or about September 3, 2009, Wells Fargo recorded an Assignment of Deed of Trust

18   ("Assignment of DOT") in the County of San Francisco Recorder's Office which purportedly

19   assigned all beneficial interest in the DOT to Bank of America as Trustee for the Trust.  A true

20   and correct copy of the Assignment of DOT is attached to Plaintiffs' RJN, Exhibit "5" and

21   incorporated herein by reference. St. Ct. Compl., ¶ 30.

22       On or about October 21, 2009, First American recorded a first NOTICE OF TRUSTEE'S

23   SALE (hereafter "First NOTS") stating that on November 11, 2009, less than 30 days later, First

24   American Loanstar would sell, at public auction, all right, title and interest to the Subject

25   Property held by it under the DOT due to an unpaid balance due on the note of $792,417.92.

26   Attached to the First NOTS was a Declaration under penalty of perjury purportedly executed by

27   Marsha Graham as Assistant Vice President of Wells Fargo Home Mortgage, Inc.  Said

28   declaration was false as Wells Fargo Home Mortgage, Inc. seized to exist in 2004.  Thus, Ms.

1   Graham's statement that Wells Fargo Home Mortgage, Inc. "obtained from the Commissioner of

2   Corporations a final or temporary order of exemption pursuant to California Civil Code Section

3   2923.53 that is current and valid on the date the [sic] accompanying Notice of Sale is filed" is

4   false.  A true and correct copy of the First NOTS with declaration is attached to Plaintiffs' RJN,

5   Exhibit "6" and incorporated herein by reference. St. Ct. Compl., ¶ 31.

6           On November 11, 2009, Plaintiffs filed their petition for bankruptcy under Chapter 11 of

7   the United States Bankruptcy Code for personal business reorganization. A true and correct copy

8   of the Notice of Bankruptcy in Case No. Number 09-33549 is attached to Plaintiffs' RJN, Exhibit

9   "7" and incorporated herein by reference. St. Ct. Compl., ¶ 33.

10          Between November 2009 and July 2011, Wells Fargo unilaterally terminated loan

11  modification negotiations.

12          On July 13, 2011, Wells Fargo filed a MOTION FOR RELIEF FROM STAY in

13  Plaintiffs' bankruptcy case. On August 13, 2011, the Court entered its Order Granting Wells

14  Fargo's motion for relief from stay. A true and correct copy of the Order Granting Relief from

15  Stay is attached to Plaintiffs' RJN, Exhibit "8" and incorporated herein by reference. St. Ct.

16  Compl., ¶ 34.

17          Upon obtaining relief from the Bankruptcy Court from the automatic stay, Wells Fargo

18  invited Plaintiffs to engage in further loan modification negotiations. Within days of submitting

19  yet another complete battery of confidential, sensitive and extensive financial documentation,

20  Plaintiffs were orally instructed and advised that in order to qualify for the requested loan

21  modification, the "investor's guidelines" required him to be a minimum of 3 months current on

22  his Loan payments. In an about-face to their prior refusal to accept loan payments, Wells Fargo

23  started to accept monthly payments of $4012.27 beginning in September of 2011. Making

24  payments on the Loan at an interest rate of 6.375%, Defendants unfairly continued to take

25  advantage of Plaintiffs by demanding payments at roughly 2-3 times the then-going rate for

26  modified loans provided to other similarly-situated borrowers, i.e., borrowers underwater on their

27  first mortgage on their principal residence. Without ever providing Plaintiffs with any

28  information of what the investor's guidelines actually were, 10 months later Defendants once

1   again denied Plaintiffs' request for a Loan modification, stating simply that "as per investor

2   guidelines" they could not find "affordability" for Plaintiffs' requests. St. Ct. Compl., ¶ 35.

3          On or about August 16, 2012, First American recorded a second NOTICE OF

4   TRUSTEE'S SALE (hereafter "Second NOTS") stating that on September 11, 2012, less than 30

5   days later, First American Loanstar would sell, at public auction, all right, title and interest to the

6   Subject Property held by Bank of America under the assigned DOT due to an "unpaid balance",

7   "reasonable estimated costs" and "interest" due on the note of $932,099.94. A true and correct

8   copy of the Second NOTS is attached to Plaintiffs' RJN, Exhibit "9" and incorporated herein by

9   reference. St. Ct. Compl., ¶ 36.

10          Thereafter, Plaintiffs and Wells Fargo continued to engage in loan modification

11   negotiations, with Wells Fargo providing lists of requested documents, information and forms to

12   complete, and in response, Plaintiffs transmitting via facsimile either directly to Wells Fargo, to

13   Plaintiff's loan modification consultant Denise Wilhite Thomas and/or Plaintiff's congressional

14   representative Niall Roberts in the office of Jackie Speier, several hundred pages of financial and

15   property-related responsive information and documents, typically accompanied by cover letters

16   detailing the items being responded to or produced, through March 11, 2013. St. Ct. Compl., ¶

17   37.

18          In addition, between August of 2012 and January of 2013, Wells Fargo continued to

19   postpone the Trustee's Sale at the 11th hour, given Wells Fargo's continued requests for new,

20   corrected, updated, re-formatted and, often duplicate, information and documents and timely

21   responses by Plaintiffs. On September 10, 2012, Wells Fargo postponed the September 11, 2012

22   sale date until November 30, 2012. On December 7, 2012, Wells Fargo postponed the December

23   18, 2012 sale date until January 17, 2013. On January 15, 2013, Wells Fargo postponed the

24   January 17, 2013 sale date until March 4, 2013. A true and correct copy of a printout from the

25   Nationwide Posting & Publishing website showing (1) the Trustee's Sale scheduled for

26   December 18, 2012, rescheduled to January 17, 2013, and (2) the Trustee's Sale scheduled for

27   January 17, 2013, rescheduled to March 4, 2013 is attached to Plaintiffs' RJN, Exhibit "10" and

28   incorporated herein by reference. St. Ct. Compl., ¶ 38.

