1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12
13

| | |
|---|---|
| ROCKRIDGE TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO, N.A., et al.,<br><br>Defendants. | Case No.: C-13-01457 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART BANK OF AMERICA AND WELLS FARGO'S MOTION TO DISMISS THE FAC; GRANTING FIRST AMERICAN'S MOTION TO DISMISS THE FAC; DISMISSING THE FAC IN PART WITH LEAVE TO AMEND** |

## I.   INTRODUCTION

Plaintiffs Rockridge Trust and Ray K. Shahani, trustee, ("Shahani") (collectively, "Plaintiffs") brought this action against Defendants Wells Fargo, N.A. ("Wells Fargo"), Bank of America, N.A. ("Bank of America"), First American Trustee Servicing Solutions LLC ("First American Trustee"), and First American Loanstar Trustee Services LLC ("First American Loanstar") (collectively, "Defendants") alleging twenty causes of action arising out of a series of loan modification negotiations followed by foreclosure. The First Amended Complaint ("FAC"), the operative pleading, contains eighteen causes of action. Presently before the Court are (1) a Motion to Dismiss the FAC jointly filed by Wells Fargo and Bank of America ("Wells Fargo Motion"); and (2) a Motion to Dismiss the FAC filed by First American Trustee ("First American Motion").[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set out below, the Court (1) grants in part and denies in part the Wells Fargo Motion; (2)

---

[1] First American Loanstar and First American Trustee assert that they are one legal entity, which underwent a name change in 2010. Dkt. No. 17 (Certificate of Interested Entities filed by First American Trustee). The entity's current name is "First American Trustee Servicing Solutions, LLC." *Id.* The entity is a Texas limited liability company that is wholly owned by First American Title Insurance Company. *Id.* In its "Analysis" section, the Court refers only to "First American."

1  grants the First American Motion; and (3) dismisses the FAC, in part, with leave to amend as

2  specified below.

3  **II.     BACKGROUND**

4      **A.     The June 24, 2013 Order**

5      In its June 24, 2013 Order ("Order"), the Court dismissed the Complaint without prejudice.

6  Order, 2, 30.  In so doing, the Court only addressed those causes of action over which it had subject

7  matter jurisdiction on the basis of a federal question:  (1) the "Federal Violations" cause of action; (2)

8  the "Violation of Anti-Trust Laws" cause of action; and (3) the breach of contract cause of action,

9  which the court found was a pure attempt to enforce the Servicer Participation Agreement ("SPA")

10  Wells Fargo and Bank of America entered into with Fannie Mae in which they agreed to apply the

11  Home Affordable Mortgage Program ("HAMP") criteria to all loans they service.  *Id*. at 25-28.  The

12  Court declined to exercise supplemental jurisdiction over the remaining state law claims.  *Id*. at 28-30.

13      The Federal Violations cause of action arguably included a claim under 42 U.S.C. § 1983, a

14  claim under the Fair Housing Act, and a claim for breach of two settlement agreements.  *Id*. at 25-26.

15  In dismissing that cause of action, the Court gave Plaintiffs "leave to amend to clearly plead a federal

16  violation with supporting factual allegations."  *Id*. at 26.  Likewise, the "anti-trust claims [were]

17  dismissed with leave to amend."  *Id*. at 27.  Moreover, Plaintiffs were "given an opportunity to amend

18  their Complaint if they wish[ed] to elaborate a breach of written contract under a [theory other than

19  violation of the SPA]."  *Id*. at 28.

20      **B.     The FAC**

21          **1.     Factual Background**

22      On or about February 23, 2007, Shahani executed a consumer loan transaction in the amount

23  of $755,250 with Wells Fargo to re-finance his single family residential property located at 82

24  Rockridge Drive, San Francisco, CA.  FAC, ¶ 20.[2]  Wells Fargo took a security interest in the subject

25  property in a Deed of Trust ("DOT").[3]  *Id*. at ¶ 20 and Ex. 1.[4]  Fidelity National Title Insurance

United States District Court
Northern District of California

---

26  [2] This factual background section is almost entirely duplicative of the factual background section in the June 24, 2013

27  Order because the factual allegations in the FAC are, for the most part, unchanged.  There are three differences between the FAC and the Complaint:  (1) a sentence is added to paragraph nine; (2) the third, fifth, sixth, and nineteenth causes of action are removed along with the factual allegations contained in those sections; and (3) two new causes of action are

28  added, with corresponding factual allegations in each section.
[3] The DOT lists Wells Fargo Bank, N.A., as the lender.

1    Company ("Fidelity National") was named as the trustee under the DOT.  *Id*. at Ex. 1.  On March 13,

2    2007, Wells Fargo executed a Substitution of Trustee ("First Substitution") substituting itself for

3    Fidelity National as trustee.  *Id*. at ¶ 22 and Ex. 2.

4          Plaintiffs made payments pursuant to the mortgage agreement for close to two years.  *Id*. at ¶

5    23.  Shortly thereafter, Wells Fargo and/or Wells Fargo Home Mortgage ("Home Mortgage")

6    represented that Home Mortgage was the servicer of Plaintiffs' loan.  *Id*. at ¶ 24.  However, Home

7    Mortgage ceased to exist as a separate entity in May 2004.  *Id*. at ¶ 26.  In February 2009, Shahani

8    requested a loan modification to reduce the fixed loan interest rate of 6.375% to one commensurate

9    with the then-available rates of between 2% and 4%.  *Id*. at ¶¶ 25, 140(a).  At the time, Shahani was

10   less than 30 days late on his monthly mortgage payments but feared the possibility of multiple claims

11   for late and/or unpaid payments.  *Id*. at ¶ 25.  Shahani entered the loan modification process with

12   Home Mortgage that month.  *Id*.

13         Pursuant to the loan modification negotiations, Shahani submitted financial information

14   pertaining to his income and expenses in March 2009.  *Id*. at ¶ 140(c).  In April 2009, Defendants

15   requested additional documentation.  *Id*. at ¶ 140(e).  In May 2009, Defendants informed Shahani that

16   all requested documentation had been received and was in process.  *Id*. at ¶ 140(f).  In July 2009,

17   Shahani was informed by telephone that the loan modification was denied.  *Id*. at ¶ 140(g).[5]  Shahani

18   was invited to re-fax further financial information to update his file.  *Id*.  During negotiations that

19   month, Shahani spoke to Lupeta, Leslie, Doris, Dante, and Gordon, all separate agents for Defendants,

20   regarding his loan modification request.  *Id*. at ¶ 140(j).  Shahani also received a letter, dated July 1,

21   2009, incorrectly stating that his expenses exceeded his income by close to $4,100.  *Id*. at ¶ 140(h).[6]

22   A July 14, 2009 letter to Shahani indicated that "the loan file ha[d] been referred to our attorney with

23   instructions to begin foreclosure proceedings."  *Id*. at ¶ 140(k).[7]

24         In a letter, Shahani received an unsigned, incomplete, and unrecorded Notice of Default

25   ("NOD").  *Id*. at ¶ 140(l) and Ex. 3.[8]  The mailing, attached to the Complaint as Exhibit 3, recites that

---

[4] Plaintiffs did not attach a copy of the Note to their Complaint.
[5] The Complaint states that Defendant was informed by telephone that the loan modification was denied.  This appears to be a typographical error.
[6] Plaintiffs do not allege the true relation between Shahani's expenses and income.
[7] Plaintiffs do not allege which Defendant sent the letter.
[8] Plaintiffs do not allege which Defendant sent the NOD.

1    the contents are a "copy of the 'notice,' the original of which was filed for record on July 20, 2009 in

2    the Office of the Recorded of San Francisco, California." *Id*. at Ex. 3 (capitalization omitted).  On the

3    signature line of the mailed copy of the NOD, the document reads:  "original document signed by

4    authorized agent." *Id*. (capitalization omitted).  The NOD was executed by First American Loanstar

5    as agent for the "current beneficiary" and by First American Title Insurance Company as Attorney-in-

6    Fact.  *Id*. (capitalization omitted).  The mailing also contained a copy of the Notice of Default

7    Declaration ("NOD Declaration"), completed by Home Mortgage as the "mortgagee, beneficiary, or

8    authorized agent." *Id*.  The copy states:  "Original document executed by authorized agent." *Id*.

9    (italics omitted).  Also included in Exhibit 3 is a letter, dated July 23, 2009, from First American

10   Loanstar stating:  (1) that the creditor to whom the debt is owed is Bank of America; (2) Home

11   Mortgage is the servicer; and (3) First American Loanstar has been authorized by either the servicer or

12   the creditor to initiate foreclosure proceedings.  *Id*.  The letter also states that the outstanding debt is

13   $783,383.70.  *Id*.

14        On July 28, 2009, Shahani was informed by the "Loss Mitigation" department that Defendants

15   were suspending foreclosure and no foreclosure sale date was set.  *Id*. at ¶ 140(n).[9]  Shahani received a

16   July 28, 2009 letter indicating that Defendants were reviewing the information he had provided and

17   working quickly to respond to his request for assistance with his mortgage payment challenges.  *Id*. at

18   ¶ 140(m).[10]  On August 5, 2009, a person named David from a call center in Milwaukee requested

19   proof of income and statements of profit and loss for the past three months to be sent to Mary

20   Mulholland in Norfolk.  *Id*. at ¶ 140(o).[11]  That month, Shahani was informed numerous times that his

21   application was in the review stage.  *Id*.  On August 25, 2009, the loan modification was denied due to

22   expenses greater than income by over $7,543.  *Id*. at ¶ 140(p).  The next day, Shahani was orally

23   informed that a work director would re-review the file if he resubmitted a number of documents,

24   which he did.  *Id*.  Shahani spoke to Travis, Marion, and Jessica between September 4 and 11, 2009.

25   *Id*. at ¶ 140(q).[12]

26

27   ───────────────
     [9] Plaintiffs do not identify which Defendant's loss mitigation department they are referring to.
     [10] Plaintiffs do not allege which Defendant sent the letter.
28   [11] Plaintiffs do not allege which Defendant David and Mulholland represented.
     [12] Plaintiffs provide no detail as to the capacity of the named individuals or the content of their conversations.

1   Meanwhile, on August 19, 2009, Wells Fargo executed a Second Substitution of Trustee

2   ("Second Substitution") naming First American Loanstar as Trustee.  *Id*. at ¶ 28 and Ex. 4.[13]

3   Plaintiffs attach a copy of the Second Substitution accompanied by an affidavit stating that "[a] copy

4   of the attached substitution has been mailed prior to the recording thereof…"  *Id*. at Ex. 4.  The copy

5   of the substitution states, on the signature line:  "original document signed, dated, and notarized by

6   current beneficiary."  *Id*. (capitalization omitted).  Directly above that line is written:  "Wells Fargo

7   Bank, N.A."  *Id*. (capitalization omitted).

8   On or about September 3, 2009, Wells Fargo recorded an Assignment of Deed of Trust

9   ("Assignment") assigning all beneficial interest to Bank of America.  *Id*. at ¶ 30, Ex. 5.  The

10  Assignment was dated August 25, 2009, and signed by a putative agent of First American Loanstar as

11  Wells Fargo's attorney-in-fact.  *Id*. at Ex. 5.

12  An October 5, 2009 letter from Defendants offered Plaintiffs yet another loan modification

13  and requested a number of pieces of information.  *Id*. at ¶ 140(r).  The next day, Defendant instructed

14  Shahani to submit an initial payment of $5,412.27, due in two weeks, and financial documentation.

15  *Id*. at ¶ 140(s).[14]  Shahani wired the requested payment on the deadline.  *Id*. at ¶ 140(t).  A letter dated

16  October 16, 2009 stated that the loan modification was denied because Shahani failed to provide

17  requested documentation within the time frame provided in his trial modification period workout plan.

18  *Id*. at ¶ 140(u).  No time frame had been provided.  *Id*.  Shortly thereafter, on or about October 21,

19  2009, First American Loanstar recorded a Notice of Trustee's Sale ("First NOTS"), listing the sale

20  date as November 10, 2009.  *Id*. at ¶ 31 and Ex. 6.[15]  Nevertheless, on October 26, 2009, Shahani was

21  informed that he had been approved for modification and should re-submit certain documents.  *Id*. at ¶

22  140(w).  A week later, on November 2, Shahani learned that his initial payment had been declined.

23  *Id*. at ¶ 140(x).  That same day, Shahani re-submitted documentation.  *Id*. at ¶ 140(y).  On November

24  9, 2009, Defendants sent Shahani a letter that he had been denied modification because he did not

25  provide the requested documentation within the time frame required by his trial modification period

26  ---

27  [13] Plaintiffs allege that First American Loanstar was named as a replacement for Fidelity National.  However, the copy of the Second Substitution attached as Exhibit 4 identifies Fidelity National as the original trustee, but states that First American Loanstar is being substituted for the original trustee or the successor trustee.
[14] Plaintiffs do not allege which Defendant they are referring to.

28  [15] In another portion of the Complaint, Plaintiffs make the inconsistent allegation that the First NOTS was unsigned and unrecorded.  Complaint, ¶ 140(v).  Those inconsistent allegations are contradicted by Exhibit 6.

United States District Court
Northern District of California

1  workout plan. *Id*. at ¶ 140(z). Two days later, Shahani filed a Chapter 11 bankruptcy petition for

2  personal business reorganization. *Id*. at ¶ 140(aa). Thus, from his request for modification in

3  February 2009 to his bankruptcy filing in November 2009 his modification requests had been denied.

4  *Id*. at ¶ 32.

5          Nearly two years later, on August 13, 2011, Wells Fargo, as servicing agent for Bank of

6  America, obtained relief from the bankruptcy stay. *Id*. at ¶¶ 24, 140(bb) and Ex. 7. Wells Fargo

7  immediately invited Shahani to enter loan modification negotiations. *Id*. at ¶ 35. Shortly after

8  Shahani submitted a battery of financial documentation, he was informed that he needed to be a

9  minimum of three months current on his loan payments to qualify for modification pursuant to the

10 investor guidelines. *Id*. Wells Fargo accepted monthly payments in the amount of $4,012.27

11 beginning in September 2011. *Id*. The payments were based on an interest rate of 6.375%, two to

12 three times greater than the then-prevalent rates. *Id*. Ten months later, Defendants denied Shahani's

13 modification request stating "as per investor guidelines" they could not find "affordability" for

14 Shahani's requests. *Id*. Shahani was never provided a copy of the investor's guidelines. *Id*.

15         Soon after, on August 16, 2012, First American Loanstar recorded a second Notice of

16 Trustee's Sale ("Second NOTS") stating that the property would be sold on September 11, 2012. *Id*.

17 at ¶ 36 and Ex. 8.[16] Exhibit 8 is a copy of the recording request made by First American Loanstar,

18 dated August 20, 2012, indicating that the original document was signed by an authorized agent. *Id*.

19 at Ex. 8. At the same time, Wells Fargo ceased accepting mortgage payments. *Id*. at ¶ 140(jj)-(ll).

20         Nevertheless, loan modification negotiations continued. After Shahani obtained assistance

21 from the office of Congresswoman Jackie Speier, he received a letter, in mid-August 2012, indicating

22 that Christine Mak ("Mak") of Wells Fargo's Office of Executive Complaint would be his single point

23 of contact for his loan modification request. *Id*. at ¶ 140(mm)-(nn). Shahani submitted a large

24 amount of updated documents to Mak over the course of the next two weeks. *Id*. at ¶ 140(oo). In late

25 August, Mak sent Shahani a letter stating that Wells Fargo would respond to his request for a loan

26 modification on September 11, 2012. *Id*. at ¶ 140(pp). After numerous requests to postpone the

27 ───────────────
[16] Although Plaintiffs refer to this as the Second NOTS, Plaintiffs also state in a separate portion of the Complaint that
28 Shahani received a NOTS in July 2012 setting the sale date for September 11, 2012. *Id*. at ¶ 140(hh). Plaintiffs refer to
Exhibit 7, the order relieving Wells Fargo from the bankruptcy stay, for that proposition. It is unclear if they are referring
to the Second NOTS or some other NOTS.

September 11, 2012 sale, Mak promised to request its continuance on September 5, 2012 but did not do so. *Id*. at ¶¶ 140(qq)-(rr).  Two days later, on the seventh, the sale was postponed.  *Id*. at ¶ 140(ss). Wells Fargo did not postpone the sale date on its online posting until September 10, 2012.  *Id*. at ¶ 140(tt)-(uu).  A subsequent sale date was set and postponed until March 4, 2013.  *Id*. at ¶¶ 38, 140(vv) and Ex. 9.

On February 18, 2013, Keri Peck ("Peck"), an agent of Wells Fargo, told Shahani in writing that "[w]e anticipate that we will be able to provide you with resolution by March 07, 2013."  *Id*. at ¶¶ 39, 140(ww) and Ex. 10.  The next day, Wells Fargo requested additional information from Shahani. *Id*. at ¶ 140(xx).  Shahani responded with 128 pages of documents within a week.  *Id*.  Three days later, on February 28, 2013, Wells Fargo requested several additional and/or duplicate items.  *Id*. at ¶¶ 41, 140(yy) and Ex. 12.  Over the next two days, Shahani sent Wells Fargo 284 pages of responsive documentation.  *Id*.  On March 7, 2013, Wells Fargo requested several additional and/or duplicate items needed to review Shahani's request for loan modification.  *Id*. at ¶¶ 42, 140(zz) and Ex. 12. Shahani provided additional documentation and a line-item letter response on March 8, 2013 and March 11, 2013.  *Id*.

On March 4, 2013, during the negotiations, the foreclosure sale was held and the property was sold back to the beneficiary, Bank of America, for $972,843.08.  *Id*. at ¶ 44 and Ex. 14.  Plaintiffs allege on information and belief that none of the Defendants holds the original note or has any legal interest in the loan or the property.  *Id*. at ¶¶ 45-46.

