UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROCKRIDGE TRUST, et al.,

Plaintiffs,

v.

WELLS FARGO NA, et al.,

Defendants.

Case No.  13-cv-01457-JCS

**ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO BANK, N.A. AND BANK OF AMERICA, N.A.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; GRANTING FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. Nos. 78, 80

## I.     INTRODUCTION

Rockridge Trust and its trustee Ray K. Shahani ("Shahani") (collectively, "Plaintiffs") brought this action against Wells Fargo, N.A. ("Wells Fargo"), Bank of America, N.A. ("Bank of America"), First American Trustee Servicing Solutions LLC ("First American Trustee"), and First American Loanstar Trustee Services LLC ("First American Loanstar") (collectively, "Defendants"), alleging numerous causes of action arising out of a series of loan modification negotiations followed by foreclosure.[1] On June 24, 2013, the Court, addressing only those claims over which it had federal question jurisdiction, granted Defendants' motions to dismiss, and dismissed the original complaint without prejudice. Dkt. No. 38; *Rockridge Trust v. Wells Fargo, N.A.*, C-13-01457 JCS, 2013 WL 3200631 (N.D. Cal. June 24, 2013) ("*Rockridge I*").

Subsequently, Plaintiffs filed a First Amended Complaint ("FAC"). On September 25, 2013, the Court granted Defendants' motions to dismiss that complaint except for the following

---

[1] First American Trustee and First American Loanstar assert that they are one legal entity. Dkt. No. 17. The entity's current name is First American Trustee Servicing Solutions, LLC. It is wholly owned by First American Title Insurance Company ("First American Title"). *Id.* Where appropriate, the Court refers only to "First American" for simplicity.

1   claims: (1) violation of the Fair Debt Collection Practices Act ("FDCPA") as to Wells Fargo; (2)

2   wrongful foreclosure based in violations of the Homeowner's Bill of Rights ("HBOR") provisions

3   regarding excessive fees as to Wells Fargo; (3) violation of the Rosenthal Act as to Wells Fargo

4   and Bank of America; and (4) violation of California's Unfair Competition Law ("UCL") as to

5   Wells Fargo. Dkt. No. 68; *Rockridge Trust v. Wells Fargo, N.A.*, — F. Supp. 2d —, 2013 WL

6   5428722 (N.D. Cal. 2013) ("*Rockridge II*").

7       Plaintiffs have filed a Second Amended Complaint ("SAC"). Presently before the Court

8   are motions to dismiss the SAC by Wells Fargo and Bank of America ("Wells Fargo Motion") and

9   First American Trustee ("First American Motion") (collectively, "Motions"). For the reasons

10  stated below, the Court GRANTS IN PART AND DENIES IN PART the Wells Fargo Motion and

11  GRANTS the First American Motion.

12      The SAC is DISMISSED with prejudice as to all claims except: (1) violation of the

13  FDCPA as to Wells Fargo; (2) breach of oral contract based on a contract arising from Shahani's

14  February 28, 2013 conversation with Keri Peck ("Peck") resulting in a promise by Wells Fargo to

15  postpone the trustee's sale of the subject property scheduled for March 4, 2013; (3) breach of the

16  implied covenant of good faith and fair dealing based on contracts arising from (a) Shahani's

17  September 15, 2011 conversation with Jaycee Bell ("Bell") resulting in Wells Fargo's promises to

18  not foreclose and to accept regular monthly mortgage payments, and (b) Shahani's February 28,

19  2013 conversation with Peck resulting in a promise by Wells Fargo to postpone the trustee's sale;

20  (4) promissory estoppel based on Peck's February 28, 2013 promise to postpone the trustee's sale;

21  (5) fraud based on misrepresentations made by Peck on February 28, 2013; (6) violation of the

22  Rosenthal Act as to Wells Fargo and Bank of America; and (7) violation of the UCL as to Wells

23  Fargo and Bank of America.[2]

24  **II.    BACKGROUND**

25      The facts of this case are set out in detail in the Court's orders dismissing Plaintiffs'

26

27  ───────────────
    [2] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

28  The Court has federal question jurisdiction over the claims arising from federal statutes, and it exercises supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

United States District Court
Northern District of California

original complaint and FAC, and they are not repeated here. *See Rockridge I*, 2013 WL 3200631, at *1–*4; *Rockridge II*, 2013 WL 5428722, at *2–*4. The key facts are summarized below.[3]

On or about February 23, 2007, Shahani entered into a deed of trust ("DOT") with Wells Fargo as the beneficiary and Fidelity National Title Insurance Company ("Fidelity National") as the trustee, which was recorded with the San Francisco Assessor-Recorder on March 6, 2007. *See* SAC ¶ 20, Ex. 1. This DOT secured a loan of $755,250 in connection with the refinance of a single-family home in San Francisco, California ("Property"). *See id.* ¶ 20, Ex. 1. On April 12, 2007, Wells Fargo recorded a substitution of trustee ("SOT") replacing Fidelity National with itself as the trustee, dated March 13, 2007. *Id.* ¶ 22, Ex. 2. On August 21, 2009, Wells Fargo executed a second SOT, dated August 18, 2009, purportedly replacing Fidelity National with First American as the trustee. *Id.* ¶ 28, Ex. 4; Wells Fargo and Bank of America's Req. for Judicial Notice in Supp. of Mot. to Dismiss Compl. ("Wells Fargo RJN") Ex. C (Dkt. No. 9-1). On September 3, 2009, Wells Fargo recorded an assignment of deed of trust, dated August 25, 2009, assigning the DOT to Bank of America. *Id.* ¶ 30, Ex. 5; Wells Fargo RJN Ex. D.

After entering into the DOT, Shahani made payments pursuant to the loan agreement for close to two years until he became late on a monthly payment in or around February 2009. *Id.* ¶¶ 23, 25. That month, Shahani contacted Wells Fargo to request a loan modification, and he began the application process with Wells Fargo Home Mortgage, which represented itself as the servicer of the loan. *Id.* ¶¶ 24, 25, 140(a). What followed was a series of oral and written communications between Shahani and Defendants regarding potential modification of the loan that lasted until March 2013.[4]

In March and April 2009, Shahani submitted a great deal of financial information to Defendant. *Id.* ¶¶ 140(c), (e). In May 2009, Defendant informed Shahani that all requested

---

[3] The Court takes judicial notice of those documents for which judicial notice was sought in connection with the previous motions to dismiss. *See* Dkt. Nos. 9, 16, 19, 23, 25, 48, 51, 56–57, 61. In doing so, the Court adopts its reasoning and conclusions from the June 24, 2013 order. *See Rockridge I*, 2013 WL 3200631, at *16.

[4] In the allegations regarding these communications from February 2009 to March 2013, Plaintiffs rarely specify the entity or the individual Defendants to which they intend to refer. The Court notes that many of these allegations are most logically read as asserting claims against Wells Fargo. Further, Wells Fargo Home Mortgage is alleged to be part of Wells Fargo, a fact that is not contested by Defendants. Accordingly, the Court treats Wells Fargo and Wells Fargo Home Mortgage as the same entity.

United States District Court
Northern District of California

information had been received. *Id.* ¶ 140(f). In July 2009, Defendant informed Shahani that the request for a loan modification had been denied, but Shahani was invited to submit additional information for further consideration. *Id.* ¶ 140(g). That same month, First American, as attorney in fact for the beneficiary Wells Fargo, initiated foreclosure proceedings and issued a notice of default ("NOD"). *Id.* ¶¶ 106a, 140(k), (l), Ex. 3; Wells Fargo RJN Ex. B.

Then, at the end of July 2009, Defendant informed Shahani that it was responding to Shahani's request for assistance with mortgage payment challenges and, separately, that the foreclosure had been suspended. *Id.* ¶ 140(n). About a week later, one of Defendant's representatives requested additional information, presumably in connection with a new loan modification request. *Id.* ¶ 140(o). In August 2009, Wells Fargo denied the loan modification request based on its finding that Shahani's expenses exceeded his income. *Id.* ¶ 140(p). Throughout September 2009, Shahani corresponded with various representatives of Wells Fargo. *Id.* ¶ 140(q).

In October 2009, Defendants requested financial information from Shahani, apparently in connection with a new offer of potential loan modification. *Id.* ¶ 140(r). Shahani also received a letter containing initial payment instructions and requesting additional information; no time frame for the information request was specified. *Id.* ¶¶ 140(s), (u). Shahani sent the requested payment to Defendants, but it was not accepted. *Id.* ¶¶ 140(s), (t), (x). Subsequently, Shahani learned that the loan modification request had been denied for failure to timely provided complete information, and First American recorded a notice of trustee's sale ("NOTS") scheduling the trustee's sale for November 10, 2009. *Id.* ¶¶ 31, 106a, 140(u), (v), Ex. 6.

Later that month in October 2009, Defendants informed Shahani that the loan modification was approved and that he should resubmit financial documents. *Id.* ¶ 140(w). About a week later, Shahani submitted the requested documents. *Id.* ¶ 140(y). In November 2009, Defendant informed Shahani that that the loan modification was denied for failure to timely provide complete information. *Id.* ¶ 140(z).

Two days later, on November 11, 2009, Shahani filed a Chapter 11 bankruptcy petition, which automatically stayed the foreclosure proceedings. *Id.* ¶¶ 33, 140(aa). Wells Fargo, as

servicing agent for Bank of America, obtained relief from the stay around two years later, on August 13, 2011. *Id.* ¶¶ 34, 140(bb), Ex. 7. Wells Fargo immediately invited Shahani to enter into loan modification negotiations. *Id.* ¶¶ 35, 140(cc). Later that month, Defendant again denied the loan modification request, explaining that Shahani's expenses were greater than his income. *Id.* ¶ 140(p). Shahani was again invited to submit additional information so that the file could be re-reviewed. *Id.*

In September 2011, Shahani received a call from Bell who orally instructed him to begin making regular monthly mortgage payments in the amount of $4,012.29 for a minimum of three months in order to meet investor requirements to qualify for a loan modification. *See id.* ¶ 59b. Shahani made the payments for almost a year until August 2012, when Wells Fargo denied Shahani's loan modification request because of "investor guidelines" and refused to accept that month's payment. *Id.* ¶¶ 59b, 140(ee), (ff), (jj)–(ll). First American then recorded a second NOTS scheduling the trustee's sale for September 11, 2012. *Id.* ¶¶ 106a, 36, 140(ff), Ex. 8; Wells Fargo RJN Ex. F.

Soon thereafter in August 2012, Shahani appealed for assistance from the office of Congresswoman Jackie Speier, and he quickly received a letter from Wells Fargo indicating that Christine Mak ("Mak") would be his single point of contact for his loan modification request. *Id.* ¶¶ 140(mm)–(nn). Over the course of the next two weeks, Shahani submitted a large number of updated financial documents to Mak. *Id.* ¶ 140(oo). Mak informed Shahani that Wells Frago would respond to the request for a loan modification on September 11, 2012, the same day of the scheduled trustee's sale of the Property. *Id.* ¶ 140(pp), (tt). After repeated requests by Shahani over the course of the next several months, the trustee's sale was postponed until January 2013 and later postponed again to March 4, 2013. *Id.* ¶¶ 38, 140(rr)–(vv), Ex. 9.