1    On February 18, 2013, during the time when the Trustee's Sale was set for March 4,

2    2013, one Keri Peck, allegedly of Wells Fargo, indicated in writing to Plaintiff: "We anticipate

3    that we will be able to provide you with resolution by March 07, 2013." A true and correct copy

4    of Ms. Peck's letter dated February 18, 2013 is attached to Plaintiffs' RJN, Exhibit "11" and

5    incorporated herein by reference. St. Ct. Compl., ¶ 39.

6        On February 19, 2013, Wells Fargo requested 26 items of information and/or types of

7    documents, and 4 business days later, on February 25, 2013, Plaintiffs responded by fax with a 3-

8    page letter and 128 pages of documentation. A true and correct copy of the February 19 and 25

9    communications including cover letters and fax transmittal report is attached to Plaintiffs' RJN,

10   Exhibit "12" and incorporated herein by reference. St. Ct. Compl., ¶ 40.

11       On Thursday, February 28, 2013, Wells Fargo requested 7 additional and/or duplicate

12   items of information or documents, and immediately the next business day Friday, March 1,

13   2013, as well as on Saturday of that weekend, March 2, 2013, Plaintiffs transmitted a total of an

14   additional 284 pages of responsive information and documentation to Wells Fargo by fax. A true

15   and correct copy of the February 28 and March 1 and 2 communications including cover letters

16   and fax transmittal report is attached to Plaintiffs' RJN, Exhibit "13" and incorporated herein by

17   reference. St. Ct. Compl., ¶ 41.

18       Then, on March 7, 2013, Wells Fargo requested, via Plaintiffs' congressional

19   representative's office, yet again an additional 4 items of additional and/or duplicate items

20   needed for evaluation of Plaintiffs' request for loan modification, and in response, on March 8

21   and again on March 11, 2013, Plaintiffs transmitted a line-item letter response along with

22   references to documents previously transmitted to Wells Fargo back again to Wells Fargo for

23   their continued further consideration. A true and correct copy of the March 7-11 communications

24   including cover letters and fax transmittal report is attached to Plaintiffs' RJN, Exhibit "14" and

25   incorporated herein by reference. St. Ct. Compl., ¶ 42.

26       By letter dated March 19, 2013, Wells Fargo stated that they would respond to Plaintiff's

27   loan modification request by April 2, 2013. A true and correct copy of the letter is attached to

28   Plaintiffs' RJN, Exhibit "15" and incorporated herein by reference.

1   Wells Fargo has confirmed receipt of the requested documents they would have received

2   on March 8 and 11, 2013, however Wells Fargo has not responded further to Plaintiffs regarding

3   their request for loan modification.

4   However, on March 4, 2013, despite having told Plaintiffs it would make a decision on

5   the loan modification by March 7, Defendants claim to have caused the Subject Property to be

6   "Sold back to beneficiary for: $972,843.08". A true and correct copy of a printout from the

7   Nationwide Posting & Publishing website showing the property sold to the Beneficiary by

8   Trustee's Sale on March 4, 2013, is attached to Plaintiffs' RJN, Exhibit "16" and incorporated

9   herein by reference.[2] St. Ct. Compl., ¶ 44.

10  **II.   STANDARD OF REVIEW**

11  To survive dismissal, the complaint must allege "enough facts to state a claim to relief

12  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). " 'Factual

13  allegations must be enough to raise a right to relief above the speculative level.' " *Williams v.*

14  *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

15  The trial Court must accept "all factual allegations in the complaint as true and construe the

16  pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt.*

17  *Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072

18  (9th Cir. 2005)).

19  **III.   LEGAL ARGUMENTS**

20  **A.   Federal Claims Are Supported By Recent Case Law**

21

22  [2]As alleged by Plaintiff in his State Court Complaint, on March 4, 2013, at about 10:30 AM

23  Pacific Time, Plaintiff spoke with Keri Peck of Wells Fargo, who advised him that contrary to her

24  earlier promise, she did not request postponement of the Trustee's Sale scheduled for 2:00 PM on
    that day.  Later that day, Plaintiff went to the Van Ness Avenue entrance of San Francisco City Hall,

25  and arriving at 1:45 PM, waited there, and observed the proceedings until the small group of
    individuals that had gathered there starting at around 2 PM had fully dispersed by around 2:30 PM.

26  During the time he was there, Plaintiff only observed 2 separate individuals appearing to auction
    properties, and he did not hear or see anyone sell or auction the property located at 82 Rockridge

27  Drive in San Francisco, California. Plaintiff has stated that he does not believe that on March 4,
    2012, at 2:00 PM, anyone actually auctioned my property at the Van Ness entrance of San Francisco

28  City Hall. TRO Decl. RKS, ¶¶ 23-24.

**1.**     **Plaintiff Has Adequately Pleaded Violations of the Federal Fair Debt Collection Practices Act**

Defendants Bank of America and Wells Fargo rely on 2, unpublished district court decisions for the proposition that foreclosing on property is not debt collection within the meaning of the FDCPA. However, more recent caselaw filed in this action by the First American defendants in their motion to dismiss the FAC demonstrate that in fact "mortgage foreclosure does qualify as debt collection for purposes of the FDCPA." *Ibid*, page 3, lines 3-4. In particular, the court held:

> The Court's holding here does not mean that all conduct taken in connection with enforcement of secured interests, including nonjudicial foreclosure, is exempt from the Act (except, of course, section 1692f(6)). For instance, persons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for foreclosure may be considered debt collectors. *See Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.*, 2010 WL 3769459, at *4 (N.D. Cal. Sept. 22, 2010) (denying motion to dismiss FDCPA claim where defendants' behavior "goes beyond mere foreclosure proceedings, as plaintiffs alleged that defendants repeatedly obfuscated the truth with regard to the loan amounts and payments"); *Wilson*, 443 F.3d at 376–77 (finding FDCPA applicable where law firm-defendant sent multiple correspondences to plaintiff that included the warning that the correspondence was an "attempt to collect a debt"); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (holding defendant liable under the Act where defendant sent a letter to plaintiff stating that the "Lender hereby demands full and immediate payment of all amounts due," and that "unless you pay all amounts due and owing under the Note," attorney's fees "will be added to the total amount for which collection is sought"); *Piper*, 396 F.3d at 230 (rejecting defendant's argument that it was not subject to the FDCPA because it was simply enforcing lien where defendant wrote six letters demanding payment of the balance due and "made a number of telephone calls to the Piper residence in an effort to secure payment of the delinquent water service fees").5 Thus, while the Court rejects Plaintiffs' argument to the extent they assert that *all* actions related to nonjudicial foreclosure are considered debt collection, the Court also rejects Defendants' argument to the extent they contend that *any* action related to a nonjudicial foreclosure cannot be considered debt collection.

Dkt. 47-1, Exh. "A" to Dkt. 47, First American Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss FAC, citing *Natividad v. Wells Fargo Bank, et al.*, Case No. 3:12-cv-03646-JSC, page 13, lines 15-28 and page 14, lines 1-8.

In the present case, Wells Fargo and Bank of America entered into a review for loan modification at the request of the borrower. As the complaint outlines, Wells Fargo and Bank of America acted in bad faith and in violation of statutory and case law authority in denying Plaintiffs' request for loan modification. The wrongful acts committed by Wells Fargo and Bank

1  of America were independent of their right to foreclose. These activities of evaluating Shahani's

2  financial status, accepting payments from Shahani and then denying them, etc., all unrelated to

3  and inconsistent with the procedure for mortgage foreclosure. Under *Natividad*, Wells Fargo and

4  Bank of America are in violation of the Federal FDCPA.

5        Even more recently, in a case concerning the Home Affordable Modification Program

6  (HAMP), a government program created to help distressed homeowners with delinquent

7  mortgages, the issue was whether Wells Fargo was contractually required to offer plaintiffs a

8  permanent mortgage modification after they complied with the requirements of a trial period plan

9  (TPP). Following the Seventh Circuit, the court held that Wells Fargo was required to offer the

10  modification. The district court should not have dismissed plaintiffs' complaints when the record

11  showed that Wells Fargo had accepted and retained the payments demanded by the TPP, but

12  neither offered a permanent modification, nor notified plaintiffs they were not entitled to one, as

13  required by the terms of the TPP. *Corvello v. Wells Fargo Bank NA et al*, 9th U.S. Circuit Court

14  of Appeals, No. 11-16234 (Aug. 8, 2013). A true and accurate copy of the *Corvello* opinion is

15  attached hereto as Exhibit A.

16        In *Corvello*, just like in the present case, Wells Fargo was the initial lender but the deed

17  of trust was assigned to another investor. In *Corvello*, just like in the present case, Wells Fargo

18  continued to act as the "loan servicer". In *Corvello*, the Appellate Court stated: "Wells Fargo

19  concedes it is a debt collector under the meaning of the Rosenthal Act." *Ibid*, at page 14, last

20  paragraph. "The district court, while dismissing the claim on other grounds, correctly recognized

21  that Wells Fargo was engaged in debt collection.". *Ibid*, at page 15, first paragraph.

22        On July 3, 2013, the United States Court of Appeals for the Ninth Circuit (San Francisco)

23  issued an opinion in the case of *John Schlegel v. Wells Fargo, NA*, Case No. 11-16816 (D.C. No.

24  3:10-cv-05679-CRB) 2013. In that case, a claim against Wells Fargo brought under FDCPA was

25  dismissed because the complaint failed to allege that the principal business of the bank's

26  business was the collection of debts. However, in that case, the loan and deed of trust were

27  assigned to Wells Fargo. *Ibid*, at page 4, first paragraph.

28        However, in the present case, Wells Fargo assigned the deed of trust to Bank of America,

1   and so Wells Fargo was, in fact, as acting as the loan servicer, collecting the debt of Bank of

2   America.  Wells Fargo must admit that it is a debt collector under the meaning of the term as

3   used in the Federal FDCPA. Thus, Wells Fargo is in fact liable to Shahani for violation of the

4   Federal FDCPA.

5            **2.**      **Wells Fargo and Bank of America Are Liable for Violation of the**

6                    **Equal Credit Opportunity Act**

7       In *Schlegel*, the court determined that Wells Fargo must face borrowers' claims that it

8   violated the Equal Credit Opportunity Act by starting foreclosure proceedings while the

9   customers were making payments under a loan-modification agreement. The U.S. Court of

10   Appeals in San Francisco reinstated the claims of John and Carol Schlegel, who received default

11   notices after Wells Fargo told them to proceed with payments under a loan-modification plan and

12   failed to respond to their inquiry seeking an explanation. The bank's action, the court found,

13   constituted a revocation of credit without notice required under the Equal Credit Opportunity

14   Act, which makes it illegal for creditors to discriminate against applicants and requires them to

15   provide an explanation within 30 days when denying or revoking credit or changing credit terms.

16       The facts of the *Schlegel* case are surprisingly similar to those of the present case. In the

17   present case, Wells Fargo also approved certain loan payments both before and again after

18   initiating foreclosure proceedings, but later without warning or explanation stopped accepting

19   payments and proceeded with further foreclosure activity. At the same time, it continued to

20   engage in loan modification review and consideration with Plaintiffs.

21       Both Bank of American and Wells Fargo must be liable under ECOA. If the purported

22   assignment of deed of trust to Bank of America is valid, then Bank of America is the creditor.