### 2.   Alleged Causes of Action

Plaintiffs allege the following causes of action:

(1)   Violation of the Security First Rule against Wells Fargo and Bank of America: Plaintiffs allege that Shahani tendered eleven payments of $4,012.27 from September 2011 through July 2012 to Home Mortgage pursuant to a trial modification agreement.  *Id*. at ¶ 51.  Plaintiffs allege that the acceptance of these funds violated the security first rule, California Code of Civil Procedure § 726, because Wells Fargo, Home Mortgage, and Bank of America had already chosen to foreclose on the subject property.  *Id*. at ¶ 53.  Plaintiffs allege that this renders the DOT void, and destroys any

1   interest Wells Fargo, Home Mortgage, or Bank of America purported to exercise in proceeding with

2   foreclosure, rendering the sale invalid and void.  *Id*. at ¶ 54.

3       (2)     Breach of Oral Contract against Wells Fargo and Bank of America:  Plaintiffs allege

4   that Wells Fargo and Home Mortgage assured Shahani that they would not proceed with the

5   foreclosure sale while they were reviewing his request for loan modification.  *Id*. at ¶ 57.  Plaintiffs

6   allege that Shahani waited for the results of their review since February 2009, during which time

7   Wells Fargo assured him that they would continue to postpone the Trustee's Sale as long as he

8   continued providing requested information regarding modification.  *Id*.  Although no final

9   determination had been made, Wells Fargo, Home Mortgage, and/or Bank of America instructed First

10  American Loanstar to foreclose on March 4, 2013.  *Id*. at ¶ 58.  "Accordingly, Wells Fargo and Home

11  Mortgage breached the oral agreement it entered into with Plaintiff not to proceed with the foreclosure

12  process while it was reviewing Plaintiff's request for a loan modification and while Plaintiff made

13  monthly payments of $4,012.27."  *Id*.  As a result, Plaintiffs have suffered consequential damages of

14  not less than $1,000,000.  *Id*. at ¶ 59.

15      (4)     Wrongful Foreclosure Based on Statutory Violations against Bank of America, Wells

16  Fargo, and "First American":[17]  Plaintiffs allege that their mortgage loan is subject to California Civil

17  Code §§ 2923.5, 2923.52, and 2923.6 because it was created in March 2007, when Shahani refinanced

18  his original home loan.  *Id*. at ¶¶ 67, 71.  Plaintiffs state the requirements of §§ 2923.5 and 2923.52.

19  *Id*. at ¶¶ 68-74.  Plaintiffs allege that those provisions were violated.  *Id*. at ¶ 75.[18]

20      Plaintiffs allege that the NOD is void because it lacks required information including the book

21  and recordation number, instead containing in the relevant section the above-referenced statement that

22  the document was a copy of the notice.  *Id*. at ¶ 75 and Ex. 3.  Plaintiffs also allege that the NOD

23  Declaration is void because it has no date and signature, instead reciting that the original document

24  was executed by the authorized agent.  *Id*.  In addition, Plaintiffs allege that the NOD is void because

25  First American Loanstar stated, in the accompanying letter, that Bank of America was the beneficiary,

---

[17] Although the Complaint distinguishes between First American Trustee and First American Loanstar, it does not do so in identifying the parties against whom causes of action are pled.

[18] The FAC does not contain a third cause of action.  Rather, the third cause of action from the Complaint, which was dismissed with leave to amend, appears in identical form but with a line through the claim and the supporting allegations.  The Court interprets this to mean that the cause of action and the supporting allegations have been removed.  To avoid confusion, the Court adopts the claim and paragraph numbering used in the FAC.

1     but Plaintiffs are unaware of any assignment or other transaction up to that point that transferred the

2     beneficial interest under the DOT to Bank of America. *Id*. at ¶¶ 75, 77-81 and Ex. 3.  Moreover,

3     Plaintiffs allege that the NOD Declaration is deficient in that it does not identify which statutory

4     requirement was met by the beneficiary. *Id*. at ¶ 75.

5        Plaintiffs also allege that the First NOTS scheduled the sale far less than the six months after

6     the NOD required by statute. *Id*.  Plaintiffs further allege that the NOTS was never posted in

7     accordance with California Civil Code § 2924f(b)(1). *Id*. at ¶ 83.

8        Plaintiffs allege that § 2923.6 creates in loan servicers a duty to accept loan modification

9     proposals where the loan is in payment default and the anticipated recovery under the workout plan

10    exceeds the anticipated recovery through foreclosure on a net present value basis. *Id*. at ¶¶ 85-86.

11    Plaintiffs allege that Shahani offered, and was willing and able to execute, a modification to a new

12    loan amount of $700,000, at a new interest rate of 3%, over a new 30-year term, with monthly

13    payments of $2,824.75. *Id*. at ¶ 89.  Plaintiffs estimate that the net present value of that plan is

14    $700,000, which would exceed their estimate of the net present value of foreclosure by $118,380. *Id*.

15    at ¶¶ 90-94.  Plaintiffs arrived at the net present value of foreclosure by subtracting the outstanding

16    property taxes and estimated costs of foreclosure from the present fair market value of the home. *Id*.

17    at ¶¶ 90-93.  As a result, Plaintiffs allege that Defendants are required to accept the loan modification.

18    *Id*. at ¶ 95.

19       Plaintiffs allege that Defendants violated the Homeowner's Bill of Rights ("HBOR") in

20    several ways:  (1) by dual tracking the modification negotiations and the foreclosure process; (2) by

21    failing to properly respond to documents Shahani submitted; (3) by failing to comply with the single

22    point of contact requirements; (4) by charging application fees for loan modification; and (5) by

23    charging late fees during consideration of the loan modification. *Id*. at ¶¶ 96-100.  Plaintiffs seek

24    injunctive relief, statutory damages, and attorney's fees pursuant to the HBOR. *Id*. at ¶ 101.

25       As a result of all of the alleged violations, Plaintiffs allege that the foreclosure is void, rather

26    than voidable, and seek to have the sale rescinded. *Id*. at ¶¶ 102-104.  Alternatively, Plaintiffs seek

27    special damages. *Id*. at ¶ 105.  In addition, Plaintiffs seek general damages. *Id*. at ¶ 106.

28

(7)     Civil Harassment against Wells Fargo, Bank of America, and First American:[19] Plaintiffs allege that Defendants have engaged in nearly four years of harassing telephone calls and correspondence constituting civil harassment in violation of California Civil Code § 527.6. *Id.* at ¶¶ 133-34. Plaintiffs seek a temporary restraining order and injunction. *Id.* at ¶ 135.

(8)     Breach of Implied Covenant of Good Faith and Fair Dealing against Wells Fargo, Bank of America, and First American: Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing by failing to disclose the terms and conditions of the loan modification and by utilizing underwriting techniques that prevented Shahani from ever having any hope of repaying their loan. *Id.* at ¶¶ 138-39. Plaintiffs also allege that Defendants acted in bad faith throughout the modification negotiations, including by carrying out the foreclosure sale prior to making a determination regarding Shahani's most recent attempt to obtain a modification. *Id.* at ¶¶ 140-41. Plaintiffs further allege that Shahani reasonably relied on representations made by Defendants that he would be considered for loan modification by failing to plan for foreclosure. *Id.* at ¶ 142. Moreover, Plaintiffs allege that the terms of the loan were unconscionable due to the excessive and discriminatory interest rate. *Id.* at ¶ 143.

(9)     Civil Conspiracy against Wells Fargo, Bank of America, and First American: Plaintiffs allege that Defendants conspired to enter a fraudulent sales scheme wherein they directed an inflated appraisal process to make Shahani's loan exceed the market rate and falsely represented to Shahani that he could not qualify for any other financing. *Id.* at ¶ 145. As a result, Plaintiffs were damaged in excess of $220,000. *Id.* at ¶ 146.

(10)    Quiet Title against Wells Fargo, Bank of America, and All Persons Unknown Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property: Plaintiffs seek to quiet title in the property as of October 15, 2012. *Id.* at ¶¶ 149-51. Plaintiffs seek a ruling that the property belongs to them and an award of consequential damages of no less than $1,000,000. *Id.* at ¶ 153.

(11)    Slander of Title against All Defendants: Plaintiffs allege that First American, purportedly but falsely acting as either the trustee or the agent of the beneficiary of the DOT, wrongfully and without privilege caused a NOD, Substitution, Assignment, and two Notices of

---

[19] The FAC does not contain a fifth or sixth cause of action.

Trustee's Sale to be recorded against the subject property. *Id*. at ¶¶ 155-56. In addition, First American wrongfully refused to cancel the Trustee's Sale. *Id*. at ¶ 157. None of the Defendants had authority to execute any of those documents. *Id*. at ¶ 158. By causing the documents to be executed, they slandered Plaintiffs' title. *Id*. at ¶ 159. Those actions are not privileged. *Id*. at ¶ 160. Plaintiffs suffered damages in an amount not less than $1,000,000. *Id*. at ¶ 161.

(12) Cancellation of Instruments against All Defendants: Plaintiffs seek cancellation of both Substitutions of Trustee, the NOD, the Assignment, and both Notices of Trustee's Sale because they are wrongfully recorded and if left outstanding will cause Plaintiffs to suffer damages. *Id*. at ¶¶ 163-64. Plaintiffs allege that Defendants caused the documents to be prepared and recorded with the specific intent to defraud Shahani. *Id*. at ¶ 165. Plaintiffs seek $1,000,000 in damages as well as punitive and exemplary damages. *Id*. at ¶ 167.

(13) Promissory Estoppel against Wells Fargo and Bank of America: Plaintiffs allege that Wells Fargo and Bank of America promised not to foreclose on the subject property if Shahani completed an application for a loan modification and made monthly payments in certain amounts. *Id*. at ¶ 169. Plaintiffs allege that Shahani justifiably relied by acting as required, as Wells Fargo and Bank of America should have reasonably expected. *Id*. at ¶¶ 170-71. In addition, Shahani relied by failing to explore the possibility of refinancing or marketing and selling the property himself. *Id*. at ¶ 171. Plaintiffs also allege that Wells Fargo and Bank of America should be estopped from violating the SPA by proceeding to foreclosure without completing a HAMP analysis. *Id*. at ¶ 172-74. Plaintiffs seek a recovery of not less than $1,000,000. *Id*. at ¶ 175.

(14) Negligence against All Defendants: Plaintiffs allege that, as lender and servicer, Wells Fargo and Bank of America owed Plaintiffs a reasonable duty to maintain proper and accurate loan records. *Id*. at ¶ 177. Plaintiffs allege that Wells Fargo and Bank of America breached that duty by foreclosing while telling Shahani it was not doing so and by misleading Shahani into believing that Home Mortgage was a distinct entity. *Id*. at ¶ 178.

Further, Plaintiffs allege that First American, acting as trustee under the DOT, has a duty to exercise reasonable care to follow California law with regard to foreclosures, to avoid conflicts of interest, and to refrain from taking any action against Plaintiffs that it had no right to take. *Id*. at ¶

179. Plaintiffs allege that First American breached its duty by failing to properly train its employees with regard to execution of each of the recorded documents. *Id*. at ¶ 180.

Plaintiffs seek $1,000,000 in general and special damages. *Id*. at ¶ 181.

(15) Negligent Misrepresentation against Wells Fargo and Bank of America: Plaintiffs allege that Wells Fargo, Bank of America, and Home Mortgage made representations to Shahani that they would postpone the foreclosure sale and complete a loan modification based on the current fair market value of the subject property and that they would modify the loan and reduce the principal in an amount of the loan and that they would lower the interest rate and that they would forgive and waive the arrearage and/or roll the arrearage into the principal and amortize it for as long as forty years or more if Shahani completed an application for a loan modification, made monthly payments in a specified amount, and agreed to continuously provide financial information. *Id*. at ¶ 183. These representations were not true, and there were no reasonable grounds for believing them to be true at the time they were made. *Id*. at ¶¶ 184-85. Wells Fargo, Bank of America, and Home Mortgage had no intention of modifying the loan when they made those representations, but intended that Shahani rely on them. *Id*. at ¶¶ 185-86. Plaintiffs reasonably relied and as a result suffered damages of not less than $1,000,000. *Id*. at ¶¶ 187-88.

(16) Fraud against Wells Fargo and Bank of America: Plaintiffs allege fraud based on the following misrepresentations: (1) Wells Fargo, Bank of America, and Home Mortgage represented to Shahani that they would not foreclose on the subject property during the time that a loan modification was being reviewed and he was making monthly payments while intending to foreclose in any event; (2) Wells Fargo representatives represented themselves as being employed by Home Mortgage leading Shahani to believe that Home Mortgage was a separate entity; (3) Defendants misrepresented, in connection with a broader scheme to make commissions, kickbacks, and other profits, to Shahani and others that they owned the DOT and mortgage note causing Shahani to pay substantial sums of money; (4) Defendants misrepresented that the loan terms given to Shahani were the best that they could obtain and well within the economic value of the property, causing him to enter the mortgage agreement; and (5) Defendants refused to provide the loan modification based on misrepresentations that Shahani did not qualify for modification and on inflated estimates of the value of the subject

property.  *Id.* at  ¶¶ 190-98.  Shahani justifiably relied on the above representations, all of which were made with the intent to induce reliance, by entering the loan, making mortgage payments, and failing to explore alternative remedies during the foreclosure process.  *Id.* at ¶¶ 190-98, 204, 207.  Shahani seeks recovery for his emotional distress, damage to his credit, and punitive damages.  *Id.* at ¶¶ 199, 206, 209.

(17)  Violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") against Wells Fargo and Bank of America:  Plaintiffs allege that the debt owed pursuant to the DOT is a consumer debt pursuant to the Rosenthal Act.  *Id.* at ¶ 211.  Wells Fargo, Bank of America, and Home Mortgage are mortgage servicing companies in the business of collecting and processing mortgage payments.  *Id.* at ¶ 212.  Their representatives misrepresented that they would not foreclose if Shahani applied for loan modification and made monthly payments of $4,012.27, and Shahani made eleven payments as a result of that misrepresentation.  *Id.* at ¶ 213.  Plaintiffs seek actual and statutory damages, attorneys' fees, and costs.  *Id.* at ¶ 214.

(18)  Violation of California Business and Professions Code § 17200 et seq. ("UCL") against All Defendants:  Plaintiffs allege that, by the above described conduct, and also by failing to disclose the principal for which documents were being executed and recorded and failing to record powers of attorney in connection with recorded documents, Defendants committed unfair, unlawful, and fraudulent business practices in violation of the UCL.  *Id.* at ¶¶ 216-19, 225.  This conduct is ongoing, unjustly enriched Defendants at Plaintiffs' expense through the collection of mortgage payments, and causes harm to the public that outweighs any utility it may have.  *Id.* at ¶¶ 220-23.  Plaintiffs seek injunctive relief, attorneys' fees, and restitution.  *Id.* at ¶¶ 223, 26.

(20)  Injunctive Relief against All Defendants:[20]  Plaintiffs allege that Defendants are acting in violation of statute and will continue to do so without injunctive relief.  *Id.* at ¶¶ 231-33.  Plaintiffs further allege that they do not have an adequate remedy at law.  *Id.* at ¶ 234.  Plaintiffs seek injunctive relief.

(21)  Violation of the Federal Fair Debt Collection Practices Act ("FDCPA") Against Wells Fargo and First American Trustee:  Plaintiffs allege that Wells Fargo and First American Trustee

---

[20] The FAC does not contain a nineteenth cause of action.

United States District Court
Northern District of California

violated 15 U.S.C. §§ 1692e and 1692f. *Id.* at ¶ 237. Plaintiffs allege that Wells Fargo and First American Trustee are debt collectors because (1) they are in the business of regularly collecting debts and use the instrumentalities of interstate commerce in that business; (2) one of their principal businesses is debt collection; (3) they service thousands and thousands of residential mortgages owned by Bank of America and other mortgagees; and (4) they have conducted foreclosure proceedings on behalf of Bank of America and other mortgagees. *Id.* at ¶ 238. Plaintiffs allege that, as outlined in their prior allegations, Wells Fargo and First American Trustee made deceptive and misleading representations and used unfair and unconscionable means in connection with the collection of the debt owed to Bank of America. *Id.* at ¶ 240.

(22)   Violation of the Federal Equal Credit Opportunity Act ("ECOA") Against All Defendants:  Plaintiffs allege that Defendants violated the ECOA by offering to accept payments from Plaintiffs before refusing to accept further payments, revoking their agreement and accelerating the debt, without notice. *Id.* at ¶¶ 245-46. Plaintiffs allege that in the second instance, Shahani made ten complete and timely before an eleventh payment was rejected, and Shahani was told that the full mortgage amount was due. *Id.* at ¶ 246.

C.   **The Motions**

1.   **Wells Fargo Motion**

Wells Fargo and Bank of America begin by addressing the two federal causes of action in the FAC. Wells Fargo Motion, 3-4. First, they argue that Plaintiffs did not allege debt collection because the only conduct alleged is an attempt to take back collateral. *Id.* at 3. Second, they contend that Plaintiffs have not alleged a violation of the ECOA because they have not pled that Shahani is a member of a protected class. *Id.* at 4.