In February 2013, without ever having received resolution on the application created by his submission of materials to Mak, Shahani was contacted by Peck who informed him in writing that "[w]e anticipate that we will be able to provide you with resolution by March 07, 2013." *Id.* ¶¶ 39, 140(ww), Ex. 10. Over the course of the month and into the next month, Wells Fargo requested additional or duplicate information on three separate occasions, and Shahani responded to each of

United States District Court
Northern District of California

the requests. *Id.* ¶¶ 40, 41, 42 140(xx), (yy), (zz), Exs. 11, 12, 13. Wells Fargo never responded or confirmed receipt of the final transmittal of documents, which occurred on March 12, 2013. *Id.* ¶ 140(aaa).

On March 4, 2013, the trustee's sale was held and the Property was sold to the beneficiary, Bank of America, for $972,843.08. *Id.* ¶¶ 44, 141, Ex. 14. On March 14, 2013, Shahani received a written communication from Susan Meiers ("Meiers") regarding his loan modification inquiry. *Id.* ¶ 106d. On March 19, 2013, First American recorded the trustee's deed upon sale, dated March 13, 2009. *Id.* ¶ 59b; Wells Fargo RJN Ex. G.

### III.    LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) states that "[a] pleading which sets forth a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

 In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

United States District Court
Northern District of California

6

The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 545 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

A court may deny leave to amend where amendment would be futile or if the claim is legally insufficient. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## IV.   ANALYSIS

The following claims remain for the Court's disposition: (1) violation of the FDCPA as to First American; (2) breach of oral contract as to Wells Fargo and Bank of America; (3) breach of the implied covenant of good faith and fair dealing as to all Defendants; (4) promissory estoppel as to Wells Fargo and Bank of America; (5) fraud as to Wells Fargo and Bank of America; (6) wrongful foreclosure as to all Defendants based in (a) irregularities in the foreclosure process, (b) violation of HBOR provisions regarding dual tracking, (c) violation of HBOR provisions regarding a single point of contact, and (d) as to Wells Fargo only, violation of HBOR provisions regarding excessive fees; (7) quiet title as to Wells Fargo and Bank of America;  (8) slander of title as to all Defendants; (9) cancellation of instruments as to all Defendants; and (10) violation of the UCL as to Bank of America and First American. Defendants have moved to dismiss the claims brought against them. For the reasons explained below, the Court GRANTS IN PART AND DENIES IN PART the Wells Fargo Motion, GRANTS the First American Motion, and DISMISSES the SAC with prejudice in part.

### A.     FDCPA Against First American

The Court gave Plaintiffs leave to amend their FDCPA claim against First American, noting that Plaintiffs "should set forth specific facts showing that First American violated the statute." *Rockridge II*, 2013 WL 5428722, at *15. Plaintiffs have supplemented their allegations

United States District Court
Northern District of California

7

1    with details regarding First American's actions after learning about the dispute between Plaintiffs

2    and the other Defendants. *See* SAC ¶ 240a. Plaintiffs still fail to state a FDCPA claim against First

3    American.

4            The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading

5    representation or means in connection with the collection of any debt" and that a "debt collector

6    may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.

7    §§ 1692e, 1692f. The FDCPA defines the term "debt collector" to include: (1) "any person who

8    uses any instrumentality of interstate commerce or the mails in any business the principal purpose

9    of which is the collection of any debts," and (2) any person "who regularly collects or attempts to

10   collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." *Id.*

11   § 1692a(6). In order to adequately plead this claim, a plaintiff must allege specific facts showing

12   that a defendant is a "debt collector" within the meaning of the statute. *Schlegel v. Wells Fargo*

13   *Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013).

14           Although the Ninth Circuit has not addressed whether foreclosure proceedings constitute

15   "debt collection" within the ambit of the FDCPA, the Court agrees with other courts in this Circuit

16   which have held that nonjudicial foreclosure is generally not "debt collection." *See Natividad v.*

17   *Wells Fargo Bank, N.A.*, 3:12-CV-03646 JSC, 2013 WL 2299601, at *5–*9 (N.D. Cal. May 24,

18   2013); *Ligon v. JP Morgan Chase Bank*, No. C 11-2504 MEJ, 2011 WL 2550836, at *3 (N.D. Cal.

19   June 27, 2011) (collecting cases). Thus, the Court adopts *Natividad*'s holding that "legally-

20   mandated actions required for mortgage foreclosure are not necessarily debt collection," and that a

21   plaintiff alleging a proper FDCPA claim must allege that the defendant "engaged in an[] action

22   beyond statutorily mandated actions for nonjudicial foreclosure." *See Natividad*, 2013 WL

23   2299601, at *9.

24           Here, Plaintiffs allege that First American, despite having knowledge of the dispute

25   between Plaintiffs and the other Defendants, "refused to provide Plaintiff with any supporting

26   documentation regarding the balance due on the loan or the amount need [sic] to redeem the

27   mortgage," and "elected to obey the instructions of the other Defendants and ignore the

28   instructions . . . from Plaintiff." SAC ¶ 240a. Plaintiffs also allege that First American "promised

Plaintiff they would inquire into the dispute, but they failed to do so." *Id.* Plaintiffs argue that these allegations show that First American "took steps to interfere with Plaintiffs' ability to prevent the foreclosure sale" when instead "they should have remained independent and neutral in regards to their role as a trustee." Pls.' Opp'n to First American Mot. at 2 ("Opp'n to First American").

First American argues that these allegations do not show a violation of the FDCPA because they do not show that it went "beyond the statutorily mandated communications required for foreclosure." *See* First American Mot. at 5. The Court agrees. Plaintiffs' allegations are insufficient to show that First American "engaged in any action beyond statutorily mandated actions for nonjudicial foreclosure," an allegation that is required to properly plead an FDCPA claim in the foreclosure context. *See Natividad*, 2013 WL 2299601, *9. The actions and inactions alleged by Plaintiff do not reveal any behavior that would justify the characterization of First American as engaging in "debt collection" under the FDCPA. Furthermore, to the extent that Plaintiffs are arguing that a trustee owes the debtor duties beyond those prescribed by statute, Plaintiffs are incorrect. *See Bergman v. Bank of Am.*, C-13-00741 JCS, 2013 WL 5863057, at *20 (N.D. Cal. Oct. 23, 2013) (quoting *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 334 (2008)) ("trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary").

Accordingly, the First American Motion is GRANTED as to the FDCPA claim against First American, and the claim is DISMISSED with prejudice.

**B.   Breach of Oral Contract Against Wells Fargo and Bank of America**

The Court gave Plaintiffs leave to amend their oral contract claims against Wells Fargo and Bank of America, noting that Plaintiffs should "plead facts showing the existence of a contract with sufficiently definite terms, their own performance, breach by Defendants, and damages." *Rockridge II*, 2013 WL 5428722, at *20. Plaintiffs have supplemented their allegations with details regarding Shahani's loan modification negotiations between February 2009 and March 2013. *See* SAC ¶¶ 59a–59c. Plaintiffs have amended their allegations to adequately plead a claim for breach of contract.

United States District Court
Northern District of California

The elements of a cause of action for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745, (2001). To allege the existence of a contract, a plaintiff must plead mutual assent, sufficiently definite contractual terms, and consideration. *Rockridge II*, 2013 WL 5428722, at *20 (citations omitted); Cal. Civ. Code § 1550.

Here, Plaintiffs allege breach of oral contracts arising from (1) a series of 2009 correspondence with Wells Fargo; (2) a September 15, 2011 conversation with Bell; and (3) a February 28, 2013 conversation with Peck. *See* SAC ¶¶ 59a–59c. For each contract, Plaintiffs allege a variety of damages, including foregoing the opportunities to seek out alternative courses of action that might have cured the default or avoided foreclosure, and fees assessed by Wells Fargo. *See id.* Wells Fargo and Bank of America argue that Plaintiffs' attempts to establish any contract fail because of a lack of sufficiently definite terms and consideration. *See* Wells Fargo Mot. at 2–3. The Court agrees in part. However, it finds that insofar as the claim is based in Shahani's conversation with Peck on February 28, 2013, Plaintiffs have adequately alleged that Wells Fargo and Bank of America breached an oral contract in which Shahani agreed to provide requested financial information in connection with a loan modification application, and Wells Fargo agreed to postpone the March 4, 2013 trustee's sale of the Property.[5]

### 1.    Contract arising during 2009

The first theory is that, sometime during 2009, Shahani entered into a contract with Wells Fargo in which he made a promise to submit requested financial information in connection with various loan modification applications, in exchange for Wells Fargo's promises to modify the loan and to not foreclose. *See* SAC ¶ 59a. Specifically, Plaintiffs allege that in the time period between February and November 2009, "Wells Fargo agents repeatedly and continuously agreed to modify Plaintiffs' loan if they submitted application and application [sic], set of loan forms after set of

---

[5] Although most of these claims are most logically read as pled against Wells Fargo, the Court declines to dismiss these claims against Bank of America because the Wells Fargo Motion makes no effort to differentiate their actions in the facts underlying these claims.

loan forms, updated financial information over and over again . . . ." *Id.* They allege that Defendants breached this agreement by refusing to modify the loan and foreclosing on the Property. *Id.*

While the SAC contains a long list of the parties' communications that includes some names and dates, nowhere does it allege which of these specific communications "[b]etween February and November of 2009" created an oral contract for Wells Fargo to modify the loan and to not foreclose, in exchange for Plaintiffs' submission of requested financial documents. *See* SAC ¶¶ 59a, 140. The generalized claim that "Wells Fargo agents repeatedly and continuously agreed to modify Plaintiffs' loan if they submitted application[s]" and other materials does not plausibly allege mutual assent or sufficiently definite terms. *See id.*

Thus, Plaintiffs fail to properly allege a claim for breach of oral contract based on communications with Defendants during 2009.

### 2.   Contract arising from conversation with Bell

The second theory is that, during a conversation with Bell on September 15, 2011, Shahani entered into a contract with Wells Fargo in which he made promises to remit regular monthly mortgage payments of $4,012.29 for three months and to submit requested financial information, in exchange for Wells Fargo's promises not to foreclose, to accept the monthly payments, and to modify the loan. *See* SAC ¶ 59b.

Specifically, Plaintiffs allege that on September 15, 2011, Bell "orally instructed Plaintiffs to begin making regular monthly mortgage payments for a minimum of 3 months because the investor requires 3 timely payments, and then Plaintiffs would be given a loan modification. Bell orally agreed that as long as Plaintiffs made the monthly payments, Wells Fargo would not foreclose on them and that Wells Fargo would modify the loan." *Id.* Plaintiffs allege that they also responded to all of Wells Fargo's information requests. *Id.* They further allege that Wells Fargo breached the agreement by refusing to accept the monthly payment in August 2012 and instead demanding that the past balance needed to be paid in full, refusing to modify the loan, and eventually foreclosing on the Property. *Id.*

Because Plaintiffs allege that Bell made three promises, this gives rise to three alleged

United States District Court
Northern District of California

contracts. Plaintiffs allege that Bell promised that Wells Fargo would (1) not foreclose, (2) accept the monthly payments, and (3) modify the loan. The Court examines each of these in turn.

### a.     Plaintiffs' consideration

As a preliminary matter, if Plaintiffs are to succeed in alleging that any contract arose from Shahani's conversation with Bell, then they must properly allege that Shahani gave adequate consideration. *See* Cal. Civ. Code § 1550. Plaintiffs allege that the consideration they gave consisted of the promises to (1) make regular monthly mortgage payments and (2) submit requested financial information in connection with a pending loan modification application. *See* SAC ¶ 59b. Plaintiffs have properly alleged consideration only as to their promise to submit requested financial information.