23   Furthermore, Wells Fargo is acting as their agent, and therefore is also liable under the ECOA.

24      **B.**      **Plaintiffs' Statutory Claims Are Properly Pleaded**

25            **1.**     **California's "Security First" Rule Was Violated by Defendants**

26       An important aspect of California's anti-deficiency law is CCP § 726(a), the "One Form

27   of Action Rule." The rule provides that, "A secured creditor can bring only one lawsuit to

28   enforce its security interest and collect its debt." *Security Pacific National Bank v. Wozab* (1990)

1    51 Cal. 3rd 991, 997. Under this rule, the creditor is supposed to pursue its collateral first; it is

2    permitted to seek a personal judgment against the borrower, only after exhausting its collateral. If

3    the lender ignores this rule and *takes any other action to collect upon the debt*, without having

4    first foreclosed on the real property security, the borrower may raise CCP § 726(a) as an

5    *affirmative defense* against the lawsuit, which will delay the lawsuit and force the creditor "to

6    exhaust the security before he [or she] may obtain a money judgment against the debtor for any

7    deficiency." *Roseleaf Corp. v. Chierighino* (1963) 59 Cal. 2d 35, 38-39.

8           However, if the creditor takes any action to collect, the borrower may permit the action

9    against him or her to proceed to judgment, but, in that case, the creditor will be held to have

10   made "an election of remedies, electing the single remedy of a personal action, and thereby

11   waiv[ing] his [or her] right to foreclose on the security or to sell the security under a power of

12   sale." *Roseleaf Corp. v. Chierighino*, ibid. In short, if the borrower goes forward with collection,

13   it loses it mortgage or deed of trust; it no longer has a lien against the property.

14          In *Security Pacific National Bank v. Wozab* (1990) 51 Cal. 3rd 991, the bank was owed

15   approximately one million dollars, which was secured by real property. The bank made the

16   mistake of grabbing approximately $3,000 out of the borrower's checking account, using the

17   power of set off. The Supreme Court held that, by setting off the $3,000, the bank lost its lien

18   against the real property. The one million dollar debt was still owing, but it was no longer

19   secured by the real property.

20          A similar result occurred in *In re Prestige Limited Partnership – Concord* (9th Cir. 2000)

21   234 F. 3rd 1108. In that case, a lender had a lien against the borrower's real property. It lost that

22   lien, however, by attaching and levying upon unpledged assets of the general partner of the

23   limited partnership, which was it, the general partner of the borrower.

24          Plaintiffs adequately pleaded that a Notice of Default dated July 16, 2009, was first

25   recorded by Defendants on July 20, 2009. They evidenced their intent to judicially foreclose

26   upon Plaintiff's property by recording not just a first Notice of Trustee's Sale on October 21,

27   2009, but a second Notice of Trustee's Sale on August 16, 2012. St. Ct. Compl., ¶¶ 26, 31, 36.

28          Additionally, as alleged by Plaintiffs, "[f]rom September 2011 through July 2012,

1    Plaintiff tendered eleven (11) payments of $4012.27 to Home Mortgage pursuant to a trial loan

2    modification agreement between Plaintiffs and Home Mortgage." St. Ct. Compl., ¶ 51. These

3    payments were required by the Defendants as a condition for considering the loan modification,

4    and as such were certainly not voluntary. In fact, making those payments during the period

5    pendency of their Chapter 11 bankruptcy was itself an enormous hardship and financial drain on

6    Plaintiffs.

7            In this case, after electing to non-judicial foreclosure as their remedy, Defendants

8    continued to demand monthly payments in order to maximize their return on their loan yet at the

9    same time taking advantage of their right to foreclose. Once they elected foreclosure and the

10   right to recover possession to the real property as their remedy, Defendants were precluded from

11   demanding and accepting personal property belonging to one of the Plaintiffs in order to increase

12   their recovery on the loan. The tactic is an obvious attempt to circumvent the rule of CCP§ 726.

13                **2.        Defendants Violated Homeowners' Bill of Rights**

14           Defendants have ignored Plaintiffs' references to California's new Homeowners' Bill of

15   Rights ("HBR") signed into law on July 11, 2012, and effective January 1, 2013.

16           Under HBR, "any duty that mortgage servicers may have to maximize net present value

17   under their pooling and servicing agreements is owed to all parties in a loan pool, or to all

18   investors under a pooling and servicing agreement, and that a mortgage servicer acts in the best

19   interests of all parties to the loan pool or investors in the pooling and servicing agreement if it

20   agrees to or implements a loan modification or workout plan for which both of the following

21   apply: (1) The loan is in payment default, or payment default is reasonably foreseeable. (2)

22   Anticipated recovery under the loan modification or workout plan exceeds the anticipated

23   recovery through foreclosure on a net present value basis." Civil Code § 2923.6(a)

24           Plaintiffs provided formalized, detailed calculations showing how the net present value of

25   the property would be maximized by affording Plaintiff a loan modification of a mere $55,250 in

26   Principal, equivalent to 7.32% of the entire loan. This would result in a savings of over $118,000

27   to the Defendants, i.e., 15.67% of the value of the loan. St. Ct. Compl., ¶¶ 89-94.

28           "If a borrower submits a complete application for a first lien loan modification offered

by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired. (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer. (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification." Cal. Civil Code § 2923.6 ( c ).

"If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error." Cal. Civil Code § 2923.6(d).

The Act prevents a lender from proceeding with a foreclosure, while at the same time negotiating with a delinquent residential borrower on a loan modification, a scenario sometimes referred to as "dual tracking."  Dual tracking is a very common situation that lenders find themselves in when a borrower reaches out to them about a loan modification or a loan workout after a lender has already started foreclosure.  Where a borrower submits a complete (meaning all documents requested by the lender have been provided by the borrower) application for a first lien loan modification, a mortgage servicer may not record a notice of default or notice of sale or conduct a trustee's sale until such time as the borrower's loan modification process has been completed and the time for an appeal of any adverse decision has passed, or the appeal has been completed, and if a loan modification is entered into, as long as the borrower is not in default under the modification.  (Civil Code §2923.6(c)-(d).)