Next, Wells Fargo and Bank of America address Plaintiffs' state statutory claims. *Id.* at 4-9. First, they assert that Plaintiffs do not state a claim for violation of the security first rule because the payments allegedly made pursuant to a loan modification trial plan were not a set off. *Id.* at 4-5 (citing *Mehta v. Wells Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1202-03 (S.D. Cal. 2010)). Second, they posit that the cause of action for wrongful foreclosure fails to identify any statutory violations because (1) California Civil Code § 2923.5 does not apply to Plaintiffs' deed of trust, nor does it

14

create a right to a loan modification or have any effect on a completed foreclosure sale; (2) California Civil Code § 2923.6 does not require a lender to give a borrower a loan modification; (3) California Civil Code § 2923.6(g) does not require a lender to re-review a borrower multiple times after issuing a denial of a modification; and (4) according to the allegations in the FAC, Wells Fargo reviewed and denied five applications and there is no allegation that Shahani's financial circumstances have changed since the most recent denial. *Id*. at 5-7 (citing *Roberts v. J.P. Morgan Chase Bank*, 2011 WL 864949, at \*5 (N.D. Cal. Mar. 11, 2011); *Winterbower v. Wells Fargo Bank, N.A.*, 2013 WL 1232997, at \*3 (C.D. Cal. Mar. 27, 2013)).  Third, they contend that the civil harassment claim fails because the allegations in the FAC make it clear that all of Defendants' communications were legitimate, as they were related to loan modification and the foreclosure process. *Id*. at 8.  They also assert that Shahani has not provided factual allegations showing that he suffered substantial emotional distress. *Id*. Fourth, they argue that Plaintiffs have not alleged debt collection for the purposes of the Rosenthal Act because the FAC alleges nothing beyond Defendants' attempts to nonjudicially foreclose without granting a loan modification. *Id*. at 8-9.  Fifth, they contend that Plaintiffs cannot show a violation of the UCL because, as discussed in other portions of their Motion, Plaintiffs have not pled unlawful conduct or fraud. *Id*. at 9.

Wells Fargo and Bank of America turn to Plaintiffs' state common law claims.  First, they assert that the FAC demonstrates that Wells Fargo did not breach any February 2009 oral contract to consider Shahani for a loan modification, because it denied his request. *Id*. at 10 (citing FAC, ¶ 140(a), (g)).  In any event, they contend that the breach of oral contract claim is barred by the statute of limitations. *Id* (citing Cal. Code. Civ. Proc. § 339).  Second, they argue that Plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing because they have not identified a contractual obligation, a breach of that obligation, or any conduct that interfered with Plaintiffs' rights under that obligation. *Id*. at 11.  Third, they posit that the promissory estoppel claim fails because it is not supported by an allegation of a promise clear and unambiguous in its terms. *Id*. at 11-12.  Fourth, they argue that Plaintiffs' fraud allegations do not meet the heightened pleading standard. *Id*. at 12-13.  Fifth, they contend that the action for slander of title is barred by privilege because Plaintiffs have not credibly alleged facts supporting a finding of malice or slander. *Id*. at 13

United States District Court
Northern District of California

1  (citing *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 333, 85 Cal.Rptr.3d 532 (2008)).  Sixth, they

2  assert that Plaintiffs cannot allege the existence of a legal duty, such that their negligence claim is

3  barred.  *Id*. at 14 (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1093, 283

4  Cal.Rptr. 53 (1991)).

5  Finally, Wells Fargo and Bank of America reach Plaintiffs' equitable causes of action.  *Id*. at

6  15-16.  They argue that each equitable claim is barred by the tender rule.  *Id*.

7  Wells Fargo and Bank of America also state that there are no allegations specific to Bank of

8  America in the FAC.  *Id*. at 16.

9  **2.  First American Motion**

10  Like Wells Fargo and Bank of America, First American begins by addressing the FDCPA and

11  ECOA claims.  First American Motion, 4-7.  First American contends that the state law claims should

12  again be dismissed for lack of subject matter jurisdiction.  *Id*. at 7.

13  First American argues that the FDCPA only applies if the trustee or lender goes beyond

14  statutory notices mandated by the foreclosure statutes.  *Id*. at 5 (citing *Natividad v. Wells Fargo Bank,*

15  *N.A.*, 2013 WL 2299601 (N.D. Cal. May 24, 2013)).  It contends that Plaintiffs have not alleged that

16  First American did anything beyond what was required to process a trustee sale proceeding under

17  California law.  *Id*. at 6.  First American also posits that the ECOA does not apply to it because it is

18  not a creditor, and Plaintiffs have not alleged that it is a creditor.  *Id*.

19  **D.  Opposition**

20  **1.  Opposition to Wells Fargo Motion**

21  Like Defendants, Plaintiffs begin with their federal claims.  Plaintiffs argue that, pursuant to

22  the FDCPA, Wells Fargo is a debt collector because it was acting as a loan servicer on behalf of Bank

23  of America.  Opposition to Wells Fargo Motion, 9-10.  Plaintiffs contend that Wells Fargo acted

24  independently of any right to foreclose in evaluating Shahani's financial status, accepting payments

25  from Shahani and then denying them, and in denying Shahani's request for a loan modification.  *Id*. at

26  8-9 (citing *Natividad*, 2013 WL 2299601).  Because Wells Fargo is a debt collector, Plaintiffs argue

27  that it is liable for violation of the FDCPA.  *Id*. at 10.  Plaintiffs also assert that Bank of America and

28  Wells Fargo are liable under the ECOA because they approved certain loan payments, but later

16

United States District Court
Northern District of California

1   without warning or explanation stopped accepting those payments and proceeded with foreclosure

2   activity while simultaneously engaging in loan modification review.  *Id.* (citing *Schlegel v. Wells*

3   *Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013)).

4        Next, Plaintiffs address their state statutory claims.  First, they argue that they have stated a

5   claim under the security first rule because Defendants elected nonjudicial foreclosure as their remedy

6   by recording the NOD, but thereafter accepted payments pursuant to a trial loan modification

7   agreement.  *Id.* at 10-12 (citing Cal. Code Civ. Proc. § 726(a); *Roseleaf Corp. v. Chierighino*, 59

8   Cal.2d 35, 38-39, 27 Cal.Rptr. 873, 378 P.2d 97 (1963); *Security Pac. Nat'l Bank v. Wozab*, 51 Cal.3d

9   991, 275 Cal.Rptr. 201, 800 P.2d 557 (1990); *In re Prestige Ltd. P'ship-Concord*, 234 F.3d 1108 (9th

10  Cir. 2000)).  Second, Plaintiffs assert that Defendants violated the HBOR by (1) failing to grant the

11  loan modification proposed by Shahani, which would have maximized net present value; and (2)

12  proceeding with foreclosure while simultaneously considering Shahani's loan modification

13  application, or "dual tracking."  *Id.* at 12-14 (citing Cal. Civ. Code §2923.6(a), (c)-(d)).  Third,

14  Plaintiffs argue that Defendants duplicate requests for information and documentation and refusal to

15  acknowledge receipt of certain documents during the loan modification negotiations amounted to civil

16  harassment, and satisfied the elements for the tort of intentional infliction of emotional distress.  *Id.* at

17  14-15 (citing Cal. Civ. Code § 527.6).  Fourth, Plaintiffs contend that Defendants violated the

18  Rosenthal Act by making false reports to credit reporting agencies, falsely stating the amount of debt,

19  falsely stating that debt was owed, attempting to collect debt through deceptive letters and phone calls

20  demanding payment, making false promises, and increasing the debt by stating amounts not permitted

21  including excessive service fees, attorneys' fees, and late charges.  *Id.* at 15-16 (citing Cal. Civ. Code

22  § 1788.17; 15 U.S.C. § 1692e(8)).  Plaintiffs further assert that the Rosenthal Act claim has nothing to

23  do with foreclosure.  *Id.*  Fifth, Plaintiffs argue that they have stated a claim under the UCL based on

24  the unlawful, unfair, or fraudulent practices listed in the FAC.  *Id.* at 16-17.  Plaintiffs further contend

25  that it is unfair and fraudulent for Defendants to represent that they intended to consider Shahani's

26  request for modification only to deny that request on a technicality or incorrect financial calculations,

27  and further to agree to reconsider the request only to deny the request on representations that they

28

17

have not received the information and documents they requested or that they do not have sufficient information to make a decision. *Id*. at 17.

Turning to their state common law claims, Plaintiffs argue that they have stated a claim for breach of various oral agreements:  (1) Defendants never offered Shahani a loan modification in compliance with their February 2009 agreement; (2) Wells Fargo agreed to grant Plaintiffs' request for a loan modification after obtaining relief from the bankruptcy stay, although the agreement was never put in writing, and Plaintiffs made ten monthly payments of $4,012.27 to the agreement before Wells Fargo refused to accept further payments and proceeded to foreclosure; and (3) Wells Fargo repeatedly promised to postpone the Trustee's Sale set for March 4, 2013 in exchange for further information and documentation, but failed to postpone the sale after Shahani sent the requested documentation. *Id*.at 17-18.  Second, Plaintiffs argue that HAMP standards can be an ingredient in support of a cause of action for breach of written contract. *Id*. at 18-19.  They further assert that Wells Fargo ignored HAMP standards by denying Shahani's request for a loan modification even though he qualified under his estimated results of the "waterfall" method for calculating net present value employed pursuant to HAMP. *Id*.  Third, Plaintiffs contend that Defendants violated the covenant of good faith and fair dealing by failing to consider Shahani's request for a loan modification on the merits. *Id*. at 19-20.  Fourth, Plaintiffs argue that Shahani relied on Defendants' agreement to offer him a loan modification by making over $40,000 in payments between September 2011 and June 2012. *Id*. at 20.  Fifth, Plaintiffs assert that they have pled fraud with specificity. *Id*. at 20-21.  Sixth, Plaintiffs contend that the recordation of the Trustee's Deed falsely and improperly asserted that Bank of America owned the Property – where Plaintiffs were entitled to an injunction to prevent such recordation. *Id*. at 21 (citing Cal. Civ. Code § 2924.12(a)).  Sixth, Plaintiffs argue that their negligence claim is sufficient because  they have alleged a duty of care in evaluating Shahani's request for a loan modification. *Id*. at 21-22 (citing *Biakanja v. Irving*, 49 Cal.2d 647, 650, 320 P.2d 16 (1958)).

Next, Plaintiffs argue that the tender rule does not bar their equitable claims because (1) they have a counter-claim or set off against Bank of America as a result of their claims brought here; (2) imposition of a tender requirement would be inequitable; and (3) the deed is void on its face. *Id*. at

United States District Court
Northern District of California

22-23 (citing *Natividad*, 2013 WL 2299601).  Finally, Plaintiffs argue that all of the challenged conduct implicates Bank of America because all of the other Defendants are its agents.  *Id*. at 24.

### 2.     Opposition to First American Motion

Plaintiffs contend that First American is a debt collector pursuant to the FDCPA because it filed the NOD, and "was brought in to assist with 'debt collection,'" only after Plaintiffs were in default.  Opposition to First American Motion, 5-7 (citing *Natividad*, 2013 WL 2299601).  Plaintiffs also note that the NOD states that "FIRST AMERICAN TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE."  *Id*. at 6 n.3.  Plaintiffs argue that First American is liable for a violation of the ECOA because it assisted Bank of America in its decision not to extend, renew, or continue providing Shahani credit because it was Bank of America's agent.  *Id*. at 7.

Plaintiffs proceed to make a series of arguments not responsive to any argument contained in First American's Motion, asserting that:  (1) First American's liability is not barred by litigation privilege; (2) First American lacked authority to record the NOD or the Second Substitution, or any of the following documents; (3) the HBOR subjects trustees to liability; (4) Plaintiffs tendered full value of the amount due to Wells Fargo based on the estimated value of the property at the time; (5) First American engaged in civil harassment; (6) civil conspiracy is properly pled; (7) the recorded instruments are defective and should be cancelled; (8) Plaintiffs have pled a duty of care; and (9) Defendants violated the UCL.  *Id*. at 7-20.

### E.     Replies

#### 1.     Wells Fargo Reply

Wells Fargo and Bank of America address only the federal claim in Reply, incorporating its arguments in Docket Number 21 to address the remaining claims.  Reply in Support of Wells Fargo Motion ("Wells Fargo Reply"), 1-2; *see also* Order, 20-21 (summarizing Docket Number 21).  They argue that they cannot be liable under the FDCPA for conducting a loan modification review upon Plaintiffs' request because (1) complying with the borrowers request is not abusive debt collection; and (2) they were not obligated to grant Plaintiffs' request for a modification.  Reply, 2.  Moreover,

United States District Court
Northern District of California

1  they argue that they have not engaged in debt collection because they did nothing beyond the scope of

2  the ordinary foreclosure process.  *Id.* at 3 (citing *Natividad*, 2013 WL 2299601, at *8; *Schlegel*, 720

3  F.3d at 1206).  Further, they argue that Plaintiffs have not stated a claim under the ECOA because,

4  unlike *Schlegel*, Shahani's requests for a loan modification were denied such that Wells Fargo never

5  extended Shahani additional credit that it could revoke by foreclosing on his property.  *Id.* at 4.

6  Finally, they contend that the foreclosure itself included multiple notices.  *Id.*

7  **2.      First American Reply**

8  First American asserts that it is not subject to the FDCPA because it did nothing beyond what

9  was statutorily required to enforce the security interest.  Reply in Support of First American Motion,

10  3-4 (citing *Natividad*, 2013 WL 2299601).  In addition, First American contends that Plaintiffs'

11  statement that it assisted Bank of America in its decision to extend, renew, or continue providing

12  Shahani credit is not in the FAC and unsupported by any factual basis.  *Id.* at 5.  Accordingly, First

13  American argues that it is not a creditor subject to the ECOA.  *Id.*

**III.    REQUESTS FOR JUDICIAL NOTICE**

15  The parties seek judicial notice of the same documents for which they sought judicial notice in

16  conjunction with the June 24, 2013 Order.  *See* Dkt. Nos. 9, 16, 19, 23, 25, 48, 51, 56-57, 61.  The

17  Court adopts its reasoning and conclusions from the June 24, 2013 Order.  *See* Order, 21-22.

**IV.    ANALYSIS**

19  **A.      Legal Standard**

20  **1.      Rule 12(b)(6)**

21  A complaint may be dismissed for failure to state a claim for which relief can be granted

22  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose

23  of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star*

24  *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the

25  pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

26  pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

27  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

2    "all allegations of material fact as true and construe[s] them in the light most favorable to the non-

3    moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may

4    be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

5    theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must

6    "contain either direct or inferential allegations respecting all the material elements necessary to

7    sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562

8    (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A

9    pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

10   action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

11   555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

12   enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

13   The factual allegations must be definite enough to "raise a right to relief above the speculative

14   level." *Twombly*, 550 U.S. at 555. However, a complaint does not need detailed factual allegations to

15   survive dismissal. *Id.* Rather, a complaint need only include enough facts to state a claim that is

16   "plausible on its face." *Id.* at 570. That is, the pleadings must contain factual allegations "plausibly

17   suggesting (not merely consistent with)" a right to relief. *Id.* at 545 (noting that this requirement is

18   consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader

19   is entitled to relief").

20            **2.    Rule 9(b)**

21   Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake,

22   a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

23   9(b). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s

24   heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

25   2003). The plaintiff must include "the who, what, when, where, and how" of the fraud. *Id.* at 1106

26   (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and

27   why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for fraud must

28   be "specific enough to give defendants notice of the particular conduct which is alleged to constitute

1    the fraud charged so that they can defend against the charge and not just deny that they have done

2    anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

3    **B.    Subject Matter Jurisdiction**

4    **1.    Diversity Jurisdiction**

5    As discussed in the June 24, 2013 Order, complete diversity of the parties is lacking in this

6    case.  Order, 24.

7    **2.    Federal Question Jurisdiction and Supplemental Jurisdiction**

8    "The district courts shall have original jurisdiction of all civil actions arising under the

9    Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Generally, "[a] case arises

10   under federal law where federal law creates the cause of action or where the vindication of a right

11   under state law necessarily turns on some construction of federal law."  *Republican Party of Guam v.*

12   *Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Constr. Laborers*

13   *Vacation Trust*, 463 U.S. 1, 8-9 (1983)).   Federal question jurisdiction is found only where a federal

14   question appears on the face of a properly pleaded complaint.  *Caterpillar Inc. v. Williams*, 482 U.S.

15   386, 392 (1987).

16   Here, there are two claims that fall within this Court's subject matter jurisdiction on the basis

17   of a federal question:  (1) the FDCPA claim; and (2) the ECOA claim.  Because the Court denies

18   Wells Fargo and Bank of America's Motion as to the FDCPA claim, it exercises supplemental

19   jurisdiction over Plaintiffs' state law claims.

20   **a.    Violation of the FDCPA Against Wells Fargo and First American**

21   **i.    Background Law**

22   "In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt

23   collection practices sometimes used by debt collectors against consumers."  *Turner v. Cook*, 362 F.3d

24   1219, 1226-27 (9th Cir. 2004).  Plaintiffs allege violations of 15 U.S.C. §§ 1692e and 1692f; 15

25   U.S.C. § 1692e provides that a "debt collector may not use any false, deceptive, or misleading

26   representation or means in connection with the collection of any debt," and 15 U.S.C. § 1692f

27   provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to

28   collect any debt."

United States District Court
Northern District of California

22

Because the prohibitions in 15 U.S.C. §§ 1692e and 1692f apply only to debt collectors, the complaint must plead factual content that allows the Court to draw the reasonable inference that Defendants are debt collectors. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013). The FDCPA defines the term "debt collector" to include: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).[21]

Moreover, the prohibitions in 15 U.S.C. §§ 1692e and 1692f apply to conduct "in connection with the collection of any debt" and conduct "to collect or attempt any debt[,]" respectively. Although the Ninth Circuit has not addressed whether foreclosure proceedings constitute debt collection within the ambit of the FDCPA, courts in this Circuit have regularly held that nonjudicial foreclosure is not debt collection. *Natividad*, 2013 WL 2299601, at *5-*9; *Ligon v. JP Morgan Chase Bank*, 2011 WL 2550836, at *3 (N.D. Cal. June 27, 2011) (collecting cases). This authority is persuasive.