As to Plaintiffs' promise to make regular mortgage payments, Wells Fargo and Bank of America argue that the promise to make monthly payments of $4,012.29—the regular monthly payment under the original loan—is not consideration. *See* Wells Fargo Reply at 4; SAC ¶¶ 59a. The Court agrees. "It is well established that where the money paid under an agreement was already owed under a prior agreement, it is not consideration . . . ." *Reyes v. Wells Fargo Bank, N.A.*, C-10-01667 JCS, 2011 WL 30759, at *16 (N.D. Cal. Jan. 3, 2011) (citing *Newgent v. Wells Fargo Bank, N.A.*, 09CV1525 WQH, 2010 WL 761236, at *1 (S.D. Cal. Mar. 2, 2010)). Here, Shahani was already obligated to make monthly payments of $4,012.29 under the original loan, and Plaintiffs do not dispute that Shahani was in default on his account when he agreed to make the payments during the conversation with Bell on September 15, 2011. *See* SAC ¶¶ 59b, 59c.

As to Plaintiffs' promise to submit requested financial information, Wells Fargo and Bank of America argue that this cannot credibly be construed as consideration because, elsewhere in the SAC, Plaintiffs have alleged that they submitted financial information without expecting anything in return. *See* Wells Fargo Mot. at 3. The Court disagrees. Wells Fargo and Bank of America's argument is contradicted by authority. Courts have found that the time and effort expended in preparing financial information for a loan modification application can be sufficient consideration. *See Ansanelli v. JP Morgan Chase Bank, N.A.*, C 10-03892 WHA, 2011 WL 1134451, at *4 (N.D. Cal. Mar. 28, 2011)) (finding sufficient consideration where "plaintiffs expended time and

United States District Court
Northern District of California

United States District Court
Northern District of California

energy and made financial disclosures in furtherance of the [oral] agreement, which they would not have been required to do under the original [trial period plan] contract"); *Lyons v. Bank of Am., NA*, 11-01232 CW, 2011 WL 3607608, at *1 (N.D. Cal. Aug. 15, 2011) (following *Ansanelli*, finding sufficient allegation of consideration where plaintiffs alleged that they "supplied Defendants with all information requested in conjunction with their application for a loan modification"); *Reiydelle v. J.P. Morgan Chase Bank, N.A.*, 12-CV-06543-JCS, 2014 WL 312348, at *12 (N.D. Cal. Jan. 28, 2014) (quoting *Ansanelli*, 2011 WL 1134451, at *4; *House v. Lala*, 214 Cal. App. 2d 238, 243 (1963)) (in California, "[i]t is enough that some small additional performance is bargained for and given").

Here, Plaintiffs alleged that they "fully performed the terms of the oral agreement by . . . providing any and all personal and business financial information requested," and they "responded to all of Bell and other representatives of Wells Fargo's additional requests for updated and additional personal and business financial information." *See* SAC ¶ 59b. The time and energy that Plaintiffs spent in making these submissions was not already required by the original loan agreement and thus it constitutes "additional performance" that was "bargained for and given." *See Reiydelle*, 2014 WL 312348, at *12 (citations omitted).

### b.   Wells Fargo's promise to not foreclose

As to the first alleged contract arising from Shahani's conversation with Bell, Plaintiffs properly allege the existence of a contract, but they do not properly allege breach. The alleged contract here was for Shahani to submit requested documents in connection with a loan modification application and, in exchange, Wells Fargo would not foreclose. *See* SAC ¶ 59b. Plaintiffs fail to adequately plead breach because the loan modification request at issue was denied and this terminated the alleged contract, giving Wells Fargo the right to foreclose.

Plaintiffs adequately allege mutual consent and, as explained above, their own consideration. As to Wells Fargo's consideration, a promise to not foreclose while a borrower is submitting financial information in furtherance of a loan modification applicant can constitute consideration. *See Ottolini v. Bank of Am.*, C-11-0477 EMC, 2011 WL 8583133, at 5 (N.D. Cal. Dec. 6, 2011) (finding that correspondence in the course of loan modification process gave rise to

proper claim for breach of implied contract wherein "parties intended to suspend foreclosure at least until Defendants reviewed Plaintiff's application"). Such an exchange of promises also gives rise to sufficiently definite terms. *See id.*; *Edwards v. Fed. Home Loan Mortgage Corp.*, 12-CV-04868-JST, 2013 WL 2355445, at *3 (N.D. Cal. May 29, 2013) (in refusing to dismiss action for breach of oral contract, holding that "[a] promise not to foreclose while a loan modification is pending satisfies the requirement of a clear promise") (citing *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1045 (Cal. Ct. App. 2010)).

Plaintiffs' allegations are somewhat unclear as to whether the contract not to foreclose was limited to any particular modification request. The Court construes the alleged contract as applying to the particular modification request involved at the time of the conversation, rather than an open-ended promise not to foreclose so long as Shahani submitted financial information. In the absence of such a limitation, the allegation is implausible, and the term of the contract is indefinite.

Plaintiffs cannot allege breach because they finished submitting documents in connection with the loan modification application at issue, and that application was denied. *See* SAC ¶ 59b. That is, under the alleged contract, the parties agreed that Plaintiffs were obligated to submit financial documents requested by Wells Fargo for the purpose of completing the particular loan modification application that was in process at that time. As alleged, the contract would terminate as soon as a decision on the application was rendered. This is exactly what happened. After nearly ten months of requesting and receiving information related to Plaintiffs' application, Wells Fargo apparently determined that the application was complete, and denied it on July 18, 2012. *See* SAC ¶¶ 59b (alleging that Plaintiffs received letters dated July 18, 19, 20, and 21, 2012, "all denying the loan modification")[6], 140(ff) (alleging that Plaintiffs received letter dated July 28, 2012 denying loan modification).

Thus, to the extent that any agreement existed, it was that Wells Fargo would refrain from

---

[6] The SAC lists these dates as occurring in 2011 rather than 2012, but given the context of the paragraph, which appears to only concern the time period between September 2011 and August 2012, the Court construes this as a typographical error. *See* SAC ¶ 59b.

foreclosure while Plaintiffs were submitting documents in connection with that particular loan modification request. Once that particular loan modification request was denied, any alleged agreement terminated, and Wells Fargo was permitted to foreclose. Wells Fargo accepted Shahani's submissions until it denied the application on or around July 18, 2012. *See* SAC ¶ 59b. Subsequently, Wells Fargo restarted foreclosure proceedings and caused the second NOTS to be recorded on August 16, 2012. *See* Wells Fargo RJN, Ex. F. Plaintiffs have not adequately pled that Wells Fargo acted in breach of the agreement as alleged.

Plaintiffs fail to properly allege a claim for breach of oral contract based on Shahani's conversation with Bell insofar as it is premised on a promise to not foreclose.

### c.     Wells Fargo's promise to accept monthly payments

As to the second alleged contract arising from Shahani's conversation with Bell, Plaintiffs properly allege the existence of a contract, but they do not properly allege breach. The alleged contract here was for Plaintiffs to submit requested documents and, in exchange, Wells Fargo would accept monthly payments. *See* SAC ¶ 59b. Like the alleged contract for Wells Fargo to not foreclose, Plaintiffs fail to adequately plead breach because the loan modification request at issue was denied and this terminated the alleged contract, giving Wells Fargo the right to stop accepting payments.

Again, the Court construes the contract as being limited to the loan modification request at issue at the time of the conversation. Plaintiffs cannot allege breach because as of or around July 18, 2012, the loan modification application was denied, and the alleged contract was terminated. Based on Plaintiffs' allegations, Wells Fargo only began refusing Plaintiffs' payments after the loan modification was denied. *Id.* ¶ 59b (alleging that Wells Fargo accepted payments for around ten months until it denied a payment dated August 6, 2012). Even assuming that Wells Fargo had entered into a contract to accept payments while Plaintiffs were submitting requested financial information, Wells Fargo was excused of this obligation as soon as that loan modification application was denied.

Plaintiffs fail to properly allege a claim for breach of oral contract based on Shahani's conversation with Bell insofar as it is premised on a promise to accept regular monthly payments.

United States District Court
Northern District of California

### d.      *Wells Fargo's promise to modify loan*

As to the third alleged contract arising from Shahani's conversation with Bell, Plaintiffs do not properly allege the existence of a contract. The alleged contract here was for Plaintiffs to submit requested documents and, in exchange, Wells Fargo would modify the loan. *See id.* Plaintiffs fail to adequately plead the existence of a contract because of the lack of sufficiently definite terms.

Wells Fargo and Bank of America argue that in order to meet the requirement of sufficiently definite terms as to the modification promise, Plaintiffs must allege specific loan terms such as interest, principal, and duration. *See* Wells Fargo Mot. at 2. They are correct that generally, a contract involving a loan should generally "include the identity of the lender and borrower, the amount of the loan, and the terms for repayment in order to be sufficiently definite. *See Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 552 (N.D. Cal. 2012) (citing *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 115 (1991)). However, in *Sutcliffe*, this Court rejected the argument that a contract for an offer of a loan modification was indefinite merely because it did not contain repayment terms. *See Sutcliffe*, 283 F.R.D. at 552 (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 565 (7th Cir. 2012)).

Nonetheless, Plaintiffs' theory fails because of the crux of the Court's holding in *Sutcliffe*: that the terms in that case were sufficiently definite as a result of the constraints placed upon the bank by the Home Affordable Modification Program ("HAMP"). *See Sutcliffe*, 283 F.R.D. at 552. Here, Plaintiffs do not allege the applicability of HAMP, and thus there are "no guidelines for the parties to use to determine the essential terms of a permanent loan modification." *See Lazo v. Bank of America, N.A.*, No. C 12-00762 LB, 2012 WL 1831577, at *6, (N.D. Cal. May 18, 2012) (in dismissing breach of oral contract claim for lack of definite terms in loan modification dispute involving written Trial Period Plan, relying on *Sutcliffe* to distinguish HAMP from non-HAMP cases); *Alimena v. Vericrest Fin., Inc.*, CIV. S-12-0901 LKK, 2013 WL 4049663, at *14 (E.D. Cal. Aug. 9, 2013) (in finding same distinction, citing *Sutcliffe* and *Lazo*). *See also Reiydelle*, 2014 WL 312348, at *11 (noting that Ninth Circuit in *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 883 (9th Cir. 2013), *as amended on reh'g in part* (Sept. 23, 2013), impliedly agreed with

*Sutcliffe*'s reasoning regarding sufficiently definite terms). *Accord Ansanelli*, 2011 WL 1134451, at *5 (in HAMP case, declining to dismiss breach of oral contract claim for lack of definite terms).

Although Plaintiffs generally allege, elsewhere in the SAC, that Wells Fargo and Bank of America made various promises "pursuant to . . . HAMP," never do they allege the factual basis for this assumption. *See* SAC ¶¶ 172, 173. For example, they do not allege that their loan was insured by the Federal Housing Administration, which is a requirement for eligibility in certain HAMP programs. *See, e.g.*, *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250 (2012) (citing *Wells Fargo v. Neal*, 398 Md. 705, 719–720 (2007); 12 U.S.C. § 1709 *et seq.*; 24 C.F.R. § 203.500 *et seq.*).