As alleged in the State Court Complaint, Plaintiffs' request for loan modification was pending on Thursday, February 28, 2013, and on that day Wells Fargo requested a number of items of information and documentation. On Friday, March 1, 2013, Plaintiffs faxed over a hundred pages of information and documents to Defendants, and on Saturday March 2, 2013,

1   Plaintiffs faxed an additional several hundreds of pages of financial information to Defendants.

2   Moreover, Wells Fargo representative actually stated to Plaintiff Shahani at around 10:30 AM

3   Pacific Time that she had in fact never requested postponement of the Trustee's Sale scheduled

4   for 2:00 PM Pacific Time on March 4, 2013. St. Ct. Cmpl. § 41

5   Plaintiff believes that given the short period of time between the transmittal of requested

6   documentation and information from Plaintiffs to Wells Fargo , it is impossible that Wells Fargo

7   could have had the information faxed from California to their office in Iowa processed by their

8   electronic fax capture system and reviewed by their underwriters prior to having made the

9   decision to foreclose on Plaintiff's property at 2:00 PM Pacific Time. This is prima facie

10  evidence of dual tracking, which is a violation of California law. That is prima facie evidence

11  that Defendants are in violation of Cal. Civil Code §§ 2923.6 ( c ) and (d).[3]

12  ### 3.    Defendants' Harassing Conduct Lacks a Legitimate Purpose and Has

13  ### Caused Plaintiffs Distress

14  The elements of a cause of action for intentional infliction of emotional distress are (1)

15  the defendant engages in extreme and outrageous conduct with the intent to cause, or with

16  reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers

17  extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct

18  was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. *Potter*

19  *v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550, 863 P.2d 795.

20  "[O]utrageous conduct" is conduct that is intentional or reckless and so extreme as to exceed all

21  bounds of decency in a civilized community. (Ibid.) The defendant's conduct must be directed to

22  the plaintiff, but malicious or evil purpose is not essential to liability. (Ibid.) Whether conduct is

23  outrageous is usually a question of fact. *Spinks v. Equity Residential Briarwood Apartments*

24

25          [3]Plaintiffs also allege that Wells Fargo failed to provide Plaintiffs with a written
26  acknowledgment of receipt within five days of the receipt of the documents or completion of
    application, as required under Civil Code § 2924.10(a), and that Wells Fargo failed to provide
27  Plaintiffs with a written response if the lender denies the application, including the specific reasons
    for the denial and the 30-day deadline for the borrower to appeal the denial, as required under Civil
28  Code § 2923.6(f). St. Ct. Cmpl., ¶ 98.

(2009) 171 Cal.App.4th 1004, 1045, 90 Cal.Rptr.3d 453. The court also allowed a claim for intentional infliction of emotional distress to go forward at the trial level, to allow plaintiff the opportunity to prove that the bank's conduct was so outrageous and caused severe emotional distress by selling her home in a foreclosure sale.

Plaintiff's cause of action for civil harassment under Civil Code § 527.6 is well pleaded. Plaintiffs' State Court Complaint sets forth a total of 234 paragraphs of allegations demonstrating bad faith and willful misconduct in Defendants' consideration of Plaintiffs' request for loan modification. Plaintiffs identify numerous instances in which Defendants made duplicate requests for information and documentation. Plaintiffs have identified instances in which Defendants' decisions were made based on incorrect assumptions or were not made at all due to an alleged failure to provide requested information and/or documents. Moreover, after correct and current information was provided to Wells Fargo, Defendants refused to acknowledge receipt of the information or to acknowledge any errors in prior calculations.

Defendants conduct lacked legitimate purpose. The only reason Wells Fargo would deny not having received a number of documents is that it intentionally was looking for an excuse to foreclose on Plaintiffs' property. That would be a wrongful illegitimate purpose. Defendants conduct was knowing and willful, and was certainly designed to and did actually cause emotional distress. It is also reasonable to assume that such conduct would cause any reasonable borrower distress. As stated above, whether conduct is outrageous is usually a question of fact. *Spinks, ibid.*

### 4.      Defendants' Conduct Is Proscribed by the Rosenthal Fair Debt Collection Act

California's Rosenthal Fair Debt Collection Act ("Rosenthal Act") prohibits creditors and debt collectors from, among other things, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ. Code § 1788, et seq. Pursuant to Cal. Civ. Code § 1788.17, the Rosenthal Act incorporates the provisions of the federal Fair Debt Collection Practices Act prohibiting "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 U.S.C. § 1692e(8).

1   Plaintiffs allege that Defendants violated the Rosenthal Act by making false reports to

2   credit reporting agencies, falsely stating the amount of debt, falsely stating a debt was owed,

3   attempting to collect said debt through deceptive letters and phone calls demanding payment,

4   making false promises, and increasing plaintiff's debt by stating amounts not permitted including

5   excessive service fees, attorneys' fees, and late charges. Defendants argue that foreclosing on a

6   property is not collection of a debt, and so is not regulated by the Rosenthal Act, that the alleged

7   prohibited activities resulted from Plaintiffs' default, and Defendants are entitled to collect on

8   their debt. Defendants correctly point out that foreclosure on a property securing a debt is not

9   debt collection activity encompassed by Rosenthal Act. Cal. Civ. Code § 2924(b),  *Izenberg v.*

10  *ETS Services, LLC* (C.D. Cal. 2008) 589 F.Supp.2d 1193, 1199. However, Plaintiffs' allegations

11  with respect to this cause of action do not mention foreclosure, instead alleging violations related

12  to payment collection efforts. See *Champlaie v. BAC Home Loans Servicing, LP*, 2009 U.S. Dist.

13  LEXIS 102285, 2009 WL 3429622 at *18 (E.D. Cal. October 22, 2009). Further, the actions of

14  debt collectors under the act are not immunized if Plaintiffs actually owed money. Rather, the

15  Rosenthal Act prohibits conduct in collecting a debt, whether valid or not. Accordingly,

16  Defendants arguments against Plaintiffs' seventeenth cause of action are without merit.

17  **5.    Defendants' Have Violated California's Unfair Competition Law**

18  In California, "unfair competition" is defined as and includes *any* unlawful, unfair <u>or</u>

19  fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Cal.