Under the FDCPA, claims are assessed from the perspective of the "least sophisticated debtor." *Herrera v. LCS Fin. Servs. Corp.*, 2009 WL 5062192, at *4 (N.D. Cal. Dec. 22, 2009) (citing *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1989)). "If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the Act." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (citing *Swanson*, 869 F.2d at 1225). "This objective standard 'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd … the ignorant, the unthinking and the credulous." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (citation omitted).

### ii.    Wells Fargo

Wells Fargo's motion to dismiss the FDCPA cause of action is denied because Wells Fargo has not identified any deficiencies in that cause of action.

Plaintiffs allege that Wells Fargo is in the business of regularly collecting debt and uses the instrumentalities of interstate commerce in that business. FAC, ¶ 238. Plaintiffs further allege that

---

[21] The definition expressly excludes six types of persons or organizations from the definition of "debt collector." 15 U.S.C. § 1692a(6)(A)-(F). Defendants have made no argument that any of the exclusions are applicable here.

United States District Court
Northern District of California

23

1  one of Wells Fargo's principal businesses is debt collection. *Id.* In addition, Plaintiffs allege that

2  Wells Fargo services the debts of thousands and thousands of residential mortgages owned by Bank of

3  America and other mortgagees. *Id.* Finally, Plaintiffs allege that Wells Fargo's conduct described in

4  the FAC violates 15 U.S.C. §§ 1692e and 1692f. *Id.* at ¶¶ 237, 240.

5      Plaintiffs have not alleged facts sufficient to plead that Wells Fargo is a debt collector under

6  the first definition because the FAC "does not expressly state that the 'principal purpose' of Wells

7  Fargo's business is debt collection." *Schlegel*, 720 F.3d at 1208-09. Rather, the FAC alleges that

8  "one of the principal businesses of [Wells Fargo] is debt collection on a regular basis." FAC, ¶ 238.

9  As in *Schlegel*, the FAC's factual matter, viewed in the light most favorable to Plaintiffs, establishes

10 only that debt collection is some part of Wells Fargo's business. *See Schlegel*, 720 F.3d at 1209. For

11 Wells Fargo to be a debt collector under the first definition, Plaintiffs must allege that *the* principal

12 purpose of Wells Fargo's business is debt collection, not that *one of* Wells Fargo's principal

13 businesses is debt collection.

14      On the other hand, the second definition is satisfied by the allegations in the FAC. Plaintiffs

15 allege that Wells Fargo regularly collects or attempts to collect, directly or indirectly, debts owed or

16 due or asserted to be owed or due to another by servicing residential mortgage loans owned by Bank

17 of America and other mortgagees. FAC, ¶ 238. In the present case, Plaintiffs allege that Wells Fargo,

18 acting as loan servicer, attempted to collect a debt that was in default before it was transferred to Bank

19 of America. *Id.* at ¶¶ 25-26, 30 (Shahani fell behind in payments by February 2009, NOD recorded

20 on or about July 20, 2009, and Assignment of DOT recorded in September 2009).[22]

21

22

23  _____

[22] Courts have held that a loan servicer is not a debt collector for the purposes of the FDCPA when the loan was not in
24  default when it was assigned to the loan servicer. *See Jara v. Aurora Loan Servs.*, 852 F.Supp.2d 1204, 1211 (N.D. Cal.
2012). On the other hand, courts have found that a loan servicer failed to meet its burden on a motion to dismiss to show
25  that it was not a debt collector when it failed to show that the debt was not in default at the time of transfer. *Natividad*,
2013 WL 2299601, at *4. In the present case, Wells Fargo has not argued that any exemption from the definition of debt
26  collector applies to it. The Court notes that Wells Fargo was not, on the facts alleged, "collecting or attempting to collect
any debt owed or due or asserted to be owed or due another to the extent that such activity … concerns a debt which was
27  not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Although it is possible that
Bank of America received the beneficial interest under the DOT prior to the recorded Assignment, as the letter
28  accompanying the NOD states that it was the beneficiary when the NOD was recorded, it is plausible that the interest in
the DOT was not transferred until the debt was in default, as it had been delinquent for approximately five months before
the NOD was recorded.

1    Wells Fargo raises only two arguments for dismissal of the FDCPA claim.  First, Wells Fargo

2   argues that the allegations in the FAC show that it sought only to foreclose on the property.  Wells

3   Fargo Motion, 3.  Wells Fargo further argues that it sought only to take back collateral, not to collect

4   any money from Shahani.  *Id.*  Second, in its Reply, Wells Fargo argues that its loan modification

5   review, at Shahani's request, cannot be an unfair debt collection practice because it was under no

6   obligation to grant him a loan modification.  Wells Fargo Reply, 2-3.

7    Neither argument warrants dismissal.  First, as Plaintiffs argue, the challenged wrongful acts

8   relate to specific conduct in the loan modification negotiations, not the execution of the nonjudicial

9   foreclosure process.  Opposition to Wells Fargo, 8-9.  Although Plaintiffs press the argument that

10   Shahani was entitled to a loan modification, that argument is not necessary to state a claim under the

11   FDCPA.  The FAC alleges, essentially, that Wells Fargo induced Shahani to pay over $40,000 by

12   leading him to believe he would be considered for a loan modification prior to refusing to accept

13   payments unless he could pay an additional $138,440.  Although the details of Plaintiffs' allegations

14   are fuzzy, Wells Fargo's argument that it did not seek to collect any money from Shahani is

15   contradicted by the FAC.  Crediting Plaintiffs' factual allegations, as it must, the Court denies Wells

16   Fargo's motion to dismiss the FDCPA claim.

17                              **iii.      First American**

18    First American argues that the FDCPA claim against it should be dismissed because the only

19   conduct it engaged in was the statutory nonjudicial foreclosure process.  First American Motion, 5-6.

20   Plaintiffs provide only the unresponsive argument that the exception to the definition of "debt

21   collector" under the FDCPA for cases in which the creditor, on whose behalf the defendant acts,

22   obtained the debt before default does not apply in this case.  Opposition to First American, 5-7.

23   Moreover, Plaintiffs have not alleged any conduct by First American going beyond the standard

24   foreclosure process.  Accordingly, the FDCPA claim against First American is dismissed.  Plaintiffs

25   will be given leave to amend.  If Plaintiffs choose to amend this claim, they should set forth specific

26   facts showing that First American violated the statute.

27                         **b.      Violation of the ECOA Against Defendants**

28                              **i.      Background Law**

25

The ECOA "makes it illegal 'for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … on the basis of race, color, religion, national origin, sex or marital status, or age.'"  *Schlegel*, 720 F.3d at 1210 (quoting 15 U.S.C. § 1691(a)(1)).  "One way that the ECOA effectuates this goal is through its notice requirement."  *Id*.  "Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."  15 U.S.C. § 1691(d)(1).  "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor."  15 U.S.C. § 1691(d)(2).  The ECOA defines an "adverse action" as a:

> denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(6).

The ECOA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."  15 U.S.C. § 1691a(d).  The Ninth Circuit has noted that the ECOA does not define "revocation," and has read the word as having its plain meaning.  *Schlegel*, 720 F.3d at 1210-11.  Accordingly, the Ninth Circuit has ruled that "a lender revokes credit when it annuls, repeals, rescinds or cancels a right to defer payment of a debt."  *Id*. at 1211.  In addition, the term "creditor" "means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  15 U.S.C. § 1691a(e).

"When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA."  *Schlegel*, 720 F.3d at 1210 (citing 15 U.S.C. § 1691e); *see also Errico v. Pac. Capital Bank, N.A.*, 753 F.Supp.2d 1034, 1042 (N.D. Cal. 2010) ("a procedural violation of the notice provisions of ECOA may provide the basis for a cause of action without regard to allegations of discrimination") (citing *Dufay v. Bank of America*, 94 F.3d 561 (9th

26

United States District Court
Northern District of California

1    Cir. 1996)).  For example, in *Schlegel* the Ninth Circuit held that borrowers stated a claim under the

2    ECOA where they pled facts that plausibly gave rise to the claim that Wells Fargo terminated a loan

3    modification agreement, under which the borrowers were not in default, through a course of egregious

4    conduct going far beyond clerical error and the parties agreed that Wells Fargo did not send the

5    borrowers an adverse action notice.  *Schlegel*, 720 F.3d at 1211; *see also Watts v. JP Morgan Chase*

6    *Bank, N.A.*, 2012 WL 3638537, at *1-*3 (N.D. Cal. Aug. 22, 2012) ("A modification of an existing

7    loan is an extension of credit for ECOA purposes[;]" granting partial summary judgment in the

8    plaintiffs' favor on an ECOA claim where it was undisputed that the bank's written rejection of a loan

9    modification application and statement of reasons came significantly later than thirty days after the

10   completed application and where the plaintiffs were not in default until well after the application was

11   completed and denied); *but see Owens v. Bank of America, N.A.*, 2013 WL 1820769, at *5 (N.D. Cal.

12   Apr. 30, 2013) (granting motion to dismiss without leave to amend on an ECOA notice claim relating

13   to a loan modification application because Plaintiffs were in default at the time of the application).

14                                  **ii.      Application to Facts**

15        For the reasons discussed below, the ECOA claim is dismissed with leave to amend.

16        Plaintiffs allege that Defendants twice offered to accept payments from Plaintiffs but, without

17   notice or cause, revoked those agreements and refused to accept further payments.  FAC, ¶ 245.

18   Plaintiffs allege that, in so doing, Defendants revoked prior credit agreements.  *Id*.  Further, Plaintiffs

19   allege that Defendants did not provide a statement of reasons for withdrawing or revoking either

20   credit agreement.  *Id*. at ¶ 246.  Plaintiffs appear to be referring to (1) the initial loan modification

21   payment that was denied in October 2009; and (2) the ten monthly payments Shahani made beginning

22   in September 2011.  *See id.* at ¶¶ 35, 140(r)-(u).

23        First, Plaintiffs allege that Defendants "offered Shahani a loan modification" in an October 5,

24   2009 letter and asked for a number of pieces of information.  *Id*. at ¶ 140(r).  In a letter sent the

25   following day Defendant instructed Shahani to submit an initial payment of $5,412.27 on October 20,

26   2009 and to submit a number of pieces of financial documentation, although no deadline for

27   document submission was included.  *Id*. at ¶ 140(s).  An October 16, 2009 letter from Defendants

28   indicated that the loan modification was denied because Shahani did not provide "us" with all of the

27

1    information needed within the time frame required by his trial modification period workout plan.  *Id.*

2    at ¶ 140(u).  Shahani wired a money transfer with the $5,412.27 payment on October 20, 2009, before

3    receiving the October 16, 2009 letter.  *Id.* at ¶ 140(t).  On October 26, 2009, Shahani was informed

4    that he had been approved for modification, and that he should re-submit the documents previously

5    submitted.  *Id.* at ¶ 140(w).  In a November 2, 2009 letter Shahani was informed that his money

6    transfer had been declined.  *Id.* at ¶ 140(x).  On November 9, 2009, Defendants sent another letter

7    indicating that his loan modification request had been denied because he did not provide "us" with the

8    information needed within the time frame required by his trial modification period workout plan.  *Id.*

9    at ¶ 140(z).  Two days later, Shahani filed a Chapter 11 bankruptcy petition.  *Id.* at ¶ 140(aa).  These

10   allegations contradict Plaintiffs' general allegation that Defendants revoked the agreement without

11   providing notices after Shahani made a full and timely payment.  *See id.* at ¶¶ 245-46.  It also appears

12   from the FAC that Shahani had fallen behind in his mortgage payments prior to February 2009, before

13   he first requested a loan modification.  *Id.* at ¶ 25.  There is no indication that he became current on

14   his account prior to the bankruptcy filing.

15           The allegations pertaining to the events in the fall of 2009 do not state a claim under the

16   ECOA's notice requirement.  This case, as pled, is unlike *Schlegel*.  There, the borrowers were not

17   delinquent under their loan modification agreement when the defendant revoked the borrowers' credit

18   under that agreement.  *See Schlegel*, 720 F.3d at 1206, 1211.  Here, in the fall of 2009, Shahani sought

19   an extension of credit, a loan modification, while he was delinquent in payments on initial credit

20   arrangement, his mortgage loan.  In these circumstances, there was no "adverse action" within the

21   meaning of the ECOA.  To the extent that a new credit agreement was granted and then revoked, the

22   allegations in the FAC show that Shahani received written notice of the denial of his loan

23   modification application within thirty days of its submission and again within thirty days of

24   Defendants' apparent conditional approval.  Finally, it is unclear from the FAC which of the three

25   Defendants Plaintiffs are addressing in these allegations.  From the entirety of the FAC, it appears that

26   they are referring to Wells Fargo.  It is unclear that First American was involved in the challenged

27   conduct, and there is no allegation supporting the inference that it is a "creditor" within the meaning

28   of the ECOA.

United States District Court
Northern District of California

28

United States District Court
Northern District of California

Second, the events running from August 2011 to July 2012 are less clear from the FAC. Plaintiffs allege that Wells Fargo obtained relief from the bankruptcy stay in August 2011 and immediately invited Shahani to re-apply for a loan modification, which Shahani did. FAC, ¶¶ 34-35, 140(bb)-(dd). Within days, Shahani was told, orally, that, to qualify for the requested loan modification, the investor's guidelines required him to be a minimum of three months current on his loan payments. *Id*. at ¶¶ 35, 140(dd). Beginning September 2011, Shahani made ten monthly payments, which Wells Fargo accepted. *Id*. at ¶¶ 35, 140(ee). At one point in the FAC, Plaintiffs allege that these payments were made pursuant to a trial loan modification agreement. *See id.* at ¶ 51 Ten months later, Defendants denied Shahani's request for a loan modification in a letter dated July 18, 2012. *Id*. at ¶ 140(ff). Defendants stated that per investor's guidelines, which were not disclosed to Shahani, they could not find affordability for his modification. *Id*. at ¶¶ 35, 140(ff). Thereafter, Defendants refused to accept further loan payments, the first of which was made on August 6, 2012 and returned on August 16, 2012 with a cover letter. *Id*. at ¶ 140(jj)-(ll). When Shahani investigated, he was told that he was required to make a balloon payment of $138,440 to reinstate the loan. *Id*. at ¶ 140(jj)-(kk). Modification negotiations continued as Shahani transmitted a large number of updated documents to Wells Fargo and Wells Fargo continually requested more documents until the foreclosure sale took place. *Id*. at ¶¶ 37, 140(nn)-(aaa).

The allegations pertaining to the events beginning in August 2011 do not state a claim under ECOA. First, it appears from the FAC that Shahani was in default on his mortgage at the time the events occurred. The denial of a modification under those circumstances is not an adverse action. There are also no clear allegations that another credit approval was received and revoked.[23]

**C.    Violation of the Security First Rule against Bank of America and Wells Fargo**

California Civil Code § 726 embodies, in relevant part, a "security first" rule, "requir[ing] a secured creditor to proceed against the security before enforcing the underlying debt." *Mehta v. Wells Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1202 (S.D. Cal. 2010) (quoting *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal.3d 991, 997, 275 Cal.Rptr. 201, 800 P.2d 557 (1990)). The security first rule does not prohibit agreements between a lender and borrower that attempt to prevent foreclosure on the security

---

[23] As with the above allegations, they do not implicate First American or support the inference that First American is a creditor within the meaning of the ECOA.

United States District Court
Northern District of California

1  interest.  *Id*.  Instead, the rule requires the sale of the secured property before the lender pursues the

2  debtor personally for any further deficiency.  *Id*. (citing *Walker v. Cmty. Bank*, 10 Cal.3d 729, 736,

3  111 Cal.Rptr. 897, 518 P.2d 329 (1974) ("the clear purpose of section 726 . . . requir[es] a secured

4  creditor to exhaust all security first").  In *Mehta*, the court dismissed a claim premised on the security

5  first rule with prejudice where Wells Fargo did not pursue the plaintiff's assets; instead, the plaintiff

6  voluntarily made payments to Wells Fargo pursuant to a forbearance agreement but, due to the

7  plaintiff's failure to fulfill other obligations under that agreement, was later subject to foreclosure.  *Id*.

8  at 1202-03.  Likewise, in the present case Defendants did not pursue Shahani's assets prior to

9  foreclosure but Shahani voluntarily tendered payments pursuant to loan modification negotiations

10  prior denying Shahani's requested modification due to unspecified investor guidelines.  FAC, ¶ 35.

11  Plaintiffs' argument that Shahani did not voluntarily submit payments pursuant to the trial loan

12  modification agreement must be rejected.  *See id*. at ¶ 51; Opposition to Wells Fargo, 12.  As in

13  *Mehta*, neither Bank of America nor Wells Fargo brought any action to collect Plaintiffs' assets.[24]

14  The authority cited by Plaintiffs is inapposite.  *See Security Pacific*, 51 Cal.3d at 995, 999-1000, 275

15  Cal.Rptr. 201, 800 P.2d 557 (bank violated the security first rule by seizing funds in the plaintiffs

16  accounts and setting them off against the secured debt); *In re Prestige Ltd. P'ship-Concord*, 234 F.3d

17  at 1115-16 (although bankruptcy court had held that bank waived its secured interest by attaching and

18  levying upon the plaintiff's bank accounts, the underlying debt still existed).   This cause of action is

19  dismissed without leave to amend.

20    **D.    Breach of Oral Contract Against Bank of America and Wells Fargo**

21       **1.    Background Law**

22        The elements of a cause of action for breach of contract are:  (1) the existence of the contract;

23  (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4)

24  damages.  *First Commercial Mortg. Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23

25  (2001).

26        To allege the existence of a contract, a plaintiff must plead mutual assent, sufficiently definite

27  contractual terms, and consideration.  First, "[c]ontract formation requires mutual consent, which

28

---

[24] This cause of action is not pled against First American.