Plaintiffs fail to properly allege a claim for breach of oral contract based on Shahani's conversation with Bell insofar as it is premised on a promise to modify the loan.

### 3.  Contract arising from conversation with Peck

The third theory is that, during a conversation with Peck on February 28, 2013, Shahani promised to submit requested financial information in connection with a pending loan modification application, in exchange for Wells Fargo's promise to postpone the trustee's sale scheduled for March 4, 2013. *See* SAC ¶¶ 59c, 143c. Plaintiffs allege that Wells Fargo breached this agreement when it failed to instruct First American to postpone the trustee's sale, or when it instructed First American to proceed with the trustee's sale. *Id.* Of Plaintiffs' multitude of allegations related to breach of contract, this is the one theory that properly alleges a claim.

As to the existence of a contract, Wells Fargo and Bank of America argue that Plaintiffs fail to allege "for how long Ms. Peck promised to postpone the foreclosure sale," which goes to whether terms are sufficiently definite, "and what consideration she requested in return for the postponement." *See* Wells Fargo Mot. at 3. The Court disagrees. A promise to postpone a trustee's sale or other foreclosure proceedings while a loan modification application is in process constitutes sufficiently definite terms. *See Edwards*, 2013 WL 2355445, at *3 (citing *Garcia*, 183 Cal. App. 4th at 1045 (finding sufficiently clear promise where defendant agreed to postpone foreclosure in order to allow new loan, intended to cure default, to close)). Additionally, as explained above, Plaintiffs properly allege consideration in the form of Shahani's promise to

1   provide all requested financial information in connection with the particular loan modification

2   application at issue. *Cf. Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1197 (S.D. Cal.

3   2010) (plaintiff failed to properly allege oral contract for lender to postpone because lender had

4   merely made gratuitous promise and plaintiff did not allege any consideration).

5        Thus, the requirements of the existence of a contract are properly alleged: Shahani and

6   Peck had a conversation on February 28, 2013 in which Shahani agreed to submit all requested

7   information in connection with the pending loan modification application and, in exchange, Peck

8   agreed to postpone the trustee's sale scheduled for March 4, 2013. *See* SAC ¶¶ 59c, 143c; *Vissuet*

9   *v. Indymac Mortgage Servs.*, 09-CV-2321-IEG (CAB), 2010 WL 2612153, at *4 (S.D. Cal. June

10  29, 2010) (plaintiff adequately alleged existence of oral contract where she alleged that "in

11  exchange for her promise to complete and submit to [lender] a loan modification application,

12  [lender] promised to postpone the trustee's sale on the subject property").

13       As to performance, Plaintiffs allege that they complied with all requests for financial

14  information in connection with the loan application pending at that time. SAC ¶ 59c. Plaintiffs

15  allege that in February 2013, without ever having receiving resolution on the application created

16  by his August 2012 submission of materials to Mak, Shahani was contacted by Peck who

17  informed him that a resolution to the loan modification application would be forthcoming by

18  March 7, 2013. *Id.* ¶¶ 39, 140(ww), Ex. 10. Over the course of the month and into the next month,

19  Wells Fargo requested more financial information on three separate occasions, and Shahani

20  responded to each of the requests. *Id.* ¶¶ 40, 41, 42 140(xx), (yy), (zz), Exs. 11, 12, 13. Plaintiffs

21  allege that they "perform[ed] all of what they agreed to do, *i.e.*, respond to Peck's questions,

22  provide documentation as requested and perform financial calculations and prepare financial

23  reports for her review." *Id.* ¶ 59c. This apparently involved faxing hundreds of pages of

24  documents to Peck in the course of a few days, including some materials that Plaintiffs allege were

25  duplicative or that Wells Fargo claims to have not received. *See id.* ¶ 59c, Exs. 12, 13. These

26  allegations are sufficient to allege that Plaintiffs fully performed under the contract. *See Vissuet*,

27  2010 WL 2612153, at *4 (plaintiff adequately alleged performance of oral contract "by

28  completing and submitting the loan modification application").

United States District Court
Northern District of California

As to breach, Plaintiffs allege that Wells Fargo breached the alleged contract "by failing to instruct First American to either postpone the pending trustee's sale or by instructing First American to proceed with the trustee's sale" on March 4, 2013. *Id.* ¶ 59c. They allege that Wells Fargo further breached the alleged contract by allowing First American to record the trustee's deed upon sale. *Id.* Further, as of the trustee's sale on March 4, 2013, Wells Fargo had not informed Shahani of a decision on the loan modification application. *Id.* ¶¶ 140(aaa), 141. Wells Fargo has never even acknowledged receipt of the last transmittal of documents, which was requested on March 7, 2013 and faxed on March 8 and again on March 11, 2013. *Id.* ¶ 140(aaa). Thus, as alleged, Shahani held up his end of the bargain by expending time and effort to submit all required information, but Wells Fargo breached the agreement by not postponing the foreclosure sale. This is sufficient to support a claim that Wells Fargo breached an oral contract. *See Vissuet*, 2010 WL 2612153, at *4 (plaintiff adequately alleged breach of oral contract "when it failed to postpone the trustee's sale").

As to damages, Plaintiffs allege that they "relied on Peck's agreement to postpone the trustee's sale and didn't seek injunctive relief from either the local State Court or the local Federal District Court prior to March 4, 2013." SAC ¶ 59c. Plaintiffs also allege damages arising from "consulting fees, research fees, duplication costs, attorneys' fees and legal costs to institute a wrongful foreclosure action, damages arising out of defamation of character and slander of title causing the property value to decrease and damage to Plaintiffs' reputation, loss of equity that exists in the property based upon the now current, fair market value of the property, and general damages including but not limited to loss of 100s if not 1000s of hours of professional and personal time spent by Plaintiffs over the past 5 years in attempting to resolve this matter with Defendants." *See id.*

In connection with their promissory estoppel claim—which, as explained below, is based in the same factual allegations as the breach of contract claims—Plaintiffs allege that they "would have been in a better position had they explored the possibility of obtaining additional, third party financing, obtaining re-financing of the existing loan, selling the property, or converting the property in into [sic] a non-residential investment property. Each of these options would have been

United States District Court
Northern District of California

1   feasible." *Id.* ¶ 175a. In another paragraph, Plaintiffs also allege that they were damaged "in the

2   loss of their good credit." *Id.* ¶ 199. *See also id.* ¶ 143c (alleging that February 28, 2013 agreement

3   with Peck "was reached so that Plaintiffs didn't have to file any ex parte application for restraining

4   order to prevent the foreclosure").

5           The Court finds that although Plaintiffs' allegations are not a model of clarity or detail,

6   they are sufficient for the Rule 12(b)(6) stage and, crediting Plaintiffs' allegations as true, it would

7   be reasonable for Plaintiffs to have taken these actions—or forbearances—in reliance on Peck's

8   promises.[7] *See Ottolini*, 2011 WL 8583133, at *5 (in refusing to dismiss plaintiff's claim for

9   breach of oral contract to not foreclose during pendency of loan modification application, finding

10  sufficient allegation of damages where plaintiff alleged that he had secured assistance from a

11  family member that he could have used to pay past due balance, and that the foreclosure caused

12  lost revenue from rentals of livestock boarding on the property, a negative impact on his credit

13  report, lost livestock, and negative health consequences); *Garcia*, 183 Cal. App. 4th at 1041

14  (borrowers' efforts to refinance other properties to procure new loan that would have allowed

15  them to cure their default with defendant bank constituted detrimental reliance on promise that

16  trustee's sale would be postponed); *Ramirez v. Wells Fargo Bank, N.A.*, No. C 10-05874 WHA,

17  2011 WL 1585075, at *5 (N.D. Cal. Apr. 27, 2011) (finding that plaintiff stated claim for breach

18  of oral contract wherein he was "tricked into not filing an injunction suit to stop the foreclosure

19  based on a promise that defendant would modify the loan"); *Sutcliffe*, 283 F.R.D. at 553 (citing

20  *Wigod*, 673 F.3d at 575) (noting that for breach of contract claim based on contract to offer

21  permanent loan modification, pecuniary loss can be alleged by alleging "incurred costs and fees,

22  lost other opportunities to save her home . . . [and] a negative impact to [plaintiff's] credit");

23  *Reiydelle*, 2014 WL 312348, at *16 (noting that detrimental reliance on promise that a loan

24  modification would not include a balloon payment could be shown, where plaintiffs alleged that

25

26  ─────────────────────

27  [7] In coming to this conclusion, the Court notes precedent in both the breach of contract and the promissory estoppel contexts because, although the two differ in that a contract requires consideration, the issue of damages is common. *See Garcia*, 183 Cal. App. 4th at 104–41 (citing *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969) (some citations omitted) ("The doctrine of promissory estoppel 'make[s] a promise binding under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.'").

28

they made trial payments "rather than pursue other opportunities to cure the default, to prevent foreclosure, or even to go into default"). *Cf. Mehta*, 737 F. Supp. 2d at 1199 (plaintiff bringing breach of contract claim had not adequately alleged damages where only allegation was "unsubstantiated reference to 'other options to avoid the foreclosure'" in opposition to motion to dismiss).

Thus, Plaintiffs properly allege a claim for breach of oral contract based on Shahani's February 28, 2013 conversation with Peck, and the Wells Fargo Motion is DENIED as to this theory of breach of oral contract against Wells Fargo and Bank of America. The Wells Fargo Motion is GRANTED as to the balance of the theories of breach of contract, and the claims based on those theories are DISMISSED with prejudice.

**C.      Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants**

The Court gave Plaintiffs leave to amend their breach of implied covenant of good faith and fair dealing claim, noting that Plaintiffs "should identify the contract at issue and the specific provision that was frustrated." *Rockridge II*, 2013 WL 5428722, at *33. Plaintiffs have supplemented their allegations with details regarding Shahani's correspondence regarding loan modification negotiations between February 2009 and March 2013. *See* SAC ¶¶ 143a–143c. Plaintiffs have stated a claim, but only as to the underlying contracts that have been adequately pled, *i.e.*, the contracts wherein Shahani agreed to provide requested financial information in exchange for (1) Bell's promise that Wells Fargo would (a) not foreclose and (b) accept regular monthly payments; and (2) Peck's promise to postpone the foreclosure sale. *See* Parts IV.B.2.b.– c., 3., *supra*.

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App. 2d 405 (1960). "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Reiydelle*, 2014 WL 312348, at *13 (quoting *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 372 (1992) (some citations omitted). "The

1   exercise of discretionary powers is exercised under the implied covenant to assure that the

2   promises of the contract are effective and in accordance with the parties' legitimate expectations."

3   *Reiydelle*, 2014 WL 312348, at *13 (quoting *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063,

4   1086 (N.D. Cal. 2012); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928,

5   956–57 (N.D. Cal. 2012)). However, "[w]here there is no underlying contract there can be no duty

6   of good faith arising from the implied covenant." *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal.

7   App. 4th 798, 804 (1999).

8       Wells Fargo and Bank of America argue that Plaintiffs' new allegations in support of this

9   claim consist of mere summaries of the breach of oral contract claims, and argue that they must be

10   dismissed. *See* Wells Fargo Mot. at 4. *Compare* SAC ¶¶ 59a–59c *with id.* ¶¶ 143a–143c. First

11   American argues that Plaintiffs have failed to adequately allege the existence of a contract as to

12   First American. *See* First American Mot. at 8. The Court agrees that Plaintiffs fail to state a claim

13   against First American because they have not alleged the existence of any contracts with First

14   American. Similarly, Plaintiffs fail to state a claim against Wells Fargo and Bank of America as to

15   any alleged contracts arising from conversations in 2009 or Bell's 2011 alleged promise to modify

16   the loan, because it has failed to properly allege contracts on these theories. *See* Parts IV.B.1, 2.d.