20  Bus. Prof Code § 17200 (emphasis added). The Court will note that contrary to Defendants'

21  suggestion, the list of proscribed conduct is stated in the alternative, i.e., the disjunctive, and not

22  the conjunctive. Thus, all that Plaintiffs need to show is that Defendants have engaged in any

23  single unlawful, unfair or fraudulent business act or practice, OR any single act of unfair,

24  deceptive, untrue or misleading advertising.

25  Plaintiffs' claims include over a dozen separate, unlawful, unfair or fraudulent practices

26  (items a-k ) committed by Defendants, including but not limited to instituting improper or

27  premature foreclosure proceedings to generate unwarranted fees, executing and recording false

28  and misleading documents, executing and recording documents without the legal authority to do

so, failing to disclose the principal for which documents were being executed and recorded in violation of California Civil Code Section 1095, failing to record Powers of Attorney in connection with other recorded documents in violation of California Civil Code Section 2933, violating the Security First Rule, acting as beneficiaries and trustees without the legal authority to do so, failing to give proper notice of a trustee's sale and the postponement of the sale pursuant to California Civil Code Sections 2924g and 2924h, failing to comply with California Civil Code Section 2923.5 and provisions of HBR, failing to comply with the HAMP guidelines, misrepresenting the foreclosure status of property to Plaintiffs, committing anti-trust violations, committing unlawful civil harassment of Plaintiff, committing unlawful residential mortgage dual-tracking practices, failing to maximize net present value by modifying Plaintiffs' loan, and committing other violations of the new HBR. St. Ct. Compl., ¶ 218. Plaintiffs also contend that it is unfair and fraudulent for Defendants to represent to Plaintiffs that they do intend to consider Plaintiffs' request for loan modification, but then deny the request on a technicality or clearly incorrect financial calculations, to repeatedly agree to reconsider the request, and repeatedly deny the request based on Defendants' continuing representations that they have not received the information and documents they requested, or that they don't have sufficient information for which to make a decision. In the Plaintiffs' case, this has gone on for over 4 years, and Defendants have never made a decision on the loan modification based upon an evaluation of all the requested information and documents Plaintiffs have repeatedly provided Defendants. Defendants' conduct amounts to fraud, and unlawful and unfair competition.

## C.  Plaintiffs' State Common Law Claims Are Sufficient

### 1.  The Contract Claims State a Claim

#### (a)  Oral Contract Not Contradicted By Face of Contract

A plain reading of the State Court Complaint will make it clear that Plaintiffs pleadings are not contradictory, rather it is the conduct of Defendants that contradicts their oral statements.

While it may be true that Plaintiffs did receive a response to their first request for loan modification in February of 2009, Defendants never did what they promised, i.e., offer Plaintiff a loan modification (that they didn't later withdraw). Other oral agreements made that were

1   breached include but are not limited to the following:

2       * After Wells Fargo received Relief from Stay, they agreed to grant Plaintiffs' request for

3   loan modification, and orally instructed Plaintiffs to begin making regular monthly payments of

4   $4012.27, they did not put this requirement in writing. However, after making approximately 10

5   additional payments, i.e., from September 2011 through June 2012, Wells Fargo refused to

6   accept any further payments and proceeded with recording a new Notice of Trustee's Sale.

7       * Wells Fargo representatives repeatedly promised to postpone the Trustee's sale set for

8   March 4, 2013, in exchange for Plaintiffs providing more information and documentation. On

9   March 4, 2012, Wells Fargo representative Keri Peck admitted to Plaintiffs that she did not in

10  fact ever request a postponement of the Trustee's Sale set for March 4, 2013, despite having

11  asked for and received hundreds of pages of financial documents and information.

12      These are all evidence of breach of oral contracts, i.e., Wells Fargo and the other

13  Defendants would say one thing then do the other. Plaintiffs State Court Complaint sufficiently

14  pleads breach of oral contract.

15                  **(b)     HAMP Guidelines Apply to Plaintiffs Loan**

16      It is precisely because HAMP does not have a federal private right of action that Plaintiff

17  may use HAMP standards as an ingredient to support its cause of action for breach of written

18  contract. The federal courts have held that:

19          "Where there is no private right of action under a federal statute, a violation of the

20          federal HAMP standard as an element of a state tort cause does not prevent state

21          law from providing a cause of action based in whole or in part on violations of the

22          federal (HAMP) law." (emphasis added) *(Wigod v. Wells Fargo Bank, N. A.,* No.

23          11-1423; 2012 WL 727646 at * 19-29 (7th Circuit, Ill Mar. 7 2012) *("Wigod*

24          *2012").*

25  In fact, the United States Court of Appeals (in *Wigod 2012* at *19) held:

26          "We reject this "end-run" theory, along with Wells Fargo's formal preemption

27          arguments. Federal law does not displace Wigod's state law claims." (Emphasis

28          Added)

1    An important feature of HAMP is that the Treasury requires lenders and servicers to

2    apply a consistent process in calculating an affordable loan modification. A loan can be modified

3    only if it yields a positive NPV using a "waterfall" procedure. The "waterfall" means that lenders

4    and servicers must follow an established sequential process when applying the NPV test to

5    determine which loan modification to use to achieve a targeted front-end debt-to-income ("DTI")

6    ratio of 31 percent. Thus, when Defendants offer in writing to engage in a "loan

7    modification"with Plaintiffs, they are required to utilize the standards set forth by HAMP.