1    cannot exist unless the parties agree on the same thing in the same sense.'" *Bustamante v. Intuit, Inc.*,

2    141 Cal.App.4th 199, 208, 45 Cal.Rptr.3d 692 (2006) (quoting Cal. Civ. Code §§ 1580, 1550, 1565).

3    Second, "[u]nder California law, a contract will be enforced if it is sufficiently definite . . . for the

4    court to ascertain the parties' obligations and to determine whether those obligations have been

5    performed or breached." *Ersa Grae Corp. v. Fluor Corp*., 1 Cal.App.4th 613, 623, 2 Cal.Rptr.2d 288

6    (1991). Conversely, a contract is void and unenforceable where a contract is so uncertain and

7    indefinite that the intention of the parties on material questions cannot be ascertained. *Ladas v.*

8    *California State Auto. Ass'n*, 19 Cal.App.4th 761, 770, 23 Cal.Rptr.2d 810 (1993).

9        Third, under California law, "good consideration" to support a contract is defined as follows:

10

11        Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered,

12        by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

13   Cal. Civ. Code § 1605. Doing or promising to do what one is already legally bound to do cannot be

14   consideration for a promise. *Witkin, Summary of Califorina Law* 10th (2005) Contracts § 218. On the

15   other hand, "[u]nder California law, consideration exists even if the performance due 'consists almost

16   wholly of a performance that is already required and that this performance is the main object of the

17   promisor's desire. It is enough that some small additional performance is bargained for and given ….

18   [It is sufficient] if the act or forbearance given or promised as consideration differs in any way from

19   what was previously due." *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451, at *4 (N.D.

20   Cal. Mar. 28, 2011) (quoting *House v. Lala*, 214 Cal.App.2d 238, 243, 29 Cal.Rptr. 450 (1963)).

21        Moreover, courts have held that an oral loan modification agreement can fall into an exception

22   to the statute of frauds. *See Ansanelli*, 2011 WL 1134451, at *3-*5; *Lyons v. Bank of America, NA*,

23   2011 WL 3607608, at *4-*5 (N.D. Cal. Aug. 15, 2011); *Corvello v. Wells Fargo Bank, NA*, __ F.3d

24   __, 2013 WL 4017279, at *6 (9th Cir Aug. 8, 2012) (rejecting the argument that a claim for breach of

25   an oral agreement to modify a mortgage is barred by the statute of frauds in California where the party

26   asserting a breach had alleged full performance of its obligations under the contract). The statute of

27   frauds provides, in relevant part:

28

(a)  The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by the party's agent:

…

3.  An agreement … for the sale of real property, or of an interest therein …

Cal. Civ. Code § 1624.  California Civil Code § 1698 provides, in relevant part:

(b)  A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

(c)  Unless the contract expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration.  The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.

Cal. Civ. Code § 1698.  In *Lyons*, the court, relying on *Ansanelli*, concluded that an oral loan modification falls into the exception to the statute of frauds created by § 1698(b) provided there is consideration for the modification and it is executed by the promisee.  *Lyons*, 2011 WL 3607608, at *4.  The court found that the plaintiffs supplied sufficient consideration by responding to the defendants' request for information.  *Id*. at *5.  Thus, the court concluded that the plaintiffs stated a claim for relief by alleging that they were granted a loan modification and given a trial period and payment amount, but that the defendants breached the agreement by increasing the payment amount before the plaintiffs could submit any payments.  *Id*. at *3.

### 2.    Application to Facts

For the following reasons, the breach of oral contract claim is dismissed with leave to amend.

As pled, the breach of oral contract claim is apparently based on representations by Wells Fargo that they would not proceed with the foreclosure process while they were reviewing his loan modification application and would continue postponing the Trustee's Sale so long as he continued providing additional documentation.  *Id*. at ¶ 57.  The theory of breach pled in the FAC is that Shahani has been awaiting the results of his loan modification application since February 2009, but Bank of America and Wells Fargo proceeded with the foreclosure sale on March 4, 2013.  *Id*.  Another theory provided in the FAC is that Wells Fargo breached its oral agreement not to proceed with foreclosure while reviewing Shahani's request for a loan modification and while Shahani made monthly payments of $4,012.27.  *Id*. at ¶ 58.

32

United States District Court
Northern District of California

On the other hand, the history of the loan modification negotiations in the FAC indicates that Shahani made several distinct requests for modification, the first four of which were denied and the last of which was not acted upon:  (1) the February 2009 application was denied in July 2009, although Shahani was invited to update his file for consideration of a loan modification; (2) after Shahani submitted updated materials his application was denied again in August 2009 due to expenses greater than income by over $7,543.00, although Shahani was again given the opportunity to submit additional documentation; (3) Shahani once again submitted additional information, and was instructed to submit an initial payment after being offered "another loan modification"[25] in October 2009 but within the month that modification was denied because Shahani purportedly failed to submit required documentation; (4) in August 2011, after Wells Fargo obtained relief from the bankruptcy stay, Shahani was invited to re-apply for loan modification, was instructed to make at least three months of timely loan payments, and, after making ten months of payments, had his modification request denied because Defendants could not find affordability for his request per investor guidelines in a letter dated July 18, 2012; and (5) Shahani once again sought a loan modification in August 2012, from that point on Wells Fargo made several requests for additional information, including some made after the foreclosure sale had taken place, but never reached a decision on the loan modification application.  *See id.* at ¶ 140(a), (g), (i), (p), (r)-(s), (u), (w), (z), (bb)-(ff), (mm), (pp), (ww)-(aaa).

The Opposition sets forth several new theories in support of the breach of oral contract claim:  (1) Defendants promised to offer Shahani a loan modification in February 2009 but then never did so; (2) in the negotiations beginning in August 2011 Wells Fargo agreed to grant Shahani's request for loan modification; and (3) Wells Fargo promised to postpone the March 4, 2013 foreclosure sale but failed to do so.  Opposition to Wells Fargo, 17-18.  However, the FAC does not allege any facts to support these theories.  The breach of oral contract claim is dismissed because Plaintiffs have not defended the factual theories contained in the FAC:  That Defendants breached an oral contract by proceeding to foreclosure prior to responding to the February 2009 loan modification request or that

---

[25] It is unclear from the FAC whether Plaintiffs are pleading that Shahani was offered a loan modification agreement, or an opportunity to apply for a loan modification.  There is no earlier reference to a loan modification agreement, although Plaintiffs do state that Defendants offered loan modification as an option for resolving his delinquency.  *See* FAC, ¶ 140(b).  The Court does not read this statement as alleging that Defendants offered a loan modification agreement at that time, but as alleging that Shahani was invited to apply for a loan modification.

United States District Court
Northern District of California

1  Defendants foreclosed while reviewing Shahani's request and while Shahani was submitting

2  payments. Indeed, both of these theories are contradicted by the allegations of the FAC. Nor have

3  Plaintiffs pled that Defendants breached the terms of any contract by refusing to accept payments in

4  July of 2012. Nevertheless, this Court is mindful that oral loan modification contract claims have

5  been allowed to go forward. Plaintiffs are given leave to amend this claim to plead facts showing the

6  existence of a contract with sufficiently definite terms, their own performance, breach by Defendants,

7  and damages.

8       **E.    Wrongful Foreclosure Against All Defendants**

9       Plaintiffs' wrongful foreclosure action is pled on the basis of eleven theories: (1) the NOD

10 was recorded in violation of California Civil Code § 2923.5; (2) the First NOTS was issued too soon

11 after the NOD was recorded in violation of California Civil Code § 2923.52; (3) the true beneficiary

12 of Plaintiffs' loan was unknown and the improper party initiated foreclosure in violation of California

13 Civil Code § 2932.5; (4) no notice of sale was posted in compliance with California Civil Code §

14 2924f;[26] (5) Defendants violated a Pooling and Servicing Agreement ("PSA") by failing to maximize

15 net present value to investors by failing to grant Shahani a loan modification; (6) Defendants violated

16 California Civil Code § 2923.6(a)-(b) by failing to maximize net present value by granting Shahani a

17 loan modification; (7) Defendants violated the prohibition on dual-tracking contained in the HBOR,

18 California Civil Code § 2923.6; (8) Defendants failed to provide proper acknowledgement of the

19 receipt of loan modification related documents and a timely notice of denial in violation of the HBOR,

20 California Civil Code §§ 2924.10(a), 2923.6(f); (9) Defendants violated the single point of contact

21 requirement of the HBOR, California Civil Code § 2923.7(a), (c); and (10) Defendants violated the

22 provisions of the HBOR prohibiting mortgage servicers from charging borrowers application fees for

23 a first lien modification or late fees while the loan modification is under consideration. As discussed

24 below, the wrongful foreclosure claim is dismissed only in part with leave to amend to the extent

25 provided below.

26      **1.    Claims Based on Alleged Irregularities in the Foreclosure Process**

---

27 [26] Plaintiffs also allege that the NOD was not mailed to Shahani in pleading the wrongful foreclosure cause of action. This
28 allegation is contradicted by Exhibit 3 to the FAC. Exhibit 3 to the FAC contains an envelope addressed to Shahani and a
cover letter, also addressed to Shahani, mailed with a copy of the NOD on July 23, 2009, three days after Plaintiffs allege
that the NOD was recorded.

United States District Court
Northern District of California

a.      **General Principles**

In California, a "deed of trust containing a power of sale . . . conveys nominal title to property to an intermediary, the 'trustee,' who holds that title as security for repayment of [a] loan to [a] lender, or 'beneficiary.'" *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 334, 85 Cal.Rptr.3d 532 (2008) (citations omitted).  The "trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary." *Id*. at 335.  The trustee's duties "are twofold:  (1) to 'reconvey' the deed of trust to the trustor upon satisfaction upon satisfaction of the debt owed to the beneficiary, resulting in a release of the lien created by the deed of trust, or (2) to initiate nonjudicial foreclosure on the property upon trustor's default, resulting in a sale of the property." *Id*. at 334.  The "trustee, mortgagee, or beneficiary, or any of their authorized agents" initiate the nonjudicial foreclosure process by filing a notice of default.  Cal. Civ. Code § 2924(a)(1).

The California Courts of Appeal have identified the following elements of a claim for wrongful foreclosure:  "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 104, 134 Cal.Rptr.3d 622 (2011); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011) (discussing the general requirement that irregularities in the foreclosure process be prejudicial to the plaintiff's interest); *Herrera*, 205 Cal.App.4th 1495, 1507, 141 Cal.Rptr.3d 326 (2012) (discussing prejudice requirement).

"Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of Default and initiate nonjudicial foreclosure."  *Barrionuevo v. Chase Bank, N.A.*, 885 F.Supp.2d 964, 973-974 (N.D. Cal. 2012) (collecting cases) (cause of action for wrongful foreclosure where Plaintiff alleged that Chase lacked authority to foreclose because Washington Mutual Securitized the subject loan, divesting itself of any interest, prior to transferring its beneficial interest to Chase); *see also Ohlendorf v. Am. Home Mortg. Serv'g*, 279 F.R.D. 575, 583 (E.D. Cal. 2010) (plaintiff may have

1   stated a claim for wrongful foreclosure based on the wrong party initiating foreclosure where MERS

2   was the beneficiary under the deed of trust at the time the notice of default was initiated, the notice of

3   default listed Deutsche as the beneficiary and AHMSI as the trustee, MERS later filed a backdated

4   assignment of the beneficial interest to AHMSI, and eleven seconds later AHMSI recorded a

5   backdated assignment of the mortgage to Deutsche); *Sacchi v. Mortg. Elec. Registration Sys., Inc.*,

6   2011 WL 2533029, at *6 (C.D. Cal. June 24, 2011) (plaintiff stated a cause of action for wrongful

7   foreclosure where judicially noticed documents showed that RCS executed a substitution of trustee in

8   favor of Fidelity at a time when RCS had no beneficial interest in the deed, making all subsequent

9   recordings by Fidelity, including the notice of trustee's sale, invalid); *Javaheri v. JP Morgan Chase

10  Bank, N.A.*, 2011 WL 2173786, at *5-*6 (C.D. Cal. June 2, 2011) (plaintiff stated a claim for

11  wrongful foreclosure by alleging that the mortgage was sold by Washington Mutual to a specific

12  security, which thereafter transferred the mortgage to another specific security, preventing Chase, the

13  defendant, from obtaining the mortgage when it acquired Washington Mutual's assets; and where

14  Chase had not recorded its claim of ownership).

15          California decisions have supported such an approach.  *See Gomes v. Countrywide Home

16  Loans, Inc.*, 192 Cal.App.4th 1149, 1156, 121 Cal.Rptr.3d 819 (2011) (upholding dismissal of a

17  wrongful foreclosure action and noting as "significant" that cases cited by the plaintiff permitting a

18  wrongful foreclosure action "identified a *specific factual basis* for alleging that the foreclosure was

19  not initiated by the correct party" whereas the plaintiff had failed to identify "*any* factual basis" for

20  that conclusion); *Robinson v. Countrywide Home Loans, Inc.*, 199 Cal.App.4th 42, 46, 46 n.5, 130

21  Cal.Rptr.3d 811 (2011) (holding that plaintiffs' claims for damages and declarative relief were

22  precluded the foreclosure scheme does not provide for a preemptive suit to challenge standing to

23  initiate foreclosure but noting that a borrower who believes the foreclosing entity lacks standing to do

24  so can seek to enjoin the trustee's sale or set aside the sale); *but see Robertson v. Citibank, N.A.*, 2013

25  WL 752491, at *4 (N.D. Cal. Feb. 27, 2013) (interpreting *Robinson* and *Gomes* to foreclose a judicial

26  action to determine whether the person initiating the foreclosure process is indeed authorized).

27          Regarding the prejudice element, one California Court of Appeal stated as follows:

28

> Prejudice is not presumed from 'mere irregularities' in the process. [Citation.] Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note [citation], nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.

*Herrera*, 205 Cal.App.4th at 1507-08, 141 Cal.Rptr.3d 326 (concluding that if the wrong entity initiated foreclosure on the basis of an invalid assignment the true victim was not plaintiffs but the lender) (quoting *Fontenot*, 198 Cal.App.4th at 272, 129 Cal.Rptr.3d 467 (rejecting plaintiff's theory that the sale was invalid because HSBC lacked authority to initiate the sale)); *Siliga v. Mortg. Elec. Registration Sys., Inc.*, __ Cal.Rptr.3d __, 2013 WL 4522474, at *5 (Aug. 27, 2013).

The cases finding that plaintiffs stated a cause of action for wrongful foreclosure on the basis that the incorrect entity initiated foreclosure rarely discuss prejudice. In *Tamburri*, one such case, the court held that, to the extent prejudice is required, "the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default." *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472, at *14 (N.D. Cal. Dec. 15, 2011); *see also Barrionuevo*, 885 F.Supp.2d at 971-74 (no discussion of prejudice in wrongful foreclosure analysis, but finding that impairment to the vendibility of the plaintiffs home coupled with legal costs were sufficient pecuniary harms to support a slander of title cause of action). Other recent decisions in this district have distinguished *Tamburri* and similar decisions relying on the threat of foreclosure from the situation in this case, where a foreclosure has already occurred. *See Albano v. Wells Fargo Bank, N.A.*, 2012 WL 5389922, at *4 (N.D. Cal Nov. 5, 2012); *Natividad*, 2013 WL 2299601, at *16. Those cases held, in line with *Herrera* and *Fontenot*, that the prejudice element is only met if the plaintiff demonstrates that the foreclosure would have been averted but for the alleged deficiencies in the foreclosure process. *Natividad*, 2013 WL 2299601, at *16 (citing *Albano*, 2012 WL 5389922, at *6. The Court finds this reasoning persuasive.

37

United States District Court
Northern District of California

1

### ii.     Tender Rule

2          As a general rule under California law, "an action to set aside a trustee's sale for irregularities

3   in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for

4   which the property was security."  *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578, 205

5   Cal.Rptr. 15 (1984); *see also Karlsen v. Am. Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr.

6   851 (1971) ("[a] valid and viable tender of payment of the indebtedness owing is essential to an action

7   to cancel a voidable sale under a deed of trust").  "[T]he rationale behind the rule is that if plaintiffs

8   could not have redeemed the property had the sale procedures been proper, any irregularities in the

9   sale did not result in damages to the plaintiffs."  *Barrionuevo*, 885 F.Supp.2d at 969 (quotations

10  omitted); *Lester v. J.P. Morgan Chase Bank*, __ F.Supp.2d __, 2013 WL 633333, at *8 (N.D. Cal.

11  Feb. 20, 2013) (quotations omitted).

12         The tender rule is not absolute.  Courts have discretion to excuse the tender requirement where

13  its application would be inequitable.  *See Pantoja v. Countrywide Home Loans*, 640 F.Supp.2d 1177,

14  1184 (N.D. Cal. 2009); *Onofrio v. Rice*, 55 Cal.App.4th 413, 424, 64 Cal.Rptr.2d 74 (1997).  In

15  addition, a growing number of federal courts sitting in California have held that the tender rule only

16  applies in cases seeking to set aside a completed sale, rather than to an action seeking to prevent a sale

17  in the first place.  *See Barrionuevo*, 885 F.Supp.2d at 970-971 (collecting cases); *Lester*, 2013 WL

18  633333 at *8 (collecting cases); *see also Chan Tang v. Bank of America, N.A.*,  2012 WL 960373, at

19  *4-*7 (C.D. Cal. Mar. 19, 2012) (discussing split of authority as to whether tender rule applies to

20  pending foreclosure sales and concluding that tender should not be required because there is no basis

21  for its application pre-sale as equity may require postponement of a sale to ensure compliance with

22  the statutory framework even if it will not require unwinding of a sale in the absence of an ability to

23  tender; distinguishing *Alicea*, 2009 WL 2136969 because on the facts of that case the foreclosure sale

24  had already occurred).