17   Where there are no underlying contracts, there can be no claims for the implied covenant of good

18   faith and fair dealing. *See Horn*, 72 Cal. App. 4th at 804.

19       However, Plaintiffs state claims for breach of the implied covenant as to the alleged

20   contracts wherein Shahani promised to provide requested financial materials in connection with

21   the relevant loan modification application and, in exchange, (1) Bell promised that Wells Fargo

22   would (a) not foreclose and (b) accept regular monthly mortgage payments; and (2) Peck promised

23   to postpone the March 4, 2013 trustee's sale. As to Peck's promise to postpone the trustee's sale,

24   Plaintiffs allege that the intent was "to allow Wells Fargo additional time to review the personal,

25   business and financial information Plaintiffs provided to Wells Fargo" in connection with the

26   pending loan modification application. SAC ¶ 143c. As to both Bell and Peck's promises, the

27   Court notes that it is self-evident that the intent of the loan modification application process is

28   ultimately the implementation of a loan modification that benefits and meets the needs of both the

*United States District Court*
*Northern District of California*

22

borrower and the lender. Of course, this process does not always result in a loan modification, but generally, any contracts that arise between borrowers and lenders during this process should not contravene this basic goal.

Plaintiffs adequately allege that the intended benefit of each contract was frustrated by Wells Fargo's bad faith actions during the loan modification process. Specifically, Plaintiffs allege the following: Defendants "never intended to modify Plaintiffs' loan, rather they intended to induce Plaintiffs to continue making applications for loan modification . . . then foreclose on the entire amount past due." *Id.* ¶ 209a. Defendants "concealed the fact from Plaintiffs that they actually did not intend to modify his loan . . . and Defendants knew that they did not ever plan to modify Plaintiffs' loan." *Id.* Defendants "repeatedly caused a Trustee's Sale to be scheduled, without informing Plaintiff that they would ultimately refuse to continue the sale date and foreclose upon the property." *Id.* ¶ 207. As to the contracts with Bell, Defendants denied the loan modification application pending in July 2012, citing "investor guidelines" that were never disclosed or explained. *Id.* ¶¶ 140(ff)–(gg), 143b. As to the contract with Peck, Plaintiffs allege that Wells Fargo never "planned to complete its evaluation of Plaintiff's request for loan modification by March 7," despite what was stated in Peck's previous letter. *Id.* ¶ 59c, Ex. 10.

These allegations are sufficient to support a claim for breach of the implied covenant of good faith and fair dealing. The Court notes that as to the contracts with Bell, as explained above, Plaintiffs have not adequately pled that the express terms of the alleged contract were breached, because the parties' obligations only existed until a decision was made on the loan modification application pending at that time. *See* Part IV.B.2.b., c., *supra*. However, this does not preclude a claim for a breach of the implied covenant of good faith and fair dealing because, assuming that these contracts with Bell and Peck existed, all parties impliedly promised to make a good faith effort to participate in the loan modification process. Wells Fargo's discretionary power to approve or deny Shahani's applications does not change this implied promise; indeed, this implied promise is necessary to meet Shahani's legitimate expectations. *See Reiyedelle*, 2014 WL 312348, at *13 (citations omitted). If Plaintiffs' allegations are proven to be true—*i.e.*, Wells Fargo never intended to offer a loan modification, regardless of the merits of the application, and intended all

along to foreclose—then this could support a finding of a breach of the implied covenant of good faith and fair dealing.

Accordingly, the Wells Fargo Motion is DENIED as to the breach of the implied covenant of good faith and fair dealing claim against Wells Fargo and Bank of America insofar as it is premised on the alleged contracts (1) created by Shahani's September 15, 2011 conversation with Bell to (a) not foreclose and (b) accept regular monthly payments; and (2) created by Shahani's February 28, 2013 conversation with Peck to postpone the trustee's sale. The Wells Fargo Motion is GRANTED as to the breach of the implied covenant of good faith and fair dealing premised on all other theories, and the claims based on those theories are DISMISSED with prejudice. The First American Motion is GRANTED as to this claim against First American, and the claim against First American is DISMISSED with prejudice.

### D.    Promissory Estoppel Against Wells Fargo and Bank of America

The Court gave Plaintiffs leave to amend their promissory estoppel claim, noting that it was not only impossible to determine from the FAC when the promises were made or who made them, but also that Plaintiffs had failed to plead reasonable reliance. *Rockridge II*, 2013 WL 5428722, at *34. Plaintiffs have amended their pleadings by referencing their theories of breach of contract, *i.e.*, Defendants had made promises "to modify the loan, not to foreclose, to accept Plaintiffs' monthly payments . . . and to postpone the trustee's sale." *See* SAC ¶ 175a. Plaintiffs also allege damages similar to those alleged in the section of the SAC alleging breach of oral contract. *See id.* Plaintiffs now properly state a claim for promissory estoppel but, as with the breach of contract claim, it is adequately pled only insofar as it is based in Shahani's February 28, 2013 conversation with Peck and the broken promise to postpone the trustee's sale.

A claim for promissory estoppel requires: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976).

Wells Fargo and Bank of America argue that Plaintiffs fail to allege a clear promise or reliance. *See* Mot. at 5. The Court agrees that Plaintiffs' supplement to the promissory estoppel

United States District Court
Northern District of California

1  section of the SAC alone is insufficient to cure the defects identified previously because it does

2  not identify specific promises by specific people. *See* SAC ¶ 175a. However, construing the SAC

3  in Plaintiffs' favor, the promissory estoppel claim is grounded in the more detailed allegations

4  underlying the breach of oral contract claims: (1) conversations throughout 2009 promising to not

5  foreclose and to modify the loan, (2) a September 15, 2011 conversation with Bell promising to

6  not foreclose, to accept payments, and to modify the loan, and (3) a February 28, 2013

7  conversation with Peck, promising to postpone the trustee's sale.[8] *See* Part IV.B., *supra*.

8        First, to the extent that the promissory estoppel claim is grounded in the 2009

9  conversations, it is dismissed because it remains impossible to determine which particular

10  conversations are alleged to have given rise to Plaintiffs' reliance. *See* SAC ¶ 59a.

11        Second, to the extent that the promissory estoppel claim is grounded in the September 15,

12  2011 conversation with Bell, any promise to modify the loan was not clear and unambiguous for

13  the same reasons that it did not contain sufficiently definite terms in the breach of oral contract

14  context. *See* Part IV.B.2.a., *supra*.

15        In contrast, Bell's alleged promises that Wells Fargo would accept the regular monthly

16  payments and not foreclose while Plaintiffs were submitting documents in furtherance of the 2011

17  loan modification application are clear enough for to survive a motion to dismiss a claim for

18  promissory estoppel. *See Edwards*, 2013 WL 2355445, at *3 (citing *Garcia*, 183 Cal. App. 4th at

19  1045). However, as explained above in the breach of contract context, Plaintiffs have not properly

20  alleged that Wells Fargo broke these promises—to the extent that any promises were made, Wells

21  Fargo did not break them because it stopped accepting payments and restarted foreclosure

22  proceedings only after it had denied the loan modification request at issue. *See* Part IV.B.2.b.–c.,

23  *supra*. As alleged, Shahani should not have relied on Wells Fargo to continue accepting the

24  regular payments and not foreclose indefinitely, because it is apparent that the purposes of any

25  promises exchanges between Bell and Shahani were related to the particular loan modification

26  request at issue. Plaintiffs should have known that Wells Fargo could deny the loan modification

27

28  [8] The Court also notes the language in the introduction of the promissory estoppel claim that incorporates the previous paragraphs of the SAC. *See* SAC ¶ 168.

application on short notice. Based on Plaintiffs' allegations, any actions or forbearances taken by Shahani should have incorporated the risk that Wells Fargo could deny the modification application at any time.

The Court notes that Plaintiffs have also alleged that Wells Fargo engaged in misconduct as to this loan application because it never intended to review it or to modify the loan. However, this allegation goes to whether there was a breach of the covenant of good faith and fair dealing, as discussed above. An allegation of misconduct does not obviate the need to show reasonable reliance. Here, assuming that Shahani entered into a contract—or at least knowingly participated in the loan modification process—he should have understood that Wells Fargo could deny the loan modification. While Shahani may now believe that the whole thing was a sham, he cannot allege that a reasonable understanding of the arrangement at that time did not contemplate a possible denial of the application that would result in a refusal to accept payments and the re-commencement of foreclosure proceedings.

However, Plaintiffs manage to state a claim for promissory estoppel as to the third theory based in the conversation with Peck on February 28, 2013. As to a clear promise, Plaintiffs have adequately alleged that Peck promised that Wells Fargo would postpone the trustee's sale while Plaintiffs continued to submit materials. *See* SAC ¶ 59c, Ex. 12 (in a March 1, 2013 letter faxed to Peck, Shahani confirmed that during his February 28, 2013 telephone conversation with Peck, Peck had "stated that she would have the trustee Sale Date of March 4, 2013, continued or postponed to a later date"). *See also Edwards*, 2013 WL 2355445, at *3; *Garcia*, 183 Cal. App. 4th at 1045; Part IV.B.2.d., *supra*.

Regarding reasonable reliance and damages—as in the breach of contract action discussed above—Plaintiffs have properly alleged that they relied on Peck's promise to postpone the trustee's sale, and they were damaged by choosing to forego opportunities to seek injunctive relief through judicial action to stop the sale. *See* SAC ¶¶ 59c, 207 (alleging that Plaintiffs relied on Defendants' representations "that no foreclosure would take place during the loan modification process and did not seek other remedies or pursue other options during the process"). Similarly, Plaintiffs allege that they would have been in a better position had they explored other feasible

means of dealing with the imminent foreclosure, such as seeking alternative financing, converting the property into an investment property, or even selling the Property. *Id.* ¶ 175a. They also allege damages arising from fees and costs related to bringing this action, as well as time and effort spent in loan modification negotiations with Wells Fargo. *Id.* ¶ 59c. They also allege that they were damaged "in the loss of their good credit." *Id.* ¶ 199.

As pled, it was reasonable for Shahani to rely on the promise of a postponement in the hope that Wells Fargo would meaningfully consider the loan modification application and possibly grant the modification. Wells Fargo broke the promise to postpone the trustee's sale by allowing the sale to go forward on March 4, 2013. At this Rule 12(b)(6) stage, such allegations are sufficient to allege damages in support of a promissory estoppel claim.

Accordingly, as to the promissory estoppel claim against Wells Fargo and Bank of America, the Wells Fargo's Motion is DENIED insofar as it relies on the alleged promise by Peck to postpone the trustee's sale. The Wells Fargo Motion is GRANTED insofar as it relies on any other theories of promissory estoppel, and the claims based on those theories are DISMISSED with prejudice.