8    In October, 2012, Wilhite Thomas, Plaintiff's consultant, provided evidence and

9    corrected calculations to support her belief that Plaintiff did indeed qualify for a loan

10   modification under her own estimated results to the "Water-Fall" method for finding

11   affordability in a loan modification under Supplemental Directive 12-02 HAMP Tier 2 Standard

12   Modification Waterfall. Decl. Wilhite Thomas § 21, Exh. 12. To date, Wells Fargo has failed to

13   acknowledge receipt of the calculations or to consider financial information specifically

14   requested by Wells Fargo, to wit, profit and loss statements for business with personal expenses

15   excluded. In fact, Wells Fargo has completely ignored Wilhite Thomas' "Water-Fall"

16   calculations. A true and correct copy of the letter to Wells Fargo on October 24, 2012 is attached

17   to Plaintiffs' RJN, Exhibit "19" and incorporated herein by reference.

18                    **( c )    Defendants Have A Duty Not to Frustrate The Purpose of the**

19                              **Loan Agreement**

20   "There is an implied covenant of good faith and fair dealing in every contract that neither

21   party will do anything which will injure the right of the other to receive the benefits of the

22   agreement." *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658, 328 P.2d 198.

23   " "Every contract imposes upon each party a duty of good faith and fair dealing in its

24   performance and its enforcement." ' The covenant of good faith finds particular application in

25   situations where one party is invested with a discretionary power affecting the rights of another.

26   Such power must be exercised in good faith." *Carma Developers (Cal.), Inc. v. Marathon*

27   *Development California, Inc.* (1992) 2 Cal.4th 342, 371—372, 6 Cal.Rptr.2d 467, 826 P.2d 710.

28   "The issue of whether the implied covenant of good faith and fair dealing has been breached is

1  ordinarily 'a question of fact unless only one inference [can] be drawn from the evidence.' "

2  *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 509, 108 Cal.Rptr.2d 10.

3      Plaintiffs entered into a written loan obligation agreement, and Defendants subsequently

4  agreed to modify the agreement to make it more affordable to Plaintiffs. Defendants, however,

5  never did evaluate Plaintiffs' request on its merits based on a set of accurate and complete

6  financial accounting. Plaintiffs also relied on Defendants' promises to modify the loan, making

7  10 monthly payments after filing bankruptcy and after Defendants already started the foreclosure

8  process. The purpose of the agreement was to find a modification that would be affordable to

9  Plaintiffs. Defendants never did evaluate Plaintiffs' request on its merits, rather it unfairly and

10  fraudulently claimed not to have received the requested information on a timely basis. Plaintiff

11  has the right to prove these facts at trial on this matter. The pleadings are sufficient.

12          **(d)     Plaintiffs Relied to their Detriment on Defendants' Promises**

13      As stated above, in early 2009, Plaintiffs relied upon Defendants' agreement to offer

14  Plaintiffs a loan modification at a time when Plaintiffs' were only 2 months in arrears in their

15  loan payments. By demanding loan payments in late 2011, Plaintiffs paid over $40,000 to

16  Defendants between September 2011 and June 2012 in reliance upon their agreement to modify

17  Plaintiffs' loan. In reliance upon their agreement to modify the loan, Plaintiffs sent Defendants

18  all of the financial information, documents and completed forms requested by Defendants. In

19  reliance upon their agreement to postpone the March 4, 2013, Trustee's Sale, Plaintiff continued

20  to respond to repeated requests for duplicate information and documentation, despite having

21  already responded to and produced same. Defendants are now precluded from arguing that

22  Plaintiffs didn't rely upon Defendants' representations that they would in fact eventually agree to

23  modify Plaintiffs' loan.

24          **2.     Plaintiffs' Pleadings Adequately Plead Fraud with Specificity**

25      Plaintiffs State Court Complaint alleges with a great deal of specificity the fraud

26  committed by Defendants. Plaintiffs identify names, dates, times, locations, apparent authority,

27  what representations were made, to whom said representations were made, Plaintiffs response, an

28  explanation of how and why such representations were false, and harm and damages caused

1   thereby. This level of proof meets the standard applied in the Northern District. *Morris v. BMW*

2   *of N. Am.*, LLC, No. C 07-02827, 2007 WL 3342612, *6 (N.D. Cal. Nov. 7, 2007) Plaintiffs'

3   pleading is sufficient.

4                                   **3.**      **Slander of Title Caused by Recordation of Deed**

5          The HBR provides borrowers with the right to sue mortgage servicers for injunctive

6   relief. "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for

7   injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9,

8   2924.10, 2924.11, or 2924.17." Cal. Civ. Code § 2924.12.(a)(1). In the present case, the State

9   Court action was filed on April 14, 2013, but Defendants recorded their Trustee's Deed on April

10  19, 2013. The HBR allows this action to go forward since the action was brought prior to the

11  recordation of the Trustee's Deed.

12         "Any injunction shall remain in place and any trustee's sale shall be enjoined until the

13  court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent

14  has corrected and remedied the violation or violations giving rise to the action for injunctive

15  relief." Cal. Civ. Code § 2924.12.(a)(2). The recordation of the Trustee's Deed falsely and

16  improperly asserts ownership by Bank of America in the property, and as such, slanders

17  Plaintiffs' title.

18         Nothing in the HBR requires the Plaintiffs tender the loan amount. In fact, Defendants are

19  fully secured and will suffer no great harm if the property is used as security for the loan amount

20  pending resolution of this dispute. Forcing Plaintiffs to tender the loan amount would contradict

21  the purpose and intended effect of the HBR. Furthermore the facts in this case merit a declaration

22  that, as a matter of law, Defendants have committed wrongful acts in their wrongful foreclosure

23  of Plaintiffs' property, and that Plaintiffs are entitled to relief as prayed for in the pleadings.