25         Several courts have refused to apply the tender requirement where plaintiff alleges that the

26  defendant lacks authority to foreclose on the property and, thus, that any foreclosure sale would be

27  void rather than merely voidable.  *Lester v. J.P. Morgan Chase Bank*, __ F.Supp.2d __, 2013 WL

28  633333, at *10 (N.D. Cal. Feb. 20, 2013) (dismissing claims challenging bank's authority foreclose

United States District Court
Northern District of California

without prejudice on other grounds); *Barrionuevo*, 885 F.Supp.2d at 970-71 (plaintiff stated a claim for wrongful foreclosure); *Albano*, 2012 WL 5389922, at *7-*8 (dismissing claims challenging bank's authority to foreclose on other grounds); *Natividad v. Wells Fargo bank, N.A.*, 2013 WL 2299601, at *16-*17 (N.D. Cal. May 24, 2013) (dismissing claims challenging banks authority to foreclose on other grounds); *Dimock v. Emerald Props. LLC*, 81 Cal.App.4th 868, 878, 97 Cal.Rptr.2d 255 (2000) (where an incorrect trustee had foreclosed on a property and conveyed it to a third party, and the conveyed deed was not merely voidable but void, tender was not required). The rationale for this distinction is the equitable policies supporting the tender rule. That is, "tender is required 'based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose.'" *Barrionuevo*, 885 F.Supp.2d at 971 (quoting *Dimock*, 81 Cal.App.4th at 876, 97 Cal.Rptr.2d 255). However, where a sale is void at the outset, rather than voidable, the transaction is a "nullity with no force or effect as opposed to one which may be set aside" in equity. *Id.* (quoting *Dimock*, 81 Cal.App.4th at 876, 97 Cal.Rptr.2d 255).

### b.     Application to Facts

As alleged, six documents were recorded prior to foreclosure: (1) the First Substitution was recorded on March 13, 2007 replacing Fidelity National with Wells Fargo as trustee; (2) on July 20, 2009 First American recoded a NOD purporting to act as attorney-in-fact for Wells Fargo, the beneficiary; (3) on August 19, 2009 First American, again acting as attorney-in-fact for Wells Fargo as the beneficiary, executed the Second Substitution making itself trustee; (4) on September 3, 2009, First American, again acting as attorney-in-fact for Wells Fargo as the beneficiary, executed the Assignment assigning its interest in the DOT to Bank of America; (5) on October 21, 2009, First American recorded the First NOTS; and (6) on August 16, 2012 First American recorded the Second NOTS. FAC, ¶¶ 22, 26, 28-31, 36; *see also* Wells Fargo RJN, Exs. B-F. Plaintiffs challenge the validity of each document, and allege that none of the Defendants have any interest in the DOT. *Id.* at ¶ 45.

Even assuming Plaintiffs were able to challenge the validity of these documents, Plaintiffs have failed to allege prejudice. Plaintiffs do not dispute that Shahani defaulted on his loan. Plaintiffs

1    have pled no facts indicating that the foreclosure sale, which has already occurred, would have been

2    averted but for the alleged deficiencies in the foreclosure process.  *See Herrera*, 205 Cal.App.4th at

3    1507-08, 141 Cal.Rptr.3d 326.  To the extent the wrongful foreclosure cause of action relies on

4    irregularities in the foreclosure process, it is dismissed with leave to amend.  The Court does not reach

5    the tender requirement.

6              **2.       HBOR**

7                   **a.        Private Right of Action**

8         The HBOR creates a private right of action, in relevant part, as follows:

9         (a)      (1)  If a trustee's deed upon sale has not been recorded, a borrower may bring an action

10                 for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7,
                  2924.9, 2923.10, 2924.11, or 2924.17.

11

12                 (2)  Any injunction shall remain in place and any trustee's sale shall be enjoined until

13                 the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or
                  authorized agent has corrected and remedied the violation or violations giving rise to
                  the action for injunctive relief.

14

15        (b)  After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee,

16        trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic
          damages pursuant to Section 3281, resulting from a material violation of Section 2923.55,
          2923.6, 2923.7, 2924.9, 2923.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee,

17        trustee, beneficiary, or authorized agent where the violation was not corrected and remedied
          prior to the recordation of the trustee's deed upon sale.  If the court finds that the material

18        violation was intentional or reckless, or resulted from willful misconduct by a mortgage
          servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the

19        borrower the greater of treble actual damages or statutory damages of fifty thousand dollars
          ($50,000).

20

21   Cal. Civ. Code § 2924.12(a)-(b).

22        In the present case, the Trustee's Deed was recorded after the initial complaint was filed.  No

23   case has yet addressed whether, in such circumstances, a plaintiff may bring a cause of action for

24   injunctive relief or damages.  However, the language of the statute is clear in its application to the

25   present case.  California Civil Code § 2924.12(a)(1) allows a "borrower to bring an action for

26   injunctive relief to enjoin a material violation of" the enumerated sections when the trustee's deed has

27   not been recorded.  Here, Plaintiffs do not seek to enjoin an ongoing violation of any of the

28   enumerated sections, but seek to unwind and regain title to the Property.  Accordingly, they are not

1   entitled to injunctive relief. However, because the Trustee's Deed has been recorded, Plaintiffs are

2   entitled to relief under California Civil Code § 2924.12(b), to the extent they can demonstrate that it is

3   appropriate. To that end, they must plead (1) a material violation of one of the enumerated code

4   sections; (2) by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent; (3) that

5   causes actual economic damages.

6                           **b.      Dual Tracking and Notice of Denial**

7             The recently enacted HBOR attempts to eliminate the practice, commonly known as dual

8   tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a

9   borrower's loan modification application. *See Jolley v. Chase Home Finance, LLC,* 213 Cal.App.4th

10  872, 904, 153 Cal.Rptr.3d 546 (2013). To that end, California Civil Code § 2924.18[27] provides, in

11  relevant part, as follows:

12          (a)(1) If a borrower submits a complete application for a first lien loan modification offered
13          by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee,
            beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a
14          trustee's sale while the complete first lien loan modification is pending, and until the borrower
            has been provided with a written determination by the mortgage servicer regarding the
15          borrower's eligibility for the requested loan modification.

16  Cal. Civ. Code § 2924.18. California Civil Code § 2924.6(c)-(h) provides a more stringent

17  requirement:

18          (c) If a borrower submits a complete application for a first lien loan modification offered by,
19          or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee,
            beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a
20          trustee's sale while the complete first lien loan modification is pending. A mortgage servicer,
            mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or
21          notice of sale or conduct a trustee's sale until any of the following occurs:

22
23              (1) The mortgage servicer makes a written determination that the borrower is not
                eligible for a first lien loan modification, and any appeal period pursuant to subdivision
24              (d) has expired.

---

25  [27] Plaintiffs assert violations of California Civil Code § 2923(c)-(d), (f). Subdivisions (c) to (h), inclusive, do not apply to
    entities described in subdivision (b) of § 2924.18. Cal. Civ. Code § 2923(i). § 2924.18(b) states that that section applies
26  "only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 … or
    Division 20 … of the Financial Code, or a person licensed pursuant to Part 1 … or Division 4 of the Business and
27  Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator,
    foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in
28  California." The present record is insufficient to determine which section applies in this case. Accordingly, the Court
    discusses all potentially relevant sections.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

…

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modification for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

United States District Court
Northern District of California

United States District Court
Northern District of California

(h) For the purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

Cal. Civ. Code § 2923.6(c)-(h).

Here, Plaintiffs allege that Shahani applied for a loan modification in August 2011, following his bankruptcy but was denied in July 2012 pursuant to investor guidelines. FAC, ¶ 140 (cc), (ff)-(gg). Shahani was not provided instruction regarding the content of the investor guidelines, and was not notified of any right to appeal. *Id.* at ¶ 140 (ff)-(gg). He subsequently initiated further modification negotiations, which were ongoing when the Trustee's Sale was held and the Trustee's Deed was recorded in March 2013. *Id.* at ¶¶ 140(mm), 141. On these allegations, Shahani was evaluated for a loan modification prior to January 1, 2013. Plaintiffs have not alleged that there was any change in Shahani's financial circumstances after July 2012, or that Shahani notified Defendants of any such change. Accordingly, the dual tracking and notice provisions contained in § 2923.6 do not apply in this case. Nor have Plaintiffs made any attempt to address Bank of America and Wells Fargo's argument that § 2923.6(g) bars their § 2924.18 claim. Plaintiffs have also not alleged damages as a result of any claimed violations. The wrongful foreclosure claim on these theories is dismissed with leave to amend.

### c.    Single Point of Contact

In connection with the California legislature's attempt to eliminate the practice of dual tracking, the legislature enacted a single point of contact provision to prevent borrowers from being given the run around. *See Jolley*, 213 Cal.App.4th at 904-05, 153 Cal.Rptr.3d 546.[28] To that end, California Civil Code § 2923.7 provides, in relevant part:

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

---

[28] The single point of contact requirement does not apply "to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 … or Division 20 … of the Financial Code, or a person licensed pursuant to Part 1 … or Division 4 of the Business and Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California." Cal. Civ. Code § 2923.7(g)(1).

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2)  Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4)  Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d)  The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For the purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive.  The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

Cal. Civ. Code § 2923.7(a)-(e).

Here, Plaintiffs allege that Mak identified herself as Shahani's single point of contact in August 2012, but thereafter, in February 2013, Shahani was in correspondence with Peck concerning his loan modification.  FAC, ¶ 140(nn), (ww).  Defendants do not mention this theory in their Motions.  Even so, the Court finds that it can only be read to plead a claim against Wells Fargo, the loan servicer because the statute imposes duties only on the loan servicer.  However, Plaintiffs have not pled any damages resulting from this violation.  Accordingly, the Wells Fargo Motion to dismiss the wrongful foreclosure claim on this theory is granted with leave to amend.

### d.      Notice of Receipt

California Civil Code § 2924.10 provides, in relevant part:

(a) When a borrower submits a complete first lien modification application or any document in connection with a first lien loan modification application, the mortgage servicer shall provide written acknowledgement of the receipt of the documentation within five business days of receipt.  In its initial acknowledgement of the loan modification application, the mortgage servicer shall include [four enumerated pieces of information].

…

(b) for the purposes of this section, a borrower's first lien loan modification application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within reasonable timeframes specified by the mortgage servicer.

Cal. Civ. Code § 2924.10(a)-(b).

The HBOR took effect on January 1, 2013.  *See Sabherwal v. Bank of New York Mellon*, 2013 WL 4833940, at *10 (S.D. Cal. Sept. 10, 2013).  "California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application."  *Id*. (quoting *Myers v. Philip Morris Cos., Inc.*, 28 Cal.4th 828, 841, 123 Cal.Rptr.2d 40, 50 P.3d 751 (2002)).  The HBOR does not state that it has retroactive effect.  *Id*.  Plaintiffs have not identified any extrinsic sources indicating that the California legislature intended a retroactive application.  Accordingly, the Court addresses only documents submitted after January 1, 2013.

Plaintiffs allege that Shahani submitted documents to Wells Fargo in connection with his first lien modification application on February 25, 2013 and received a response on February 28, 2013 requesting additional and/or duplicate items.  FAC, ¶ 140(xx)-(yy).  Shahani submitted additional documentation on March 1, 2013 and March 2, 2013, receiving a response on March 7, 2013 requesting additional and/or duplicate documentation.  *Id*. at ¶ 140(yy)-(zz).  However, by that time the foreclosure sale had taken place.  Accordingly, there was no violation of the statute.  Plaintiff also does not plead damages from this violation.  All Defendants' Motions are granted as to this theory of wrongful disclosure with prejudice.

### e.    Recordation of the NOD

The HBOR requires:

United States District Court
Northern District of California

45

(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to 2923.55, a notice of default, notice of sale, assignment of deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and information.

Cal. Civ. Code § 2924.17.  In addition, the notice requirements for filing a NOD are set forth in California Civil Code § 2923.55.  As stated above, HBOR creates a private right of action to enforce both of these provisions.

California Civil Code § 2923.5(b) provides that "[a] notice of default recorded pursuant to Section 2923 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5."

Prior to the passage of the HBOR, courts held that "the remedy for a § 2923.5 violation is limited to postponement of the foreclosure sale to allow compliance.  Section 2923.5 does not create a right to a loan modification, nor does it have any effect on a completed foreclosure sale."  *Roberts v. J.P. Morgan Chase Bank*, 2011 WL 864949, at *5 (N.D. Cal. Mar. 11, 2011) (internal citations omitted) (citing *Mabry v. Superior Court*, 185 Cal.App.4th 208, 223, 231, 235 (2010)).

Plaintiffs allege that the NOD and both NOTS's were executed without compliance with the notice requirements.  However, all of these documents were executed prior to January 1, 2013.  Accordingly, the wrongful foreclosure cause of action on this theory is dismissed without leave to amend.

### f.     Excessive Servicing and Late Fees

Plaintiffs allege that Defendants violated the provisions of the HBOR prohibiting mortgage servicers from charging application fees for first lien loan modification or other foreclosure

United States District Court
Northern District of California

prevention alternatives and from charging late fees under the loan for the period during which the modification is under consideration.  FAC, ¶ 100.  Even so, Plaintiffs have not pled that Shahani applied for a loan modification, and thus could have been subject to an application fee, after the HBOR went into effect.  As to late fees, the HBOR provides that the "mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised."  Cal. Civ. Code § 2924.11(f).  On the facts alleged, this claim may only be directed at Wells Fargo as servicer.  Because Wells Fargo failed to address this theory, its Motion is denied as to the wrongful foreclosure action based on late fees charged while a complete loan modification application was pending.

### 3.    California Civil Code § 2923.6(a)-(b)

California Civil Code § 2923.6(a)-(b) provides:

(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a servicer acts in the best interests of all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1)  The loan is in payment default, or payment default is reasonably foreseeable.

(2)  Anticipated recovery under the loan modification workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b)  It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

Cal. Civ. Code § 2923.6(a)-(b).

Numerous district courts, including this Court, have concluded that this section does not require a permanent loan modification.  *See Austero v. Aurora Loan Servs., Inc.*, 2011 WL 3359729, at *10 (N.D. Cal. Aug. 3, 2011); *see also Roberts v. JP Morgan Chase Bank, N.A.*, 2011 WL 864949,

1    at *4 (N.D. Cal. Mar. 11, 2011) (collecting cases) (noting that the statute "merely expresses the hope

2    that lenders will [execute a loan modification] when a modification may be beneficial to all parties").

3    These provisions were not amended by the HBOR.  The Court sees no reason to revisit its prior

4    ruling. The wrongful foreclosure claim is dismissed without leave to amend to the extent it relies on

5    this theory.

### 4.    California Civil Code § 2923.52

7        Plaintiffs allege that Defendants violated California Civil Code § 2923.52 by recording the

8    First NOTS too soon after the NOD was recorded.  FAC, ¶ 73.  This provision has since been

9    repealed.  Former § 2923.52 did not create a private right of action.  *Vuki v. Superior Court*, 189

10   Cal.App.4th 791, 794, 177 Cal.Rptr.3d 86 (2010).  This cause of action is dismissed with prejudice.

### 5.    Breach of the PSA

12       "Ninth Circuit district courts have come to different conclusions when analyzing plaintiff's

13   right to challenge the securitization process as Plaintiff[s] [have] here."  *Johnson v. HSBC Bank USA,*

14   *N.A.*, 2012 WL 928433, at *2 (S.D. Cal. March 19, 2012) (citing *Schafer v. CitiMortgage, Inc.*, 2011

15   WL 2437267 (C.D. Cal. June 15, 2011) (denying defendants' motion to dismiss declaratory relief

16   claim, which was based on alleged improper transfer due to alleged fraud in signing of documents);

17   *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016, at *7 (E.D. Cal. Nov. 17, 2011) (allowing §

18   17200 claim when plaintiffs alleged that assignment was executed after the closing date of securities

19   pool, "giving rise to a plausible inference that at least some part of the recorded assignment was

20   fabricated"); *Armeni v. America's Wholesale Lender*, 2012 WL 603242, at *2 (C.D. Cal. Feb. 24,

21   2012); *Junger v. Bank of America, N.A.*, 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012)).  The

22   majority position is that plaintiffs lack standing to challenge noncompliance with a PSA in

23   securitization unless they are parties to the PSA or third party beneficiaries of the PSA.  *See Aniel v.*

24   *GMAC Mortg., LLC*, 2012 WL 5389706, at *4 (N.D. Cal. Nov. 2, 2012) (collecting cases);

25   *Almutarreb v. Bank of New York Trust Co., N.A.*, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012)

26   (disagreeing with *Vogan* and *Johnson* in finding that, because Plaintiffs were neither parties nor third

27   party beneficiaries to the PSA, they lacked standing to challenge whether the loan transfer occurred

28   outside the temporal bounds described in the PSA) (citing cases).  This Court follows the majority

1    approach.  Accordingly, to the allegation that the PSA "contains a duty to maximize net present value

2    to its investors and related parties" does not support the wrongful foreclosure cause of action.  *See*

3    FAC, ¶ 84.  To the extent the wrongful foreclosure claim relies on that theory, it is dismissed with

4    prejudice.

5          **F.    Civil Harassment Against All Defendants**

6          Pursuant to California Code of Civil Procedure § 527.6, Plaintiffs seek a temporary restraining

7    order and injunction enjoining Defendants from harassing, intimidating, threatening, abusing,

8    telephoning, contacting, or coming within a specified distance of Shahani.  FAC, ¶ 135.  § 527.6

9    defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful

10   course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person,

11   and that serves no legitimate purpose.  The course of conduct must be such that would cause a

12   reasonable person to suffer substantial emotional distress, and must actually cause substantial

13   emotional distress to the petitioner."  Cal. Code Civ. Proc. § 527.6.  Plaintiffs provide conclusory

14   allegations as to the essential elements of the statute.  *See* FAC, ¶ 134.  However, the only factual

15   allegations in the FAC pertain to loan modification negotiations and foreclosure.