### E.    Fraud Against Wells Fargo and Bank of America

The Court gave Plaintiffs leave to amend their fraud claim, noting that Plaintiffs needed to satisfy the heightened pleading standard set out in Rule 9(b) of the Federal Rules of Civil Procedure. *Rockridge II*, 2013 WL 5428722, at *38. In particular, the Court noted that Plaintiffs had failed to allege that "any damage arising out of Shahani's belief that Wells Fargo and Home Mortgage were separate entities," that "Defendants did not have any interest under the DOT or Mortgage Note at the time they claimed such an interest," or that "the initial mortgage agreement was not within reasonable economic value." *Id.* at *37. Plaintiffs have supplemented their allegations by referencing the alleged misconduct of Wells Fargo in the course of its correspondence with Shahani from February 2009 to March 2013. *See* SAC ¶ 209a.

Wells Fargo and Bank of America argue that Plaintiffs' new paragraph in the section of the SAC devoted to the fraud claim does not remedy the lack of specificity previously identified by the Court. *See* Wells Fargo Mot. at 7–8. The Court agrees that the paragraph alone does not cure

27

United States District Court
Northern District of California

the deficiencies. However, as with the promissory estoppel claim, the Court construes the fraud claim as being grounded in the more detailed allegations underlying the breach of oral contract claims: (1) conversations throughout 2009 promising to not foreclose and to modify the loan, (2) the September 15, 2011 conversation with Bell promising not to foreclose, to accept payments, and to modify the loan, and (3) the February 28, 2013 conversation with Peck, promising to postpone the trustee's sale.[9] *See* Part IV.B., *supra*. The Court finds that although Plaintiffs have not adequately pled their other theories of fraud, Plaintiffs have adequately pled a claim of fraud against Wells Fargo and Bank of America insofar as it is based in the February 28, 2013 conversation with Peck.

The elements of fraud are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)). When alleging fraud in federal court, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

First, insofar as the fraud claim is premised on Shahani's correspondence with Wells Fargo during 2009, it is insufficient to meet the Rule 9(b) standard because the facts are not pled with particularity. *See* Part IV.B.a., *supra*. Second, insofar as the fraud claim is premised on Shahani's conversation with Bell on September 15, 2011, it fails because Plaintiffs fail to plausibly allege that Shahani reasonably relied on any of Bell's representations. *See* Part IV.B.2.b., c., *supra*.

However, insofar as the fraud claim is premised on Shahani's conversation with Peck on February 28, 2013, it is adequately pled. Plaintiffs allege that during Shahani and Peck's telephone conversation, Peck represented that in light of the pending loan modification application, Wells Fargo would postpone the trustee's sale, scheduled for March 4, 2013. *See id.* ¶ 59c. But Wells Fargo did not postpone the trustee's sale, and the sale went forward as scheduled. *See id.* These

---

[9] The Court also notes the language in the introduction of the fraud claim that incorporates the previous paragraphs of the SAC. *See* SAC ¶ 189.

allegations are sufficient to meet the Rule 9(b) standard for particularity.

As to falsity, knowledge, and intent, these allegations may be made generally. *See* Fed. R. Civ. P. 9(b). Again, the SAC is not a model of clarity or detail, but Plaintiffs adequately allege that Peck knew that Wells Fargo was not going to postpone the trustee's sale because it never intended to modify the loan, and that she concealed the truth from Shahani in order to induce him to submit financial information and refrain from taking other action to stop the sale. *See* SAC ¶¶ 207 (alleging that Defendants "intentionally made the representations as part of their pattern and practice to deceive borrowers . . . into relying to their detriment so that they could foreclose on homes before borrowers could seek other remedies or options"), 209a ("Defendants concealed the fact from Plaintiffs that they actually did not intend to modify his loan").

The Court finds that these allegations are adequate to plead that Peck's promises and representations concealed Wells Fargo's intention to not postpone the trustee's sale and to never actually consider the loan modification, regardless of the merits of the loan modification applications. *See Vissuet*, 2010 WL 2612153, at *4 (finding sufficient allegation of fraud where borrower alleged that lender had practice of promising "to postpone the trustee's sales upon the borrowers' submission of their loan modification applications and subsequently either falsely claim[ing] that it did not receive the applications or all of the documentation, or proceed[ing] with the trustee's sales regardless of what the borrowers do").

As to reasonable reliance, Plaintiffs have met this requirement through their allegations of damages alleged in connection with their claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. *See* Part IV.B.d., D., *supra*. Construing all inferences in Plaintiffs' favor, the Court finds that these damages are alleged to arise from the factual allegations underlying all four of these claims. Additionally, in their general allegations, Plaintiffs allege that "If [Wells Fargo] had not purported to engage in a loan modification process, Plaintiff would have focused his time on seeking alternatives to foreclosure other than loan modification, such as reorganization under Bankruptcy law." *Id.* ¶ 25. *See also Lindberg v. Wells Fargo Bank N.A.*, No. C 13–0808 PJH, 2013 WL 3457078, at *1 (N.D. Cal. July 9, 2013) (although dismissing fraud claim for failure to meet Rule 9(b) requirements, explaining

that, where foreclosure occurred before loan modification process was completed, plaintiff's allegation "that she was told to stop making payments in order to qualify for a modification, and that no foreclosure would occur until the loan modification process was completed" was otherwise sufficient to allege fraud).

Accordingly, the Wells Fargo Motion is DENIED as to the fraud claim against Wells Fargo and Bank of America insofar as it is premised on representations made by Peck on February 28, 2013. The Wells Fargo Motion is GRANTED as to the fraud claim based on all other theories, and the claims based on those theories are DISMISSED with prejudice.

**F.      Wrongful Foreclosure Against All Defendants**

The Court denied Defendants' motions to dismiss the FAC as to the wrongful foreclosure claim based in a violation of HBOR provisions regarding excessive fees, and it gave Plaintiffs leave to amend their wrongful foreclosure claims based in several other theories. *Rockridge II*, 2013 WL 5428722, at *20, *29. Plaintiffs have supplemented their allegations with details regarding Shahani's correspondence with Defendants between February 2009 and March 2013. *See* SAC ¶¶ 106a–106e. Defendants have moved to dismiss the claims based on the remaining theories, including the violation of HBOR provisions related to excessive fees. All of Plaintiffs' wrongful foreclosure theories fail: (1) irregularities in the foreclosure process; (2) HBOR provisions regarding dual tracking and notice of denial; (3) HBOR provisions regarding a single point of contact; and (4) HBOR provisions regarding excessive fees.

**1.      Irregularities in foreclosure process**

In dismissing Plaintiffs' wrongful foreclosure claim based on irregularities in the foreclosure process, the Court noted that Plaintiffs failed to allege prejudice and that they "pled no facts indicating that the foreclosure sale, which has already occurred, would have been averted but for the alleged deficiencies in the foreclosure process." *See Rockridge II*, 2013 WL 5428722, at *24. Plaintiffs attempt to address this deficiency by alleging that "[h]ad it not been for the irregularities and unauthorized documents and recordings by Defendants, Plaintiffs could have asserted legal rights prior to the purported foreclosure of March 4, 2013." SAC ¶ 106a. Plaintiffs also allege that they were prejudiced by Defendants "making it impossible for Plaintiffs to know

United States District Court
Northern District of California

1    the identity of the true owner of the DOT, and thus know with whom it was actually negotiating."

2    *Id.* Plaintiffs still fail to state a wrongful foreclosure claim based on this theory.

3         In California, a proper claim for wrongful foreclosure is comprised of the following

4    elements: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of

5    real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the

6    sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases

7    where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of

8    the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App.

9    4th 89, 104 (2011).

10        As part of the prejudice analysis, some courts have distinguished between pending and

11   completed sales. *Albano v. Cal-W. Reconveyance Corp.*, 4:12-CV-4018 KAW, 2012 WL

12   5389922, at *7 (N.D. Cal. Nov. 5, 2012) ("Although some cases have held that the prejudice

13   element of the wrongful foreclosure cause of action could be established by allegations that the

14   wrong companies had initiated the foreclosure process, the facts of those cases are distinct from

15   the facts here, because in this case, the foreclosure sale has already happened.") (citing *Sacchi v.*

16   *Mortgage Elec. Registration Sys., Inc.*, CV 11-1658 AHM CWX, 2011 WL 2533029, at *9–10

17   (C.D. Cal. June 24, 2011) (allowing wrongful foreclosure claim to proceed past motion to dismiss

18   where foreclosure sale had not yet taken place); *Tamburri v. Suntrust Mortgage, Inc.*, C-11-2899

19   EMC, 2011 WL 6294472, at *14 (N.D. Cal. Dec. 15, 2011) (same)); *Natividad*, 2013 WL

20   2299601, at *16 (citing *Albano*, 2012 WL 5389922, at *7). Accordingly, courts have found that

21   where the foreclosure sale has already occurred, "there is no longer a 'threat' of foreclosure" and,

22   without any allegations that the foreclosure sale would not have occurred, a plaintiff fails to

23   properly allege prejudice. *See Albano*, 2012 WL 5389922, at *7.

24        As a general rule under California law, "an action to set aside a trustee's sale for

25   irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount

26   of the debt for which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App.

27   3d 575, 578 (1984). A number of federal courts sitting in California have drawn a distinction

28   between pending and completed sales. These courts have suggested that while the tender rule is

31

not applicable to cases seeking to prevent a pending sale, it is generally applicable to cases where the sale has already been completed. *See Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 970–971 (N.D. Cal. 2012) (collecting cases); *Lester v. J.P. Morgan Chase Bank*, 926 F. Supp. 2d 1081, 1093 (N.D. Cal. 2013) (collecting cases); *Giannini v. Am. Home Mortg. Servs., Inc.*, C11–04489 TEH, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012) ("[W]hile it is sensible to require tender following a flawed sale—where irregularities in the sale are harmless unless the borrower has made full tender—to do so prior to sale, where any harm may yet be preventable, is not."). *See also Bergman*, 2013 WL 5863057, at *22 (adopting reasoning of these cases).

Here, Wells Fargo and Bank of America argue that Plaintiffs have failed to demonstrate prejudice. *See* Wells Fargo Mot. at 9. The Court agrees. Plaintiffs fail to allege that they did not default on their loan obligations. And even assuming that Plaintiffs have plausibly alleged any facts to suggest that they would not have been foreclosed upon in the absence of Defendants' allegedly wrongful behavior—*e.g.*, by coming up to date on their mortgage payments by seeking alternative financing solutions—they have failed to proffer tender. *See Bergman*, 2013 WL 5863057, at *23 (dismissing wrongful foreclosure claim where plaintiffs had already been foreclosed upon, they failed to allege that they would not have been foreclosed in the absence of alleged irregularities, and they failed to proffer tender). The Court rejects Plaintiffs' argument that "[f]orcing Plaintiffs to tender the loan amount would contradict the purpose and intended effect of [HBOR]," because they provide no authority to support this proposition. *See* Pls.' Opp'n to Wells Fargo Mot. at 8. Thus, all of Plaintiffs' wrongful foreclosure claims based in irregularities fail. These claims also fail for several additional reasons.