24

25                                  **4.**      **Plaintiffs Have Properly Alleged A Duty of Care**

26         The general rule that a financial institution owes no duty of care to a borrower when the

27  institution's involvement in the loan transaction does not exceed the scope of its conventional

28  role as a mere lender of money is limited in two ways. "First, a lender may owe a duty of care

sounding in negligence to a borrower when the lender's activities exceed those of a conventional

lender." *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1249 (E.D. Cal. 2010); see

Wagner v. Benson, 101 Cal. App. 3d 27, 35 (4th Dist. 1980) Second, to determine whether a

duty actually existed on the facts of the case, a six-factor test was established by the California

Supreme Court. The "Biakanja" test balances six non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff,
> [2] the foreseeability of harm to him,
> [3] the degree of certainty that the plaintiff suffered injury,
> [4] the closeness of the connection between the defendant's conduct and the injury suffered,
> [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1197 (9th Cir. 2001) (quoting *Biakanja v. Irving*,

49 Cal. 2d 647, 650 (1958).

Plaintiffs have alleged that the loan refinance transaction and requested modification was

intended to benefit Plaintiffs by maintaining and preserving their equitable interests in the

property and having a safe, secure residence. It is not unreasonable to conclude that losing ones

residence would cause severe harm. Forcing the Plaintiffs to obtain other rent and lose the benefit

of their substantial investment to date in their property would be highly certain to cause injury to

Plaintiffs. The Defendants' conduct, such as refusing to accept Plaintiffs' regular monthly

mortgage payments on account while negotiating the terms of a loan modification,

misrepresenting to Plaintiffs that they would postpone the Trustee's Sale scheduled for March 4,

2013, and engaging in other bad-faith negotiations, was directly attributable to the harm caused

to Plaintiffs by the wrongful foreclosure and unlawful subsequent recordation of the Trustee's

Deed. Defendants' conduct is reprehensible and they should be punished to discourage future

negligent loan servicing and foreclosure.

## D.    TENDER IS NOT REQUIRED IN THIS CASE

The *Natividad* court carefully examined the question of tender.

> In California, when a debtor is in default on a home mortgage loan, and a foreclosure has taken place, the debtor must allege credible tender of the amount of the secured debt to maintain a cause of action for wrongful disclosure. *See U.S. Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal. App. 3d 1214, 1222 (1985); *Albano*, 2012 WL 5389922, at *7. "A valid and viable offer of tender

means that it is made in good faith, the party making the tender has the ability to perform, and the tender must be unconditional." *Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009). Tender is required "based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose." *Dimock v. Emerald Props. LLC*, 81 Cal. App. 4th 868, 878 (2000).

Although Defendants challenge Plaintiffs' offer of tender on two substantive grounds (*i.e.*, that it is only an offer rather than actual tender and that Plaintiffs' offer is for an insufficient amount), Plaintiffs' claims actually fall under an exception to the tender rule and thus tender is not required.

The exceptions to the tender rule are: 1) if the borrower's action attacks the validity of the underlying debt; 2) if the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary; 3) where it would be inequitable to impose such a condition on the party challenging the sale; and 4) where the deed is void on its face.

*Albano*, 2012 WL 5389922 at *7. Here, as in *Albano*, the fourth exception applies. As set forth above, Plaintiffs allege that First American lacked the authority to foreclose on Plaintiffs' home because they had been improperly substituted as the trustee and beneficiary of the Deed of Trust. Accordingly, the tender rule does not apply and the Court declines to dismiss Plaintiffs' claim on this basis. *See Lona*, 202 Cal. App. 4th at 113 (holding that where the trustee's deed is void on its face, tender is not required); *Dimock*, 81 Cal. App. 4th at 878 (finding that sale under the deed of trust by a former trustee was facially void, and therefore tender was not required to sustain a cause of action); *see also Barrionuevo v. Chase Bank, N.A.*, 2012 WL 3235953, at *4 (N.D. Cal. Aug. 6, 2012) ("In *Dimock*, the California Court of Appeal held that where an incorrect trustee had foreclosed on a property and conveyed it to a third party, and the conveyed deed was not merely voidable but void, tender was not required."); *Christiansen v. Wells Fargo Bank*, 2012 WL 4716977, at *8 (N.D. Cal. Oct. 1, 2012) (declining to apply the tender rule on a motion to dismiss where plaintiff's theory of the case was that the trustee's sale was void, rather than voidable).

*Natividad*, page 25, lines 25-28, and page 26, lines 1-17.

In this case, the second, third and 4th exceptions to the tender rule apply. Plaintiffs' rights under the new HBR have been violated and other claims are alleged, thus entitling Plaintiffs to a "counter-claim or set-off" as they are entitled to. Plaintiffs have alleged that foreclosure and eviction of Plaintiff in the present situation would be inequitable and be a hardship upon Plaintiffs and Plaintiffs' family.

And, like in *Albano* and in *Natividad*, Plaintiffs have alleged that First American lacked the authority to foreclose on Plaintiffs' home because they had been improperly substituted as the trustee and beneficiary of the Deed of Trust.. Here, like in *Albano* and in *Natividad*, tender is not required.

1   **E.      DEFENDANTS ARE ALL AGENTS OF BANK OF AMERICA**

2       Plaintiffs have adequately alleged that Wells Fargo is the servicing agent for Bank of

3   America, and that all of the Defendants were acting as agents and are agents of each other. St. Ct.

4   Compl., ¶¶ 3, 14.

5       On page 4 of the NOD attached to the State Court Complaint it states that the Creditor to

6   whom the debt is owed is Bank of America. On the Assignment of DOT, the Assignee is

7   identified as Bank of America. Exhs. 3, 5. The Trustee's Deed upon Sale recorded April 19,

8   2013, purports that Bank of America is the Grantee. Bank of America is the purported Assignee

9   of the DOT, and Wells Fargo and the other Defendants are all agents of Bank of America. Bank

10  of America is liable for their wrongful acts.

11  **IV.     CONCLUSION**

12      For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants'

13  motion to dismiss pursuant to Rules 12(B)(6).

14      Respectfully submitted,

15

16  Dated:  August 26, 2013                    By:_____/s/ Ray K. Shahani_____
                                                    Ray K. Shahani, Esq.
17                                                  In Pro Per

18  ///

19

20

21

22

23

24

25

26

27

28