16         First, Plaintiffs argue in their Opposition that Wells Fargo harassed Shahani by engaging in the

17   loan modification process without any interest in modifying the loan.  Opposition to Wells Fargo, 14-

18   15.  This theory is not pled in the FAC.  Moreover, Plaintiffs repeatedly allege that Shahani initiated

19   loan modification negotiations with Wells Fargo.  Plaintiffs have not identified conduct on the part of

20   Wells Fargo that lacked a legitimate purpose.  Second, Plaintiffs argue in their Opposition that First

21   American harassed Shahani by executing the foreclosure documents without authorization from Wells

22   Fargo.  Opposition to First American, 16.  This theory is directly contradicted by Plaintiffs' equally

23   general allegations that all Defendants were acting in concert as part of a conspiracy.  *See* FAC, ¶ 16.

24   Those allegations are not pled in the alternative.  Moreover, the allegations in the FAC, and the

25   documents subject to judicial notice, lend themselves to the conclusion that First American recorded

26   the relevant foreclosure documents as Wells Fargo's attorney-in-fact or, later, as the trustee.  Plaintiffs

27   have not adequately pled that First American's recordation of mandatory nonjudicial foreclosure

28   documents was not a legitimate purpose, nor, as discussed below, have they pled that the recordation

United States District Court
Northern District of California

49

of such documents was improper.  Defendants and Plaintiffs were involved in the non-judicial foreclosure process, bankruptcy, and the negotiation of possible resolution.  None of the conduct amounts to civil harassment.  Plaintiffs' civil harassment cause of action is dismissed without leave to amend.

### G.   Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants

#### 1.   Background Law

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract."  *Harm v. Frasher*, 181 Cal.App.2d 405, 417, 5 Cal.Rptr. 367 (1960).  A breach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing.  *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 55, 122 Cal.Rptr.2d 267 (2002) ("every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of either party to receive the fruits of the contract").  An implied covenant of good faith and fair dealing cannot contradict the express terms of a contract.  *Id.* (citing *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992)).  Further, because "the implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement."  *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 805, 71 Cal.Rptr.3d 885 (2008).

"Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specifity."  *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal.App.4th 1, 5, 58 Cal.Rptr.3d 54 (2007).  Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated.  *See Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142, 1154 (E.D. Cal. 2010).

#### 2.   Application to Facts

1    The breach of the implied covenant of good faith and fair dealing claim does not indicate what

2    contract was allegedly breached or what contractual provision was violated.  Rather, it catalogues the

3    alleged misrepresentations made by Defendants.  In addition, it contains the allegation that Plaintiff's

4    initial mortgage loan was unconscionable.  *See* FAC, ¶ 143.  The breach of the implied covenant of

5    good faith and fair dealing cause of action is dismissed with leave to amend.  If Plaintiffs amend this

6    cause of action, they should identify the contract at issue and the specific provision that was

7    frustrated.[29]

8    **H.    Civil Conspiracy Against All Defendants**

9    "Civil conspiracy is not an independent tort.  Instead, it is 'a legal doctrine that imposes

10   liability on persons who, although not actually committing a tort themselves, share with the

11   immediate tortfeasors a common plan or design in its perpetration.  [Citation.]  By participation in a

12   civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators

13   within the ambit of the conspiracy.  [Citation.]  In this way, a coconspirator incurs tort liability co-

14   equal with the immediate tortfeasors." *City of Industry v. Fillmore*, 198 Cal.App.4th 191, 211-12, 129

15   Cal.Rptr.3d 433 (2011) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503,

16   510-11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994)).  "The elements of a civil conspiracy are (1) the

17   formation of a group of two or more persons who agreed to a common plan or design to commit a

18   tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *Id.*

19   at 212.  Plaintiffs must plead a California civil conspiracy claim with particularity where the object of

20   the agreement is fraudulent.  *See Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 990-92

21   (9th Cir. 2006).  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together

22   but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and

23   inform each defendant separately of the allegations surrounding his alleged participation in the fraud."

24   *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

25   Here, Plaintiffs provide the general allegation that Defendants conspired together to enter a

26   fraudulent sales scheme, the purpose of which was to inflate the appraisal process and to enter into an

27

28   [29] To the extent Plaintiffs allege a breach of the original mortgage by conduct during the consummation of the contract, the
Court notes that it has rejected such a claim in the past.  *See Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *20
(N.D. Cal. Feb. 1, 2012).

1    unfair loan so as to extract "undisclosed compensation" from Plaintiffs.  FAC, ¶ 145.  Although the

2    challenged conduct is unclear, this cause of action appears to relate to the origination of the loan.

3    There are no factual allegations in the FAC indicating that any Defendant other than Wells Fargo was

4    involved in the origination of Plaintiffs' loan.  *Id*. at ¶ 20.  Plaintiffs also generally allege that every

5    wrongful act in the FAC was in furtherance of a conspiracy between the Defendants to financially

6    benefit themselves by engaging in fraudulent activities.  *Id*. at ¶ 16.  Plaintiffs provide no specific

7    factual allegation to support the conclusory allegation that Defendants entered into a conspiracy.  This

8    is insufficient.  As a "fraudulent" scheme, these allegations are also subject to the Federal Rules of

9    Civil Procedure, Rule 9(b).  Plaintiffs' allegations are conclusory.  *See Villegas v. Wells Fargo Bank,*

10   *N.A.*, 2012 WL 4097747, at *5 (N.D. Cal. Sept. 17, 2012).  This claim is dismissed with prejudice.

     **I.**      **Quiet Title Against Bank of America and Wells Fargo**

11

          **1.**     **Background Law**

12

13         An action to quiet title may be brought to establish title against adverse claims to real property

14   or any interest therein.  *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F.Supp.2d 1048, 1057

15   (citing Cal. Code Civ. Proc. § 760.020).  A quiet title action must be in a verified complaint that

16   includes:  (1) a description of the property in question; (2) the title of the plaintiff as to which a

17   determination is sought and the basis of the title; (3) the adverse claims to the title of the plaintiff

18   against which a determination is sought; (4) that date as of which the determination is sought; and (5)

19   a prayer for the determination of the title of the plaintiff against the adverse claims.  *Rosenfeld v.*

20   *JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 974-975 (N.D. Cal. 2010) (citing Cal. Code Civ.

21   Proc. § 761.020).  "'Claim' includes legal or equitable right, title, estate, lien, or interest in property or

22   cloud upon title."  Cal. Code Civ. Proc. § 760.010(a).

23         In most circumstances, a requirement of an action to quiet title is an allegation that plaintiffs

24   "are the rightful owners of the property, i.e. that they have satisfied their obligations under the deed of

25   trust."  *See Kelley*, 642 F.Supp.2d at 1057.  Thus, it is normally dispositive as to this claim that, under

26   California law, a borrower may not assert a quiet title action against a mortgagee without first paying

27   the outstanding debt on the property.  *See Rosenfeld*, 732 F.Supp.2d at 975; *see also Mehta v. Wells*

28   *Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1206 (S.D. Cal. 2010) (dismissing quiet title cause of action

52

United States District Court
Northern District of California

1  for failure to allege tender).  However, as discussed above, courts have refused to apply the tender

2  requirement where plaintiff plausibly alleges that the defendant lacks authority to foreclose on the

3  property and, thus, that any foreclosure sale would be void rather than merely voidable.  *See Lester*,

4  2013 WL 633333 at *10 (dismissing quiet title cause of action with leave to amend, as opposed to

5  with prejudice, after concluding that the tender rule did not apply to a quiet title action where the

6  underlying foreclosure was allegedly void, not voidable).

7       **2.       Application to Facts**

8       Plaintiffs seek to quiet title to the property as to the date of October 15, 2012 with a

9  declaration stating that neither Bank of America nor Wells Fargo, nor any other entity, had any

10  interest in the Property.  FAC, ¶¶ 150-51.  However, the allegations in the FAC demonstrate that the

11  Property was subject to a mortgage loan, creating a security interest in the property in favor of Wells

12  Fargo, which was subsequently, although allegedly improperly, assigned to Bank of America.  The

13  allegations further demonstrate that Plaintiffs never satisfied their obligation under the mortgage loan,

14  such that it remained outstanding on October 15, 2012.  Regardless of which Defendant owned the

15  beneficial interest under the DOT, Plaintiffs' quiet title cause of action is dismissed with leave to

16  amend.

17       **J.       Slander of Title Against All Defendants**

18       **1.       Background Law**

19       **a.       General Principles**

20       Slander of title "occurs when a person, without privilege to do so, publishes a false statement

21  that disparages title to property and causes pecuniary loss."  *Truck Ins. Exchange v. Bennett*, 53

22  Cal.App.4th 75, 85, 61 Cal.Rptr.2d 497 (1997).  The required elements of a claim for slander of title

23  are "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss."

24  *Sumner Hill Homeowners' Ass'n v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999, 1030, 141

25  Cal.Rptr.3d 109 (2012).

26       **b.       Privilege**

27       California Civil Code § 47(c)(1) states:  "[a] privileged publication or broadcast is one made:

28  (c) [i]n a communication, without malice, to a person interested therein, (1) by one who is also

1   interested." Nonjudicial foreclosure documents are subject to this privilege. *See* Cal. Civ. Code §

2   2924(d); *see also Ogilvie v. Select Portfolio Serv'g*, 2012 WL 3010986, at *3 (N.D. Cal. July 23,

3   2012) (collecting cases). Malice is defined as actual malice, meaning "that the publication was

4   motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked

5   reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard

6   of the plaintiff's rights." *Kachlon*, 168 Cal.App.4th at 336, 85 Cal.Rptr.3d 532. In addition, §

7   2924(b) creates the following privilege for trustees: "In performing acts required by this article, the

8   trustee shall incur no liability for any good faith error resulting from reliance on information provided

9   in good faith by the beneficiary regarding the nature and amount of the default . . . ."

10                          **2.      Application to Facts**

11          The slander of title claim is pled on the theory that none of the Defendants have any interest

12   under the DOT and that First American was not acting as an agent of Wells Fargo or as the trustee.

13   FAC, ¶¶ 155-59. There are no factual allegations to support the contention that First American was

14   not an agent of Wells Fargo. Moreover, the allegations in the FAC indicate that Wells Fargo was the

15   original beneficiary under the DOT, and that at some point it transferred its interest to Bank of

16   America but remained the loan servicer. The judicially noticeable documents reflect that First

17   American signed the NOD as attorney-in-fact for Wells Fargo, the beneficiary. *See* Wells Fargo RJN,

18   Ex. B. This is appropriate. *See Siliga*, __ Cal.Rptr.3d __, 2013 WL 4522474, at *5. Thereafter, First

19   American filed the First Substitution, making itself trustee, as attorney-in-fact for Wells Fargo. *See*

20   Wells Fargo RJN, Ex. C. This is appropriate. *See Natividad*, 2013 WL 2299601, at *14-*15.

21   Thereafter, First American filed the Assignment as Wells Fargo's attorney-in-fact, and filed both

22   notices of trustee's sale. There is nothing in the FAC to indicate First American lacked authority to

23   do so, or that no Defendant had the authority to foreclose. Moreover, the FAC demonstrates that

24   Plaintiffs were in default. This cause of action is dismissed with leave to amend. The Court does not

25   reach the tender rule.

26          **K.      Cancellation of Instruments Against All Defendants**

27          The Court may order cancellation of an invalid written instrument that is void or voidable.

28   *Compass Bank v. Petersen*, 886 F.Supp.2d 1186, 1194 (C.D. Cal. 2012) (citing Cal. Civ. Code § 3412

54

1    *et seq*.).  Courts have applied the tender rule to causes of action for cancellation of instruments

2    pertaining to the foreclosure process.  *See Kimball v. Flagstar Bank F.S.B.*, 881 F.Supp.2d 1209,

3    1225-1226 (S.D. Cal. 2012); *Adesokan v. U.S. Bank, N.A.*, 2012 WL 395969, at *4 (E.D. Cal. Feb. 7,

4    2012).  In *Adesokan*, the court reasoned that "[w]ithout a meaningful tender of the amount due,

5    cancellation of the instruments is an empty remedy which the Court cannot convey."  *Adesokan*, 2012

6    WL 395969, at *4.

7         This cause of action is pled on the theory that there was no factual or legal basis to execute any

8    of the foreclosure-related documents.  However, Plaintiffs also allege that they defaulted on their

9    mortgage obligation, owed, at different times, to Wells Fargo and Bank of America.  As with the

10    slander of title cause of action, this claim is dismissed with leave to amend.

11         **L.**     **Promissory Estoppel Against Bank of America and Wells Fargo**

12              **1.**     **Background Law**

13         A claim for promissory estoppel requires that the following elements be established:  "(1) a

14    promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made;

15    (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must

16    be injured by his reliance."  *Laks v. Coast Fed. Sav. & Loan Ass'n.*, 60 Cal.App.3d 885, 890, 131

17    Cal.Rptr. 836 (1976).  Under the doctrine of promissory estoppel, "a promisor is bound when he

18    should reasonably expect a substantial change of position, either by act or forbearance, in reliance on

19    his promise, if injustice can be avoided only by its enforcement."  *Id*.

20              **2.**     **Application to Facts**

21         Plaintiffs allege that Shahani relied on Wells Fargo and Bank of America's written and oral

22    representations that they would not foreclose on the subject property so long as Shahani completed an

23    application for a loan modification and made monthly payments in an amount certain to defendants by

24    (1) applying for a loan modification; (2) making payments; and (3) failing to explore foreclosure

25    alternatives such as selling his home or converting the premises into a "non-principal residence

26    investment property."  *Id*. at ¶¶ 169, 171.[30]  It is impossible to determine from the FAC when the

27

28    [30] The promissory estoppel claim also recycles the allegations contained in the breach of contract claim in the original
Complaint.  FAC, ¶¶ 172-75.  To the extent the promissory estoppel claim is pled on that theory, it is dismissed for the
reasons set forth in the June 24, 2013 Order.  *See* Order, 28.

1  asserted promises were made, which Defendant made them, or that they applied to Shahani's final

2  request for a loan modification.  Regardless, Plaintiffs have not alleged injury in reliance.  First,

3  Plaintiffs have not alleged that Shahani would not have sought a loan modification in the absence of

4  such a promise.  Second, this court has held, along with other courts, that where the injury alleged as a

5  result of the reliance is that the plaintiffs made payments they were already obligated to make under

6  the loan contract, no claim for promissory estoppel is stated.  *Lawther*, 2012 WL 298110, at *19

7  (collecting cases).  Third, Plaintiffs have not alleged that they would have been in a better position if

8  Shahani had "explored" the possibility of selling the property, or converting the property into a non-

9  residential investment property, as they have not alleged that either of these options would have been

10  feasible or that they would have put them in a better position than the one they wound up in.[31]  The

11  promissory estoppel claim is dismissed with leave to amend.

  **M. Negligence Against All Defendants**

   **1. Background Law**

14    To state a claim for negligence, a plaintiff must allege:  (1) the defendant's legal duty of care

15  to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff.  *Merrill*

16  *v. Navegar, Inc.*, 26 Cal.4th 465, 500, 110 Cal.Rptr.2d 370, 28 P.3d 116 (2001).  "The legal duty of

17  care may be of two general types:  (a) the duty of a person to use ordinary care in activities from

18  which harm might reasonably be anticipated, or (b) an affirmative duty where the person occupies a

19  particular relationship to others."  *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011,

20  1016-1017, 67 Cal.Rptr.2d 516 (1997).  "The existence of a legal duty to use reasonable care in a

21  particular factual situation is a question of law for the court to decide."  *Vazquez v. Residential Invs.,*

22  *Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004).  As a general rule, under California law,

23  "a financial institution owes no duty of care to a borrower when the institution's involvement in the

24  loan transaction does not exceed the scope of its conventional role as a mere lender of money."

25  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1095-1096, 283 Cal.Rptr. 53 (1991)

26  (citation omitted).

---

[31] For example, Plaintiffs have not alleged any basis to conclude that a sale price would have exceeded the debt outstanding under the mortgage.

United States District Court
Northern District of California

1    In California, the test for determining whether a financial institution exceeded its role as

2  money lender and thus owes a duty of care to a borrower-client involves "the balancing of various

3  factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff,

4  (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4)

5  the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral

6  blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.

7  In the absence of Ninth Circuit authority, several courts have concluded that, upon accepting an

8  application for a loan modification, a financial institution has exceeded its role as a money lender and

9  is subject to a standard of reasonable care in handling the application. *See Garcia*, 2010 WL

10  1881098, at *3 (Trumbull, J.); *Trant v. Wells Fargo Bank, N.A.*, 2012 WL 2871642, at *6-*7 (S.D.

11  Cal. July 12, 2012); *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451, at *7 (N.D. Cal.

12  Mar. 28, 2011) (Alsup, J.); *Avila v. Wells Fargo Bank*, 2012 WL 2953117, at *12-*14 (N.D. Cal. July

13  19, 2012) (Alsup, J.); *Chancellor v. One West Bank*, 2012 WL 1868750, at *13-*14 (N.D. Cal. May

14  22, 2012) (Beeler, J.); *but see Roussel v. Wells Fargo Bank*, 2013 WL 146370, at *6 (N.D. Cal. Jan.