First American correctly argues that based on the version of section 2923.5 of the California Civil Code that was in effect when the NOD and both NOTS were recorded—*i.e.*, before the effective date of HBOR on January 13, 2013—the remedy is limited to postponement of the trustee's sale to allow compliance before the sale occurs. *See* First American Mot. at 7 (citing *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 232 (2010)); *Roberts v. J.P. Morgan Chase Bank*, Nos. 09-CV-01855-LHK, 09-CV-01879, 2011 WL 864949, at *5 (N.D. Cal. Mar. 11, 2011) (citations omitted). Section 2923.5 "does not create a right to a loan modification, nor does

it have any effect on a completed foreclosure sale." *Roberts*, 2011 WL 864949, at *5 (citations omitted). Here, the foreclosure sale has already been completed. *See* SAC ¶ 141. Furthermore, the Court declines to adopt Plaintiffs' argument that this limitation does not apply where the lender is the purchaser who is "merely reacquiring an asset at a steeply discounted price." *See id.* ¶ 72. Plaintiffs concede that this is policy argument, and they provide no authority for the proposition. *See id.* Accordingly, as the Court held previously, no remedy is available to Plaintiffs under section 2923.5. *See Rockridge II*, 2013 WL 5428722, at *29.

First American also correctly argues that section 2932.5 of the California Civil Code, which requires that an assignment of a mortgage is recorded before exercise of the power of sale, is inapplicable to deeds of trust. *See* First American Mot. at 7 (citing *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 122 (2001)); *Anderson v. U.S. Bank, N.A.*, 5:13-CV-00636-PSG, 2014 WL 47087, at *3 (N.D. Cal. Jan. 6, 2014) (citing Cal. Civ. Code §§ 2932, 2932.5; *Calvo*, 199 Cal. App. 4th 118 (section 2932.5 "does not apply when power of sale is conferred in a deed of trust rather than a mortgage")).

Further, First American correctly argues that Plaintiffs' claims of impropriety regarding First American's participation in the foreclosure process—*i.e.*, its execution of the SOT and assignment of the DOT as attorney in fact for Wells Fargo—are not supported by authority. *See* First American Mot. at 8. First American points out that section 1095 of the California Civil Code allows for execution by an attorney in fact, requiring only that "[w]hen an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." *See* First American Mot. at 8. A substitution of trustee may properly be executed by the entity that is being substituted as trustee where that entity is properly acting as the attorney in fact for the beneficiary and the deed of trust does not prohibit such a substitution. *Bergman*, 2013 WL 5863057, at *15 (citing *Natividad*, 2013 WL 2299601, at *14–*15).

Here, Plaintiffs point out that the first SOT (Fidelity National was replaced by Wells Fargo) seems inconsistent with the second SOT (Fidelity National was replaced by First American). *See* SAC ¶ 29, Exs. 2, 4. However, the operative facts are that as to the second SOT,

First American was the party "being substituted as trustee" and it was "properly acting as the attorney and fact for the beneficiary," Wells Fargo. *See* Cal. Civ. Code 1095. Plaintiffs have not alleged that First American failed to subscribe its own name or the name of the beneficiary, Wells Fargo, on the instrument. *See* SAC ¶¶ 28, 29. Further, as the Court has previously explained, Plaintiffs have not plausibly alleged that First American was improperly acting as attorney in fact. *See Rockridge II*, 2013 WL 5428722, at *34.

Finally, as to Plaintiffs' allegation that they were prejudiced by not knowing the identity of the owner of the DOT, the Court notes that "plaintiffs are not permitted to bring a claim simply to determine whether the person initiating foreclosure is authorized." *See id.* at *21 (citing *Robinson v. Countrywide Home Loans, Inc.*, 199 Cal. App. 4th 42, 46, 46 n.5 (2011)).

Thus, Plaintiffs fail to allege a claim for wrongful foreclosure based on irregularities in the foreclosure process.

### 2. HBOR: dual tracking and notice of denial

In dismissing Plaintiffs' wrongful foreclosure claim based in HBOR provisions regarding dual tracking and notice of denial of loan modification requests, the Court noted that based on the allegations in the FAC, the provisions regarding dual tracking did not apply because "Shahani was evaluated for a loan modification prior to January 1, 2013," and "Plaintiffs have not alleged that there was any change in Shahani's financial circumstances after July 2012, or that Shahani notified Defendants of any such change." *See Rockridge II*, 2013 WL 5428722, at *26. The Court also noted that Plaintiffs had failed to allege damages, and they failed to address Wells Fargo and Bank of America's argument that section 2923.6(g) of the California Civil Code bars the section 2924.18 claim. *Id.* Further, the Court noted that Plaintiffs did not allege damages as a result of any claimed violations. *Id.* Plaintiffs have supplemented their allegations with details regarding its interactions with Wells Fargo regarding a loan modification request in February and March 2014. SAC ¶ 106b. Plaintiffs also allege that they experienced a material change in their financial circumstances since their previous denials in the form of the bankruptcy, and that they notified Defendants of this change, which triggered HBOR. *See* 106e. Plaintiffs still fail to state a wrongful foreclosure claim based on this theory.

HBOR attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application. *See Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 904 (2013). HBOR's dual tracking goals are primarily effectuated by two sections of the California Civil Code: section 2924.18, which applies to "small volume" servicers, and section 2924.6(c)–(h), which applies to all other servicers. *See* Cal. Civ. Code § 2924.18(b) ("This section shall apply only to a depository institution . . . that, during its immediately preceding annual reporting period . . . foreclosed on 175 or fewer residential real properties . . . ."); Cal. Civ. Code § 2923.6(i) ("Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18"). *See also* Judge Kirk H. Nakamura, *Dwellings on California Foreclosure Law: The New Homeowner's Bill of Rights*, ORANGE COUNTY LAW, at 18 (Dec. 2013) (summarizing HBOR provisions).

The gist of both provisions is the same: while a borrower's complete application for a first lien loan modification is pending, the servicer may not record a notice of default, notice of trustee's sale, or conduct a trustee's sale. *See* Cal. Civ. Code §§ 2924.18(a)(1), 2923.6(c). However, section 2923.6, which applies to "large volume" servicers, provides some additional provisions. For example, subsection (f) requires that if a loan modification is denied, servicers must provide a written notice of denial that explains the reasons for the denial in detail. *Id.* § 2923.6(f). Of note here, section 2923.6 also contains a limitation on its applicability:

> the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6(g). Because, in this case, it is not clear from the record what type of servicer Wells Fargo is and thus which of the two provisions applies, the Court proceeds as if both statutes are relevant. The Court also notes that HBOR creates a private right to action for "actual

economic damages" resulting from a "material violation" of various HBOR provisions, including section 2923.6. *Id.* § 2924.12(b).

Here, Plaintiffs concede that they "had previously been evaluated for a loan modification prior to January 1, 2013." *See* SAC ¶ 106e. Thus, the protections of section 2923.6 are unavailable to Plaintiffs unless "there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." *See* Cal. Civ. Code § 2923.6(g). Plaintiffs allege that a material change occurred as a result of the bankruptcy developments, which were documented and submitted to Defendants in 2012. SAC ¶ 106e. As explained below, this 2012 change does not trigger HBOR's dual tracking protection.

As to section 2923.6(c)–(h), which applies to "large volume" servicers, Wells Fargo and Bank of America appear to concede that this is a material change, but they argue that it occurred before the effective date of January 1, 2013, and thus it does not meet the requirement of section 2923.6(g). *See* Wells Fargo Mot. at 10. The Court agrees. It is true that the material change here occurred "since the date of the borrower's previous application," but the Court reads the section and the statute as a whole, and concludes that the material change needs to have occurred not only after the borrower's previous application, but also after January 1, 2013. *See Kawashima v. Holder*, 615 F.3d 1043, 1047 (9th Cir. 2010) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)) ("We do not . . . construe statutory phrases in isolation . . . . Thus, the [term in question] must be read in light of the immediately following phrase . . . .").

If Plaintiffs' interpretation were adopted, it would lead to the implausible result that a borrower who had a loan modification application denied, but then experienced changed circumstances—even if both the denial and the changed circumstances occurred ten years ago— could bring suit under this section. This would be contrary to the statute's non-retroactive nature. *See Rockridge II*, 2013 WL 5428722, at *28 (quoting *Sabherwal v. Bank of New York Mellon*, No. 11-cv-2874 WQH-BGS, 2013 WL 4833940, at *10 (S.D. Cal. Sept. 10, 2013); *Myers v. Philip Morris Cos., Inc.*, 28 Cal. 4th 828, 841 (2002)) (in declining to address any documents submitted by plaintiffs before January 1, 2013, reasoning that "California courts comply with the legal

United States District Court
Northern District of California

36

principle that unless there is an express retroactivity provision, a statute will not be applied

retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have

intended a retroactive application."). Plaintiffs have also failed to allege damages, as explained

below. Thus, Plaintiffs fail to properly allege that they are entitled to the protections of section

2923.6(c)–(h).

As to section 2924.18, which applies to "small volume" servicers, there is no limitation

analogous to that contained in section 2923.6(g). In the absence of such a provision and in light of

the statutory exclusion contained in section 2923.6(i), the Court declines to find that section

2923.6(g) operates to limit section 2924.18. *See* Cal. Civ. Code § 2923.6(i) (expressly providing

that subsections (c)–(h), inclusive, do not apply to those entities listed in § 2924.18(b)). However,

to the extent that section 2924.18 applies at all, it would fail because Plaintiffs have not adequately

alleged damages. That is, Plaintiffs have still failed to plead that any violations of sections

2924.18—or, for that matter, 2923.6(c)–(h)—caused any injuries. Although there are allegations

of damages scattered throughout the SAC, Plaintiffs must provide a plausible explanation of how

the dual tracking or lack of notice provisions specifically—not just Wells Fargo's alleged

wrongdoing generally—caused actual economic damages. *See* Cal. Civ. Code § 2924.12(b).

Additionally, Plaintiffs allege that, pursuant to section "2823.6" of the California Civil

Code, Defendants are "contractually bound to accept the loan modification as provided above."

*See* SAC ¶ 95. However, such a section does not exist, and Plaintiffs apparently intend to refer to

section 2923.6. *See Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047, 1056

(2013), *reh'g denied* (Apr. 17, 2013) (quoting *Mabry*, 185 Cal. App. 4th at 222, n.9) (interpreting

nearly identical claim brought under section "2823.6" as one brought under section 2923.6).

However, as the Court previously explained, section 2923.6 "does not grant a right to a loan

modification"—it "merely expresses the hope that lenders will offer loan modifications on certain

terms" and "conspicuously does not require lenders to take any action." *Rockridge II*, 2013 WL

5428722, at *30 (citing *Austero v. Aurora Loan Servs., Inc.*, No. C-11-00490 JCS, 2011 WL

3359729, at *10 (N.D. Cal. Aug. 3, 2011)) (some citations omitted).

Thus, Plaintiffs fail to allege a claim for wrongful foreclosure based on violations of the

1  HBOR provisions regarding dual tracking and notice of denial.

### 3.   HBOR: single point of contact

In dismissing Plaintiffs' wrongful foreclosure claim based in HBOR provisions regarding a single point of contact, the Court noted that Plaintiffs had failed to plead any damages resulting from a violation of these statutory provisions. *See Rockridge II*, 2013 WL 5428722, at *27. Plaintiffs have supplemented their allegations with details regarding Shahani's interactions with Mak, Peck, and Meiers from August 2012 to March 2013. SAC ¶ 106d. The also allege that these individuals did not have the requisite knowledge of or access to Plaintiffs' file created with Mak. *See id.* Plaintiffs still fail to state a wrongful foreclosure claim based on this theory.