15  14, 2013) (Breyer, J.) (Plaintiff did not state a claim for negligence where the underlying claim was

16  not that Defendant was sloppy in routing his application materials, but that Defendant would have

17  granted his application had it undertaken a legitimate review).   The rationale underlying these

18  decisions is:  (1) the loan modification review is intended to affect the plaintiff's ability to stay in her

19  home; (2) the result of mishandling the application is foreseeable, the plaintiff will be denied the

20  opportunity to keep her home regardless of whether the modification would actually be granted; (3)

21  the plaintiff will certainly be denied the opportunity to keep her home; (4) the defendant's failure to

22  process the application is closely connected to the plaintiff's lost opportunity; and (5) recent statutory

23  enactments demonstrate the public policy of preventing future harm to loan borrowers. *See Garcia*,

24  2010 WL 1881098, at *3 (citing Cal. Civ. Code § 2923.6 for California policy in favor of providing

25  loan modifications); *see also Trant*, 2012 WL 2871642 at *7 (relying only on the first four

26  considerations).

27    On the other hand, a number of decisions have decided, relying on *Nymark*, that a financial

28  institution does not owe a borrower a duty of care because the loan modification process is a

57

United States District Court
Northern District of California

traditional money lending activity. *See Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at \*8 (C.D. Cal. Jan. 11, 2012) (compiling cases); *DeLeon v. Wells Fargo Bank N.A.*, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011) (Koh, J.); *Ottolini v. Bank of America*, 2011 WL 3652501, at \*7 (N.D. Cal. Aug. 19, 2011) (Chen, J.) (finding that the six factors in *Nymark* weighed against finding a duty where (1) the extent to which the transaction was intended to affect Plaintiff was remote as the loan modification application, provided by Defendants and submitted by Plaintiff, was never acted on; (2) any harm to Plaintiff was not particularly foreseeable because there was no indication that loan modification would actually be approved; (3) the degree of certainty that Plaintiff suffered injury was likewise minimal for the same reason; (4) the closeness of the connection between Defendants' conduct and the injury suffered was remote absent a likelihood that the modification would have been approved; (5) there was no allegation that Defendants willfully mishandled Plaintiff's application or engaged in any other conduct to which moral blame would attach; and (6) as a matter of policy, imposing negligence liability may dissuade lenders from ever offering modification); *Coppes v. Wachovia Mortg. Corp.*, 2011 WL 1402878, at \*7 (E.D. Cal. Apr. 13, 2011) (Plaintiff's contradictory allegations that Defendant denied a loan modification application and that Defendant granted a loan modification that caused Plaintiff injury did not establish a duty because they did not plausibly suggest that Defendant actively participated in the financed enterprise beyond the domain of the usual money lender).

Other cases have held that, even where a lender offers a loan modification, "that is nothing more than a renegotiation of loan terms. This renegotiation is the same activity that occurred when the loan was originated; the only difference being that the loan is already in existence." *Morgan v. U.S. Bank Nat'l Ass'n*, 2013 WL 684932, at \*3 (N.D. Cal. Feb. 25, 2013) (quoting *Armstrong v. Chevy Chase Bank, FSB*, 2012 WL 4747165, at \*4 (N.D. Cal. Oct. 3, 2012)). Accordingly, these courts concluded that renegotiation "is one of the key functions of a money lender," and that loan modification is therefore "a traditional money lending activity." *Id.* (quoting *Armstrong*, 2012 WL 4747165, at \*4); *see also Hosseini v. Wells Fargo Bank, N.A.*, 2013 WL 4279632, at \*7 (N.D. Cal. Aug. 9, 2013) (collecting cases). The Court finds this line of cases persuasive.

### 2. Application to Facts

1   Plaintiffs allege negligence on two theories:  (1) Wells Fargo and Bank of America, as lenders

2   and/or servicers, breached their duty of reasonable care in maintaining their loan records and servicing

3   the loan by failing to provide information regarding the loan, such as the status of any foreclosure

4   actions, and by improperly foreclosing; and (2) First American breached its duty to exercise

5   reasonable care by improperly foreclosing and by failing to train its employees with respect to the

6   California nonjudicial foreclosure process.  FAC, ¶¶ 177-80.  In their Opposition briefs, Plaintiffs

7   argue only that (1) all Defendants owed Shahani a duty of care arising out of his requested

8   modification; and (2) First American had additional duties not to execute documents without

9   authority; not to record defective documents; to confirm Wells Fargo and Bank of America's

10  compliance with the HBOR, and not to conduct a trustee's sale if loan modification review was

11  ongoing.  Opposition to Wells Fargo, 21-22; Opposition to First American, 18-19.

12       First, First American did not owe Plaintiffs a duty of reasonable care under negligence as a

13  trustee under the DOT.  *See Morgan*, 2013 WL 684932, at *3 (dismissing negligence claim against a

14  trustee with prejudice).  Second, Wells Fargo and Bank of America did not owe Plaintiffs a duty of

15  reasonable care in servicing the loan or in acting as a lender within the scope of its conventional role.

16  *See id*.  Third, the theory that Defendants owed Plaintiffs a duty of care in the loan modification

17  process is not pled in the FAC.  In any event, Plaintiffs have not pled facts indicating that Wells Fargo

18  or Bank of America, the only Defendants evidently engaged in the modification process, exceeded

19  their typical role as a lender of money.  Accordingly, this cause of action is dismissed without leave to

20  amend.

21       **N.       Negligent Misrepresentation Against Bank of America and Wells Fargo**

22       To allege a cause of action for negligent misrepresentation, Plaintiff must plead:  (1) the

23  misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to

24  be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance

25  on the misrepresentation; and (5) resulting damage.  *Wells Fargo Bank, N.A. v. FSI, Financial*

26  *Solutions, Inc.*, 196 Cal.App.4th 1559, 1573, 127 Cal.Rptr.3d 589 (2011).  District courts in the Ninth

27  Circuit regularly apply the Rule 9(b) pleading standard to negligent misrepresentation claims

28  sounding in fraud.  *See U.S. Capital Partners, LLC v. AHMSA Intern., Inc.*, 2013 WL 594285, at *3-

United States District Court
Northern District of California

1    *4 (N.D. Cal. Feb. 14, 2013) (collecting cases and distinguishing the situation in which the negligent

2    misrepresentation claim sounds primarily in negligence).  In addition, Plaintiffs must allege the

3    existence of a duty of care.  *See Hosseini*, 2013 WL 4279632, at *7.

4         Plaintiffs allege that Wells Fargo and Bank of America made representations that they would

5    not foreclose on the property and that they would modify the loan, reduce the principal, and lower the

6    interest rate, if Shahani made monthly payments in a sum certain and provided confidential personal

7    documentation without having reasonable grounds to believe those representations were true and

8    without the intention of ever providing a loan modification.  FAC, ¶¶ 183-85.  These claims are

9    grounded in fraud, and are subject Rule 9(b).  However, the supporting factual allegations lack the

10   necessary specificity.  The FAC is inconsistent about the content of the statements made, and each

11   time it raises the statements supporting the negligent misrepresentation claim it fails to identify the

12   relevant speakers or the time at which the statements were made.  *See* FAC ¶¶ 51 (alleging that

13   Shahani made payments pursuant to a trial modification agreement); 57 (alleging that Wells Fargo's

14   representatives assured Shahani that they would not proceed with the foreclosure process while

15   reviewing the loan modification); 140 (outlining at least three separate denials of loan modification

16   requests); 142 (alleging that Defendants misrepresented that Shahani would be considered for a loan

17   modification); 183 (alleging that Bank of America, Wells Fargo, and Doe defendants falsely

18   represented that they would postpone the foreclosure sale and complete a loan modification that

19   would reduce the principal and interest rate on the mortgage); 190 (alleging that Bank of America,

20   Wells Fargo, and Doe defendants represented that to Shahani that the property would not be

21   foreclosed during the time that a loan modification was being reviewed and he made monthly

22   payments); 197 (alleging, in part, that Defendants misrepresented that they would consider Shahani

23   for modification in light of his financial difficulties; that Defendants would consider Shahani's profit

24   and loss statements, bank statements, and other documents; that Shahani did not qualify for a loan

25   modification although he did; that the value of the property was far greater than it was); 202 (alleging

26   that Defendants have represented since February 2009 that no foreclosure sale would take place

27   during the pendency of any loan modification process); 213 (alleging that Bank of America, Wells

28   Fargo, and Does represented that if Shahani submitted a modification application and made monthly

1    payments of $4,012.27, they would not foreclose on the property).  Plaintiffs do on several occasions

2    list persons with whom Shahani corresponded.  *Id*. at ¶¶ 19, 39, 140(j), (o), (q), (nn)-(pp), (rr)-(ss),

3    (ww).  None of these allegations are tied to the alleged negligent misrepresentations giving rise to this

4    cause of action.  These convoluted allegations, which are scattered throughout the FAC, do not give

5    notice who made each statement, when that statements were made over the course of loan

6    modification negotiations beginning in 2009 and terminating in 2013, or the precise content of any of

7    the statements.

8            Like the negligence claim, the negligent misrepresentation claim also fails because Plaintiffs

9    have not alleged—and cannot allege—a duty of care.  *See Hosseini*, 2013 WL 4279632, at *7.  This

10   cause of action is dismissed without leave to amend.

11           **O.       Fraud Against Bank of America and Wells Fargo**

12           "The elements of fraud are (a) a misrepresentation (false representation, concealment, or

13   nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable

14   reliance; and (e) resulting damage."  *Hinesley v. Oakshade Town Ctr.*, 135 Cal.App.4th 289, 294-295,

15   37 Cal.Rptr.3d 364 (2005) (citing *Lazar*, 12 Cal.4th at 638, 49 Cal.Rptr.2d 377, 909 P.2d 981).  To

16   plead a claim for fraud, Plaintiffs' allegations must be sufficiently detailed to meet the heightened

17   Rule 9(b) pleading standard.  *Parino v. BidRack, Inc.*, 838 F.Supp. 2d 900, 906 (N.D. Cal. 2011).

18           The fraud cause of action includes the theory underpinning the negligent misrepresentation

19   cause of action.  Once again, that theory is dismissed.  Plaintiffs are given leave to amend to satisfy

20   the Rule 9(b) pleading standard.

21           The fraud cause of action also includes several other theories.  Plaintiffs allege that Defendants

22   also misled Shahani into believing (1) that Wells Fargo and Home Mortgage were separate entities;

23   (2) that Defendants had an interest under the DOT or the Mortgage Note; and (3) that his initial

24   mortgage was within reasonable economic value.  FAC, ¶¶ 191-92, 194-96.  First, Plaintiffs have not

25   alleged any damage arising out of Shahani's belief that Wells Fargo and Home Mortgage were

26   separate entities.  Second, Plaintiffs have not pled that Defendants did not have any interest under the

27   DOT or Mortgage Note at the time they claimed such an interest.  Nor have Plaintiffs pled this theory

28   with specificity.  Third, Plaintiffs have not pled facts showing that the initial mortgage agreement was

1   not within reasonable economic value.  Nor have they pled that theory with specificity.  The fraud

2   claim is dismissed with leave to amend.

3       **P.**       **Violation of the Rosenthal Act Against Bank of America and Wells Fargo**

4           **1.**       **Background Law**

5       The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or

6   deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in

7   entering into and honoring such debts."  Cal Civ Code § 1788.1.  In addition to setting forth its own

8   standards governing debt-collection practices, the Rosenthal Act also provides that, with limited

9   exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply

10  with the provisions of" the FDCPA.  Cal. Civ. Code § 1788.17.  15 U.S.C. §§ 1692e-1692f, on which

11  Plaintiffs base their FDCPA claim, are incorporated into the Rosenthal act.

12      Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary

13  course of business, regularly, on behalf of himself or herself or others, engages in debt collection."

14  Cal. Civ. Code § 1788.2(c).  "Debt" is defined as "money, property or their equivalent which is due or

15  owing or alleged to be due or owing from a natural person to another person."  Cal. Civ. Code §

16  1788.2(d).

17      Numerous courts have held that the mere allegation that a defendant foreclosed on a deed of

18  trust does not implicate the Rosenthal Act.  *See Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at

19  *19 (N.D. Cal. Jan. 3, 2011) (collecting cases).  Where the claim arises out of debt collection

20  activities beyond the scope of the ordinary foreclosure process, however, a remedy may be available

21  under the Rosenthal Act.  *Id*. (finding that allegedly deceptive statements in an offer letter related to a

22  forbearance agreement were sufficient to state a claim under the Rosenthal Act).  Where the Rosenthal

23  Act claim relies on a violation of the FDCPA, the FDCPA's standard applies.  *See id.* at *20.

24          **2.**       **Application to Facts**

25      The Rosenthal Act claim is brought against Bank of America and Wells Fargo.  It is premised

26  on the same allegations as the FDCPA claim—that Wells Fargo induced Shahani to pay over $40,000

27  by leading him to believe he would be considered for a loan modification prior to refusing to accept

28  payments unless he could pay an additional $138,440.  *See* FAC, ¶ 213.  Bank of America and Wells

1    Fargo argue that Plaintiffs failed to allege any conduct beyond nonjudicially foreclosing without

2    granting a loan modification.  Wells Fargo Motion, 9.  As above, the Court rejects this argument.  The

3    Wells Fargo Motion is denied as to the Rosenthal Act claim.

4          **Q.      Violation of the UCL Against All Defendants**

5          The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or

6    fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  A claim may be brought under

7    the UCL "by a person who has suffered injury in fact and has lost money or property as a result of

8    unfair competition."  Cal. Bus. & Prof. Code § 17204.  Therefore, to establish standing under the UCL

9    a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e.,

10   *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair

11   business practice . . . that is the gravamen of the claim."  *Lawther v. OneWest Bank, FSB*, 2012 WL

12   298110, at \*23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp.*, 51 Cal.4th 310, 337, 120

13   Cal.Rptr.741, 246 P.3d 877).

14         To establish a violation of Section 17200, a plaintiff may establish a violation under any one

15   of three prongs.  To state a cause of action based on an "unlawful" business act or practice under the

16   UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.  *People v.*

17   *McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979).  A "fraudulent" business act or

18   practice is one in which members of the public are likely to be deceived.  *Weinstat v. Dentsply Intern.,*

19   *Inc.*, 180 Cal.App. 4th 1213, 1223 n.8, 103 Cal.Rptr.3d 614 (2010) (citations omitted).  "'Fraudulent,'

20   as used in the statute, does not refer to the common law tort of fraud but only requires a showing that

21   members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal.App.4th 608, 618, 55

22   Cal.Rptr.2d 818 (1996).  UCL claims premised on fraudulent conduct trigger the heightened pleading

23   standard of Rule 9(b) of the Federal Rules of Civil Procedure.  *Kearns v. Ford Motor Co.*, 567 F.3d

24   1120, 1125 (9th Cir.2009).

25         Finally, while there is disagreement among California courts regarding the definition of

26   "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo*

27   explains:

28            In consumer cases, such as this, the California Supreme Court has not established a
             definitive test to determine whether a business practice is unfair. *Drum v. San Fernando*

United States District Court
Northern District of California

*Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.

The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at 581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).

. . .

A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595, 101 Cal.Rptr.3d 697)).

. . .

The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006)).

2011 WL 302803, at *16 (E.D.Cal., Jan. 27, 2011).

Here, Plaintiffs assert the following deceptive business practices:  (1) instituting premature foreclosure proceedings to generate unwarranted fees; (2) executing and recording false and misleading documents; (3) executing and recording documents without legal authority to do so; (4) failing to disclose the principal for which documents were being executed; (5) failing to properly record powers of attorney; (6) violating the security first rule; (7) demanding and accepting payments for non-existent debts; (8) acting as beneficiaries and trustees without legal authority; (9) failing to give proper notice of trustee's sale and its postponement; (10) failing to comply with other foreclosure statutes; (11) failing to comply with HAMP guidelines; (12) misrepresenting the foreclosure status of

1 properties to borrowers; (13) violating anti-trust laws; (14) committing civil harassment; and (15)

2 dual-tracking mortgages. FAC, ¶ 218. As a result, Plaintiffs allege that they made mortgage

3 payments, paid fees for foreclosure related services. *Id*. at ¶ 222. Plaintiffs seek restitution and an

4 injunction preventing Defendants from continuing such practices. *Id*. at ¶ 223.

5 Plaintiffs have satisfied the unlawful prong as to Wells Fargo because they have pled causes of

6 action under the FDCPA, the Rosenthal Act, and under the HBOR against Wells Fargo. However,

7 aside from the allegation that Wells Fargo was acting as Bank of America's agent because it was the

8 servicer on a loan in which Bank of America held the beneficial interest, Plaintiffs have not alleged

9 conduct by Bank of America. For that reason, Plaintiffs have not pled a UCL cause of action against

10 Bank of America. Finally, Plaintiffs have not pled facts sufficient to support their allegations that

11 First American acted without authority. Although they also challenge the declaration filed by First

12 American in support of the NOD, they have not demonstrated any economic injury arising therefrom.

13 Accordingly, the UCL claim against First American and Bank of America is dismissed with leave to

14 amend.

15 **R.       Injunctive Relief**

16 "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must

17 exist before injunctive relief may be granted." *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,

18 863 F.Supp.2d 928, 964 (N.D. Cal 2012) (quoting *Camp v. Bd. of Supervisors*, 123 Cal.App.3d 334,

19 356, 176 Cal.Rptr. 620 (1981)). Accordingly, the asserted injunctive relief cause of action is

20 dismissed with prejudice.

21 **IV.      CONCLUSION**

22 For the foregoing reasons, the Wells Fargo Motion is granted in part and denied in part, the

23 First American Motion is granted, and the FAC is dismissed in part. Any amended complaint shall be

24 filed within twenty-one (21) days of this Order.

25 IT IS SO ORDERED.

26 Dated: September 25, 2013

27

28 JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

65