In connection with its enactments to address dual tracking, the California legislature also enacted a "single point of contact provision" to prevent borrowers from being given the run-around. *See Jolley*, 213 Cal. App. 4th at 904–05. Specifically, section 2923.7 of the California Civil Code provides that upon a borrower's request for a foreclosure prevention alternative, the servicer must promptly designate one person to be the point of contact to communicate directly with the borrower. Cal. Civ. Code § 2923.7(a). Among other things, this point of contact must possess sufficient knowledge about foreclosure alternatives, and she must have access to individuals who have the ability and authority to stop foreclosure proceedings. *Id.* § 2923.7(b).

Wells Fargo and Bank of America argue that this theory fails because Plaintiffs do not allege damages. *See* Wells Fargo Mot. at 11–12. The Court agrees. In order to properly allege a claim under section 2923.7, a plaintiff must allege that a violation of the provision was the cause of actual economic damages. *See* Cal. Civ. Code § 2924.12(b). As with the dual tracking and notice of denial provisions above, Plaintiffs have failed to adequately allege that any damages they incurred were caused by Defendants' alleged failure to comply with the single point of contact requirements. Additionally, First American correctly argues that this provision applies only to servicers, not trustees. *See* First American Mot. at 8.

Thus, Plaintiffs fail to allege a claim for wrongful foreclosure based on violations of the HBOR provisions regarding a single point of contact.

///

#### 4.   HBOR: excessive fees

The Court declined to dismiss Plaintiffs' wrongful foreclosure claim based in HBOR provisions regarding excessive fees because Wells Fargo and Bank of America did not respond to this theory in its previous motion. *See Rockridge II*, 2013 WL 5428722, at *29. Plaintiffs did not add any new allegations to the SAC regarding this claim. In their opposition, Plaintiffs argue only that Wells Fargo and Bank of America's arguments should be disregarded because the Court previously denied the motion to dismiss. Pls.' Opp'n to Wells Fargo Mot. at 12–13. Plaintiffs misunderstand the basis for the Court's previous ruling. The Court denied the wrongful foreclosure claim on this theory only because Wells Fargo and Bank of America failed to actually move to dismiss it. *See id.* Wells Fargo and Bank of America have now moved for dismissal, and the Court finds that Plaintiffs fail to state a claim under this theory.

HBOR provides that the "mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised." Cal. Civ. Code § 2924.11(f).

Wells Fargo and Bank of America argue that the protections under HBOR were never triggered because Plaintiffs failed to allege that they were charged late fees after the HBOR's effective date of January 1, 2013, and Plaintiffs also failed to submit a "complete" application. *See* Wells Fargo Mot. at 12. The Court agrees.

First, Plaintiffs have not alleged what types of late fees were incurred, how much they were, or when they were incurred. The closest that Plaintiffs come to alleging fees at all, let alone after HBOR's effective date of January 1, 2013, is found in the section of the SAC regarding the breach of oral argument claim, where Plaintiffs alleged that Wells Fargo's facilitation of the trustee's sale on March 4, 2013 caused damages, including "Wells Fargo's assessment of fees, interest charges, penalties, attorneys [sic] fees and other fees." *See* SAC ¶ 59c. This is insufficient to allege that any actual damages stem specifically from the violation of this HBOR provision.

Second, Plaintiffs do not allege that they submitted a "complete" application. As Wells Fargo and Bank of America correctly point out, Plaintiffs allege that they were submitting

39

documents up until the date of the foreclosure sale, and even after the foreclosure sale, at Wells Fargo's request. *See* SAC ¶¶ 140(ww)–(aaa), 141. Because section 2924.11(f) provides protection only to borrowers who have submitted "complete" applications and Plaintiffs do not allege that they submitted a "complete" application, this provision does not apply here.[10]

Thus, Plaintiffs fail to allege a claim for wrongful foreclosure based on violations of the HBOR provisions regarding excessive fees. Because all four of Plaintiffs' wrongful foreclosure theories fail, both Motions are GRANTED as to the wrongful foreclosure claims, and these claims are DISMISSED with prejudice.

### G.   Quiet Title, Slander of Title, and Cancellation of Instruments Against All Defendants

The Court gave Plaintiffs leave to amend their quiet title claim, noting that the Property was subject to a loan creating a security interest in favor of Wells Fargo, such that even if the security interest had been assigned to Bank of America improperly, Plaintiffs failed to allege that they had satisfied their obligation under the mortgage loan or that they were not in default. *Rockridge II*, 2013 WL 5428722, at *33. The Court also gave Plaintiffs leave to amend their slander of title and cancellation of instruments claims, but noted that Plaintiffs had failed to allege facts to support the bases of these claims, *i.e.*, that First American lacked the authority to execute foreclosure proceedings, including the trustee's sale. *Id.* at *34.

Plaintiffs have supplemented their allegations for each claim with three copies of the same paragraph alleging that Defendants lacked authority to foreclose on the Property and thus the foreclosure sale was void. *See* SAC ¶¶ 153a, 161a, 167a. Plaintiffs also allege that their duty under the loan was excused based on Defendants' violation of many of the other claims alleged in the SAC. *See* SAC ¶¶ 153a, 161a, 167a.

---

[10] The Court notes that Plaintiffs have alluded to their position that Wells Fargo's behavior during the loan modification process, particularly Peck's handling of the process, was unfair and unreasonable. *See, e.g.*, SAC Ex. 11 (Shahani's letter to Peck's February 19, 2013 request for documents, received by Shahani on February 21, 2013, stating that it "is inherently unreasonable and designed to intimidate and harass me and further prejudice my request for loan modification. The threat to terminate the loan modification request if the requested items are not received by today, February 25, is made in bad faith . . . ."). However, Plaintiffs have failed to argue what bearing this might have on a "completeness" determination under section 2924.11(f), and the Court declines to address it here.

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiffs' conclusory allegations do not introduce new facts or reasoning to cure any of the deficiencies identified by the Court in its order dismissing the FAC. Indeed, nothing in the SAC cures these deficiencies. Defendants correctly point out that these allegations are based in theories that the Court has rejected, such as irregularities in the foreclosure process. *See* Wells Fargo Mot. at 7, First American Mot. at 10. As such, the Court adopts its previous reasoning dismissing these claims. *See Rockridge II*, 2013 WL 5428722, at *33–*34.

Additionally, in the sections of their oppositions regarding quiet title, slander of title, and cancellation of instruments, Plaintiffs argue that HBOR provides Plaintiffs with the right to sue for injunctive relief in this case. *See* Opp'n to Wells Fargo Mot. at 7–8; Opp'n to First American Mot. at 8–11. Specifically: "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17." Cal. Civ. Code § 2924.12(a)(1). To the extent that this argument applies to the three claims at all, the Court rejects it because Plaintiffs concede that the trustee's deed has already been recorded. SAC ¶ 59c; Pls.' Opp'n to Wells Fargo Mot. at 7–8.

Plaintiffs argue that this provision nonetheless applies because this action was brought before that date. Wells Fargo and Bank of America argue that it does not matter when the suit was filed; the operative fact is that the deed has been recorded. *See* Wells Fargo and Bank of America's Reply at 5. The Court agrees with Wells Fargo and Bank of America and notes that it has already addressed this issue. As the Court previously explained:

> the language of the statute is clear in its application to the present case. California Civil Code § 2924.12(a)(1) allows a "borrower to bring an action for injunctive relief to enjoin a material violation of the enumerated sections when the trustee's deed has not been recorded. Here, Plaintiffs do not seek to enjoin an ongoing violation of any of the enumerated sections, but seek to unwind and regain title to the Property. Accordingly, they are not entitled to injunctive relief.

*Rockridge II*, 2013 WL 5428722, at *24.

Accordingly, the Motions are GRANTED as to the quiet title, slander of title, and cancellation of instruments claims, and these claims are DISMISSED with prejudice.

///

### H.    UCL Against Bank of America and First American

The Court gave Plaintiffs leave to amend their UCL claim against Bank of America, noting that "aside from the allegation that Wells Fargo was acting as Bank of America's agent because it was the servicer on a loan in which Bank of America held the beneficial interest, Plaintiffs have not alleged conduct by Bank of America." *Rockridge II*, 2013 WL 5428722, at *39. The Court also gave Plaintffs leave to amend their UCL claim against First American, noting that Plaintiffs had not "pled facts sufficient to support their allegations that First American acted without authority," nor had they demonstrated economic injury arising from the allegedly false declaration filed by First American in support of the July 2009 notice of default. *Id.*

As to First American, Plaintiffs have failed to supplement their allegations with details regarding First American's conduct that would give rise to any UCL claims. Thus, Plaintiffs have still failed to state a claim against First American. Plaintiffs' arguments in their oppositions are not convincing. They consist primarily of a summary of a recent California appellate court case regarding a loan modification, without any attempt to meaningfully apply the authority to the facts of this case. *See* Opp'n to First American at 8–11 (citing *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49 (2013)). Plaintiffs cite this case primarily for the propositions that: (1) a lender owes a duty of care to a borrower "to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale"; and (2) in California courts, it may be reversible error to deny a plaintiff a leave to amend claims for a breach of contract or fraud regarding a loan modification under certain factual circumstances. *See Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 69 76, 80 (2013). The Court rejects the *Lueras* arguments. First, this Court has previously concluded that a financial institution generally does not owe a borrower a duty of care in the loan modification process because such a process is a traditional money lending activity. *Reiydelle*, 2014 WL 312348, at *17. Second, the Court has already granted Plaintiffs leave to amend the breach of contract and fraud claims.

However, as to Bank of America, Plaintiffs have successfully amended their claims to state claims against Bank of America for breach of oral contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and fraud, based on certain theories. *See* Parts.

IV.B.–E., *supra*. Thus, Plaintiffs have satisfied the "unlawful" prong as to Bank of America. *See Reyes v. Downey Sav. & Loan Ass'n, F.A.*, 541 F. Supp. 2d 1108, 1115 (C.D. Cal. 2008) (denying motion to dismiss UCL claim premised "on the generally applicable duty of any contracting part to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices").

Accordingly, the First American Motion is GRANTED as to the UCL claim against First American, and this claim is DISMISSED with prejudice. The Wells Fargo Motion is DENIED as to the UCL claim against Bank of America.

## V.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART the Wells Fargo Motion and it GRANTS the First American Motion. Because Plaintiffs have been given the opportunity to amend their complaint to plead facts to state the dismissed claims but have failed to do so, and because the Court finds that further amendment would be futile, the SAC is DISMISSED with prejudice, except for the following claims:

(1) violation of the FDCPA as to Wells Fargo;

(2) violation of the Rosenthal Act as to Wells Fargo and Bank of America;

(3) breach of oral contract based on a contract arising from Shahani's February 28, 2013 conversation with Peck resulting in a promise by Wells Fargo to postpone the trustee's sale of the Property;

(4) breach of the implied covenant of good faith and fair dealing based on:

    a.   Shahani's September 15, 2011 conversation with Bell resulting in promises to not foreclose and to accept regular monthly mortgage payments, and

    b.   Shahani's February 28, 2013 conversation with Peck resulting in a promise to postpone the trustee's sale of the Property;

///

///

///

///

1        (5) promissory estoppel based on Peck's February 28, 2013 promise to postpone the

2            trustee's sale of the Property;

3        (6) fraud based on misrepresentations made by Peck on February 28, 2013; and

4        (7) violation of the UCL as to Wells Fargo and Bank of America.

5        **IT IS SO ORDERED**.

6    Dated: February 19, 2014

7    _____

8                                JOSEPH C. SPERO
                                United States Magistrate Judge